FILED
United States Court of Appeals
Tenth Circuit

January 17, 2023

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

SUSAN NORWOOD,

      Plaintiff - Appellant,

v.

UNITED PARCEL SERVICE, INC.,

      Defendant - Appellee.

No. 21-3145

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:19-CV-02496-DDC)**

_____

Luther Oneal Sutter, Sutter & Gillham, P.L.L.C., Benton, Arkansas, for Plaintiff-Appellant Susan Norwood.

Daniel P. Johnson (Shelley J. Ericsson, with him on the brief), Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Kansas City, Missouri, for Defendant-Appellee United Parcel Service, Inc.

_____

Before **TYMKOVICH**, **EID**, and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

When an employee comes to an employer seeking an accommodation for a

disability, we have long required both parties to engage in what we call the

"interactive process"—a back-and-forth discussion to help identify the employee's

precise limitations and attempt to find a reasonable accommodation for those limitations.  In this case, Defendant United Parcel Service, Inc., engaged in an extensive back-and-forth to attempt to accommodate Plaintiff Susan Norwood.  Yet Plaintiff still sued, alleging Defendant failed to immediately tell her that it approved a possible accommodation and formally offer it to her.  But the law imposes no burden on employers to immediately tell employees of approved possible accommodations or to formally offer them those accommodations, rather than informally asking if they would satisfy an employee.

Besides challenging Defendant's good faith during the interactive process, Plaintiff appeals the district court's decision to exclude expert testimony and draw certain inferences in granting Defendant's motion for summary judgment.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Defendant employed Plaintiff for several years.  Eventually, Plaintiff became a division manager.  In that position, Plaintiff oversaw operational safety, service, and performance in her division.  Defendant required her to remember daily conversations and record them later.  Her position gave her access to Defendant's proprietary and confidential information.

When her parents became ill, Plaintiff's mental health declined.  She struggled to recall the daily conversations Defendant expected her to memorize.  Plaintiff met with her supervisor and a human-resources manager to discuss her performance issues and Defendant's intention to place her on a manager-performance-

improvement plan.  Plaintiff suffered an anxiety attack following the meeting.  So she requested medical leave and an accommodation.  The next day, Defendant instructed her how to seek an accommodation.  She emailed human resources, requesting an agenda of all meetings and permission to tape record them.  A few days later, Plaintiff went on leave and did not return to work.

During Plaintiff's leave, Defendant sent her what it calls an "accommodation packet."  Plaintiff did not timely return her paperwork, so Defendant closed her case. Defendant reopened Plaintiff's case when she so requested. This time, Plaintiff completed the accommodation paperwork.  A week after she returned her paperwork, she emailed human resources to let Defendant know that although she was scheduled to return to work, she would not do so without the requested accommodations.  An occupational health manager for Defendant emailed Plaintiff in response:

> Thank you for your inquiries regarding your request for accommodation and returning to work.  We look forward to your return, and as you know, we initiated an accommodation request on your behalf.  The accommodation process is designed to be interactive and requires your input in order to determine a reasonable accommodation that may assist you in the performance of your job.  Because you have been on your medical leave, we have not contacted you regarding your checklist meeting (where UPS and you explore potential accommodations).  Instead, we wanted to allow you to focus on your health.  Now that you are in a position to return we look forward to working with you, and will schedule your checklist meeting as soon as possible upon your return.  In this checklist meeting, you will have the opportunity to identify accommodations that may be of benefit to you as will UPS as we work towards solutions that will allow you to be at work and perform the daily essential job functions as a division manager.  We will be in contact with you upon your return and will provide you with additional information. Again, we look forward to your return and working with you through this process.

3

On June 19, 2018, Plaintiff met with Human Resources Manager Eric Day, Occupational Health Supervisor Gayle Narimatsu, and District Operations Human Resources Manager Jimmy McClure for an "Accommodation Checklist Meeting." Plaintiff informed them of her medical restrictions, symptoms, and needs affecting her ability to perform her job. These needs included getting consistent sleep and a set schedule, taking her medication regularly and on schedule, and dealing with her anxiety, as well as clarity, concentration, and understanding issues. Plaintiff again asked Defendant to provide her with an agenda to follow during meetings and for permission to tape record all meetings in which she participated. Day then forwarded the checklist to the Region Accommodation Committee.

On June 28, 2018, that committee met and discussed Plaintiff's request for accommodation. It considered Plaintiff's insistence on tape recording but decided that her request was unreasonable because her position required that she have access to confidential and proprietary information. The committee identified reasonable alternatives, including: providing meeting agendas for specific meetings, designating a notetaker for identified meetings, and authorizing notetaking by both Plaintiff and a designated notetaker during identified meetings. Although the meeting notes show that the committee agreed to notetaking, the notes also say, "define meetings."

After this meeting, Day contacted Plaintiff on July 2, 3, 6, 9, 10, and 11, 2018 to inform her of the committee's findings and help her get back to work. The July 2 and 3 communications explained that the committee declined her request to tape record as unreasonable. On a July 3 phone call, Plaintiff asked Day what the

committee had approved during its June 28 meeting.  Day did not mention the

committee's thoughts about a notetaker.  Day, however, asked Plaintiff for which

meetings she would need an agenda or notes.

On July 6, Day emailed Plaintiff:

[T]he committee needs you to provide additional information as to exactly
what operations meetings you feel you require agendas and post-meeting
notes.  I know you have numerous meetings in any given day.  Can you
give us some guidance on your request?  Are you referring only to certain
meetings or every operations meeting?

On July 9, Day emailed Plaintiff in response to text messages she sent again asking to

record meetings:

I explained to you that this was because not only is recording a policy
violation, but in your position you have access to confidential and
proprietary information which needs to be protected.  As a result, tape
recording in the workplace is not reasonable.  However, as I mentioned,
UPS is still exploring what, if anything—short of tape recording—will
allow you to do your job.  To that end, I asked you for which meetings you
require an agenda and/or post-meeting notes.  As you know, you attend
numerous operation meetings throughout the day.  You still haven't
provided us that information.  Please let us know for which meetings you
need agendas and/or notes so we can help get you back to work.

That same day, Plaintiff replied:

I do not want to file a Charge with the EEOC, but UPS is creating a
situation where I feel I must . . . Please respond with answers to my
questions by close of business Monday, or I will file the charge with the
EEOC and perhaps they can help us resolve the issue.

Plaintiff filed her charge the next day.  The same day Plaintiff filed her charge, Day

responded to a text message from Plaintiff stating that she wanted to tape record and

receive meeting agendas for all disciplinary meetings and conferences.  Day wrote:

At this point, I understand your request is to record all meetings and
conferences regarding performance or disciplinary issues and to receive

5

agendas for those.  Is this accurate?  As we discussed a couple of times, I
thought we were looking into operations meetings and how to help you
handle that aspect of your job duties.  Has that changed?  Please let us
know.

Plaintiff then asked for permission to tape record meetings.  Day responded:

> I understand you want to tape record, but as I've told you that is not an
> option for many reasons.  The law requires us to provide qualified
> individuals with an accommodation—not the accommodation of the
> employee's choice.  That being said, we are working hard to understand
> how we can help you perform your job duties without recording.  You
> mentioned the 6:15 am call.  Have you considered requesting a note taker
> for that call, and then having the notes provided to you after the call?  Does
> that seem like a possible solution?  Please let me know.  I'm still struggling
> to understand exactly what you think would help you perform your job
> other than tape recording.

Plaintiff responded to this email without commenting on the notetaker idea.

The committee met again the next day.  It noted that for the 6:15 a.m. Monday
meetings, Defendant could provide a notetaker and agenda.  But the committee also
noted that offering a notetaker and agenda for all meetings was unreasonable and that
they awaited Plaintiff's response stating for which meetings she would need a
notetaker.  The same day the committee met, Plaintiff's counsel contacted Defendant
stating that Plaintiff had instructed him to pursue severance on her behalf.  Her
counsel directed that all further communication be directed to him.

In late July, Plaintiff left a voicemail with human resources stating that she
wished to retire.  In September, she submitted retirement paperwork, setting a
retirement date of November 1, 2018.  Despite submitting the retirement paperwork,
Plaintiff again asked to tape record meetings.  Defendant then offered to reverse
Plaintiff's retirement request and resume the accommodation process.  Defendant

6

offered to search for open positions she was qualified to perform either with or without accommodation.  Plaintiff responded to this by again stating she wanted to tape record.  At Plaintiff's request, Defendant moved Plaintiff's retirement date from November 1, 2018, to February 5, 2019.  After that, again at Plaintiff's request, Defendant moved her retirement date to April 1, 2019—the date Plaintiff retired.

Plaintiff subsequently sued under the Americans with Disabilities Act ("ADA") and the Kansas Act Against Discrimination for failing to accommodate, disability discrimination, and retaliation.  Both parties moved for summary judgment. Plaintiff eventually conceded her disparate-treatment claim for discrimination under the ADA, electing to pursue only her failure-to-accommodate claim.  The district court granted Defendant's motion for summary judgment.  Plaintiff appealed.

II.

The ADA prohibits a "covered entity" from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]."  Id. § 12112(b)(5)(A).  Our test for establishing a prima facie failure-to-accommodate claim is not an onerous one.

7

Dansie v. Union Pac. R.R. Co., 42 F.4th 1184, 1192 (10th Cir. 2022) (quoting

Aubrey v. Koppes, 975 F.3d 995, 1005 (10th Cir. 2020)).  Plaintiff must show: (1)

she was disabled; (2) she was otherwise qualified; (3) she requested a plausibly

reasonable accommodation; and (4) Defendant refused to accommodate her

disability.  Id.  Once the employee establishes a prima facie case, "the burden shifts

to the defendant to present evidence either 'conclusively rebutting one or more

elements of plaintiff's prima facie case' or 'establishing an affirmative defense.'"  Id.

at 1193.  If the employer meets this burden, a district court grants the employer

summary judgment "unless the employee presents evidence establishing a genuine

dispute about the affirmative defenses or rehabilitates any challenged elements of her

prima facie case sufficiently to establish at least a genuine dispute of material fact."

Id.  We review a district court's grant of summary judgment de novo.  Id.

Plaintiff challenges three aspects of the district court's order.  First, Plaintiff

contends that Defendant failed to engage in the interactive process in good faith.

Second, Plaintiff asserts the district court improperly excluded expert testimony.

And third, Plaintiff posits that the district court wrongly resolved reasonable

inferences in Defendant's favor.  We address each issue in turn.

A.

Plaintiff's first challenge requires identifying whether Defendant failed to

engage in the interactive process in good faith.  The interactive process contemplates

"an affirmative obligation to undertake a good faith back-and-forth process between

the employer and the employee, with the goal of identifying the employee's precise

limitations and attempting to find a reasonable accommodation for those limitations."
Dansie, 42 F.4th at 1193 (citing Aubrey, 975 F.3d at 1009 (citations omitted)).  "In
general, the interactive process must ordinarily begin with the employee providing
notice to the employer of the employee's disability and any resulting limitations."
Smith v. Midland Brake, Inc., 180 F.3d 1154, 1171 (10th Cir. 1999) (en banc).  The
"notice triggers the employer's responsibility to engage in the interactive process
where both parties must communicate in good-faith."  Dansie, 42 F.4th at 1193.  We
have emphasized the importance of this good-faith communication "because each
side will possess different information, all of which is critical to determining whether
there is a reasonable accommodation that might permit the disabled employee to
perform the essential functions of her job."  Id. (quoting Aubrey, 975 F.3d at 1007).
A workable accommodation may not exist, "but the ADA mandates that the employer
work with the employee to try to find one."  Id. (quoting Aubrey, 975 F.3d at 1009
(citation omitted)).  Plaintiff triggered Defendant's responsibility to engage in the
interactive process when she informed Defendant that she wanted an accommodation
for her disability.

 Plaintiff argues that Defendant acted in bad faith during the interactive process
by concealing the possibility of a notetaker.  She argues that when she spoke with
Eric Day on the phone on July 3, his failure to reveal that Defendant identified
notetaking during certain meetings as a reasonable accommodation amounted to a
"lie," evidencing Defendant's bad faith during the interactive process.  Defendant's
bad faith, she reasons, warrants granting summary judgment in her favor or should

otherwise allow the case to go to a jury.  Defendant counters that it acted in good
faith and that Day did not lie to Plaintiff.

We cannot conclude Defendant acted in bad faith during the interactive
process.  Indeed, Defendant engaged in regular communication with Plaintiff to find
a reasonable accommodation until Plaintiff expressed her intent to retire.  We take as
true that Day did not inform Plaintiff that the committee approved a notetaker—
though the record shows that the committee conditioned its "approval" on knowing
the meetings at which Plaintiff would require a notetaker.  Even assuming Day
purposefully concealed the committee's proposed accommodations on July 3, that did
not end the interactive process, nor did it stop Day from proposing a notetaker as an
accommodation.  Defendant continued discussions with Plaintiff until her lawyer
notified it on July 12 that Plaintiff planned to pursue severance or retirement.
Between July 3 and 12, Day asked Plaintiff more than once to identify meetings that
required agendas and notes—a condition that the committee placed on providing a
notetaker.  He explained that he sought the information so that Defendant could help
get Plaintiff back to work.  Day proposed a notetaker as an accommodation when he
asked Plaintiff whether she considered requesting a notetaker for a call and having
the notes provided to her after the call.  He also asked whether that seemed like a
possible solution.  Plaintiff challenges the fact that Day did not formally offer her the
reasonable accommodation, instead asking her whether they were acceptable.
According to Plaintiff, asking placed the onus on her, which she believes is
unacceptable given her disability.  But nothing in the statute or our case law requires

10

that an employer frame possible reasonable accommodations during the interactive process in declarative sentences rather than questions.

Defendant worked extensively with Plaintiff "to discover exactly what [Plaintiff]'s limitations were at that time," and tried to "explor[e] with [Plaintiff] whether there were any accommodations that would have enable[d] her to return to work at that time, or in the near future, even with her limitations." Aubrey, 975 F.3d at 1008.  Defendant asked questions to explore these issues.  Plaintiff repeatedly insisted she needed to tape record.  Plaintiff, however, "is not entitled to the accommodation of her choice, but only to a reasonable accommodation." Smith, 180 F.3d at 1177 (quoting Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285–86 (11th Cir. 1997)).  Thus, as the district court found, no reasonable juror could conclude from this substantive and productive exchange about accommodations from July 3 to July 11 that the interactive process broke down immediately on July 3.

Moreover, Plaintiff cites no law supporting the premise of her argument—that an employer may act in bad faith by concealing alternative accommodations it already considered reasonable.  This is especially true where, like here, Defendant engaged with the employee, discussed reasonable accommodations, and suggested possible accommodations for Plaintiff.[1]  The notes from the committee meeting show

---

[1] Plaintiff cites Crump v. U.S. Dep't of Navy ex rel. Mabus, 2016 WL 8469188 (E.D. Va. Nov. 30, 2016) (unpublished) for the proposition that "Day's email was not an offer of accommodation."  In that case, the Navy's procedures

that Defendant believed a notetaker at every meeting was unreasonable and that Plaintiff would need to state at which meetings she needed a notetaker.  Day asked Plaintiff whether a notetaker would be sufficient.  He also asked her which meetings she would need the notetaker to attend.  We cannot say that Day's "concealment" on July 3—using Plaintiff's term—amounted to bad faith in the context of his ongoing communications and efforts to accommodate Plaintiff, specifically considering the questions to her about the use of notes and a notetaker.[2]

Based on the record evidence, no reasonable jury could find that Defendant engaged in the interactive process in bad faith to determine whether a reasonable accommodation existed that would enable Plaintiff to perform the essential functions of her job.

---

required a "formal letter of accommodation."  Id. at *4.  Thus, when someone sent an email that was not a formal letter that disregarded Navy procedures, the district court said that "a reasonable jury could have found that the December 16, 2011 email was not an 'offer' of accommodation."  Id. at *4.  For many reasons, namely because the ADA's interactive process does not require a formal letter of accommodation, Plaintiff's citation to Crump is unpersuasive.

[2] Plaintiff also complains that the district court disregarded Gayle Narimatsu's testimony.  Narimatsu, although not present for the events in July, testified before the district court that the interactive process required Day to tell Plaintiff the committee's findings.  The district court found that Narimatsu did not offer testimony based upon actual involvement in Plaintiff's request for accommodation during the month of July, but instead offered inadmissible legal testimony based upon hypotheticals and speculation.  We agree with the district court's conclusion that Narimatsu's testimony was an inadmissible legal conclusion.  Anderson v. Suiters, 499 F.3d 1228, 1237–38 (citing Specht v. Jensen, 853 F.2d 805, 808 (10th Cir. 1988)).

B.

Next, Plaintiff contends the district court erred by excluding the expert testimony of Dr. Michelle Aliff.  In ruling on the motion for summary judgment, the district court noted that Plaintiff attached Dr. Aliff's deposition to her response and that Plaintiff argued the court should consider Aliff's testimony.  The district court pointed out that Plaintiff cited the deposition twice but that neither citation followed the district court's local rules.  See D. Kan. Rule 56.1(a)–(b) (providing that facts must refer with particularity to those portions of the record on which the party relies).  The district court also said that neither citation supported a statement of fact relevant to the issue controlling Defendant's motion.  On appeal, Plaintiff makes two arguments about the exclusion.

1.

Plaintiff first posits that the district court falsely reasoned that she failed to cite to Aliff's testimony with particularity, mandating reversal.  We disagree.  The district court mentioned Plaintiff's two citations.  The first—to support a statement of fact that "[a]s Division Manager, Plaintiff needed to follow directions and routine; work independently with appropriate judgment; and concentrate, memorize, and recall information"—cited a specific paragraph of Plaintiff's declaration and "Deposition of Aliff generally."  The district court did not abuse its discretion in ignoring this broad citation to a 142-page deposition.  Vittoria N. Am., LLC v. Euro-Asia Imports Inc., 278 F.3d 1076, 1081 (10th Cir. 2001) (recognizing that district courts have discretion in applying local rules).  Indeed, even on appeal, Plaintiff fails

13

to refer with particularity to the portion of the record supporting the statement of fact. And, as the district court pointed out, this statement of fact is not material to the interactive-process issue.

The second factual averment stated that in "her report, Plaintiff's expert [Aliff] has concluded that Plaintiff is a qualified individual with a disability."  Plaintiff cited "Doc. 175 at 22 (citing 'Exhibit 28')" for this proposition.  But Plaintiff did not attach an Exhibit 28 to Document No. 175.  Thus, we agree with the district court that Plaintiff did not cite this document with particularity and that the district court did not abuse its discretion in excluding it.  Even if the citation were sufficient, the "statement of fact" is not material to the interactive process.

2.

Plaintiff next contends that the district court overlooked a third citation. Plaintiff's statement of fact in paragraph twenty-eight stated: "Eric Day's suggestion of a note taker was unclear.  'Have you considered a note taker?' is materially different from 'UPS proposes a note taker.'  This lack of clarity increased Plaintiff's anxiety."  For this "statement of fact," Plaintiff cited "Exhibit H at P. 58:5-60:9." Presumably, the district court did not mention this citation in relation to Dr. Aliff because Plaintiff mislabeled the exhibit as "Exhibit G" on the docket.

Because of Plaintiff's mislabeling, she argues the district court failed to consider her argument and draw reasonable inferences in her favor that Defendant's suggesting a notetaker was materially different than proposing one and whether the

14

lack of clarity increased her anxiety. She argues that the district court failed to explain its choice to exclude Aliff's testimony "that was cited with particularity."

But Plaintiff did not cite Aliff's testimony with particularity. If the district court turned to the record to locate that opinion, it would not have found an "Exhibit H" corresponding to that statement. Indeed, Plaintiff attached no Exhibit H at all. "If materials were not properly presented to the district court, 'we will not reverse [the] district court for failing to uncover them itself.'" Murphy v. City of Tulsa, 950 F.3d 641, 645 (10th Cir. 2019) (quoting Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998)). Thus, we do not fault the district court for failing to mention something that a party mislabeled.

## C.

Finally, Plaintiff contends that the district court repeatedly granted unreasonable inferences in Defendant's favor and refused to grant Plaintiff reasonable inferences. Plaintiff argues that the district court erroneously drew unreasonable inferences related to (1) the July 3 phone call; (2) the July 11 email exchange; and (3) Plaintiff's testimony about the July 3 phone call. We disagree.

When considering a summary-judgment motion, a court must view facts in the light most favorable to the nonmoving party but only if a genuine dispute exists as to those facts. Fed. R. Civ. P. 56(c). But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380

15

(2007).  And that is the case here.  Plaintiff's version of events "is so utterly discredited by the record that no reasonable jury could have believed" her.  Id.

Take for instance Plaintiff's first contention—that the district court's inferences related to the July 3, 2018, phone call are clearly erroneous.  The reasonable inference, in Plaintiff's mind, is that Day, and therefore Defendant, deceived Plaintiff.  Without that deception, she claims she would have taken the notetaker accommodation and not retired.  Let's take as true Plaintiff's contentions that Day never told her that Defendant proposed a notetaker.  Even if Day did not disclose that the committee approved a notetaker for certain meetings on July 3, Day still asked Plaintiff later in the month whether a notetaker accommodation would satisfy her.  No reasonable jury could conclude that Day's omission on July 3 broke down the interactive process, trying to accommodate Plaintiff.

Plaintiff next argues that Day's July 11 email has an uncertain meaning, in which he wrote, "[h]ave you considered requesting a note taker for that call, and then having the notes provided to you after the call?"  Plaintiff posits she did not believe this was an offer but "another instance of smoke and mirrors."  Whether she felt that Defendant was disingenuous in its suggestion of a notetaker on July 11 does not take away from the fact that Defendant asked her about a notetaker before she decided to retire.  Day asked her whether she considered requesting a notetaker.  The email speaks for itself.

Finally, Plaintiff argues the district court made an argument Defendant failed to make and inappropriately inferred from the July 3 phone call, in Defendant's

favor, that Defendant offered her a notetaker.  Plaintiff cites the district court's language that "Plaintiff explained she asked Mr. Day about the Committee's decisions, and then Mr. Day asked her which meetings she needed to take notes for." Plaintiff argues the district court took this out of context and concluded that Plaintiff said Defendant offered her a notetaker.  So we look to the transcript.  In response to whether Day said anything in terms of what Defendant proposed or decided, Plaintiff said, "No . . . [Day] said what meetings . . . would you need an agenda for and what meetings would you need to take notes for.  And I said if I had a tape recorder, I wouldn't need to take notes."  The next question asked "did [Day] ever tell you that the region ADA committee had decided to offer you a note taker?"  And she responded, "No, sir.  That was not mentioned."  Unlike Plaintiff's assertions, this testimony does not prove the district court went out of its way to justify an erroneous decision.  Even viewing the evidence in the light most favorable to Plaintiff, Defendant undisputedly asks Plaintiff about notetaking in a conversation.  And even though Day did not expressly ask her about a notetaker as an accommodation during that specific conversation, he did during the interactive process.

Put simply, the district court granted Plaintiff concessions where it could, but the undisputed facts clearly contradict Plaintiff's version of the interactive process. The district court, therefore, properly granted summary judgment in favor of Defendant.

AFFIRMED.