## UNITED STATES DISTRICT COURT
### OFFICE OF THE CLERK
### DISTRICT OF KANSAS

259 ROBERT J. DOLE U.S. COURTHOUSE
500 STATE AVENUE
KANSAS CITY, KS 66101

TIMOTHY M. O'BRIEN
CLERK
E-MAIL: Tim_O'Brien@ksd.uscourts.gov
(913) 735-2220

204 U.S.COURTHOUSE
401 N. MARKET
WICHITA, KS 67202

August 13, 2021

KIM LEININGER
CHIEF DEPUTY CLERK
E-MAIL: Kim_Leininger@ksd.uscourts.gov
(913) 735-2205

490 U.S.COURTHOUSE
444 NE QUINCY
TOPEKA, KS 66683

**SEE NOTICE OF ELECTRONIC FILING**

Retained Counsel Appeal

RE:  Susan Norwood v. United Parcel Service, Inc.

District Court Case No.:    19-cv-02496-DDC

Notice of Appeal filed by:  Plaintiff, Susan Norwood

Fee Status:                 Paid

      The following documents are for the parties in connection with the Notice of Appeal: Notice of Appeal and Copy of the Docket Sheet.

      **RETAINED** Counsel for the appellant is instructed to download the "**Initial Appeal Documents and Instructions**" for this appeal from www.ca10.uscourts.gov. In addition, counsel will need to download the "Designation of Record" form from the Tenth Circuit website. Please follow the instructions for Transcript Order Form (for Appellant only) and Docketing Statement (for Appellant only) regarding Counsel's responsibility for compliance. For specific requirements concerning transcripts, records on appeal, briefs, and appendices to briefs, please refer to the Federal Rules of Appellate Procedure and the Rules of the Tenth Circuit Court of Appeals. Rules of the Tenth Circuit are available at www.ca10.uscourts.gov.

      If you have any questions, please contact the Office of the Clerk of the U.S. Court of Appeals in Denver, Colorado at (303)844-3157.

Sincerely,
TIMOTHY M. O'BRIEN
CLERK OF COURT

s/ Colleen Abraham
By: _____
Deputy Clerk

Cc: Clerk, U.S. Court of Appeals
      (Notice of Appeal, Docket Sheet, & Preliminary Record)

CLOSED,APPEAL,ETT−5D,PROTO

# U.S. District Court
# DISTRICT OF KANSAS (Kansas City)
# CIVIL DOCKET FOR CASE #: 2:19−cv−02496−DDC

| | |
|---|---|
| Norwood v. United Parcel Service, Inc. | Date Filed: 08/22/2019 |
| Assigned to: District Judge Daniel D. Crabtree | Date Terminated: 07/16/2021 |
| Cause: 28:1331 Fed. Question: Employment Discrimination | Jury Demand: Plaintiff |
| | Nature of Suit: 445 Civil Rights: Americans with Disabilities − Employment |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Susan Norwood**                     represented by   **Luther O. Sutter**
Sutter & Gillham, PLLC
310 W. Conway Street
Benton, AR 72015
501−315−1910
Fax: 501−315−1916
Alternative Phone:
Cell Phone:
Email: luthersutter.law@gmail.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Dustin L. Van Dyk**
Palmer Law Group, LLC
2348 SW Topeka Blvd.
Topeka, KS 66611
785−233−1836
Fax: 785−233−3703
Alternative Phone:
Cell Phone:
Email: dvandyk@jpalmerlaw.com
*ATTORNEY TO BE NOTICED*
*Bar Number: 23313*
*Bar Status: Active*

V.

**Defendant**

**United Parcel Service, Inc.**          represented by   **Daniel Patrick Johnson**
Ogletree, Deakins, Nash, Smoak & Stewart, PC − KC
4520 Main Street, Suite 400
Kansas City, MO 64111

816–471–1301
Fax: 816–471–1303
Alternative Phone:
Cell Phone:
Email: daniel.johnson@ogletree.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27449*
*Bar Status: Active*

**Shelley I. Ericsson**
Ogletree, Deakins, Nash, Smoak &
Stewart, PC – KC
4520 Main Street, Suite 400
Kansas City, MO 64111
816–410–2222
Fax: 816–471–1303
Alternative Phone: 816–471–1301
Cell Phone: 816–781–2251
Email: shelley.ericsson@ogletree.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 19098*
*Bar Status: Active*

**Anne L. Hershewe**
Hallmark Cards, Inc. – Legal Division
2501 McGee, Mail Drop 339
Kansas City, MO 64108
816–545–2197
Alternative Phone: 816–410–2243
Cell Phone:
Email: anne.hershewe@hallmark.com
*TERMINATED: 01/20/2021*
*Bar Number: 26321*
*Bar Status: Active*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/22/2019 | 1 | | COMPLAINT with trial location of Kansas City ( Filing fee $400, Internet Payment Receipt Number AKSDC–4899581.), filed by Susan Norwood. (Attachments: # 1 Exhibit Equal Employment opportunity, # 2 Exhibit Human RIghts Commision, # 3 Exhibit Charge of Discrimination, # 4 Exhibit Dismissal and Notice of Rights)(Van Dyk, Dustin) (Additional attachment(s) added on 8/23/2019: # 5 Redacted Exhibit Charge of Discrimination) (tvn). (Entered: 08/22/2019) |
| 08/22/2019 | 2 | | CIVIL COVER SHEET by Plaintiff Susan Norwood. (Van Dyk, Dustin) (Entered: 08/22/2019) |

| 08/22/2019 | | | NOTICE OF JUDGE ASSIGNMENT: Case assigned to District Judge Daniel D. Crabtree and Magistrate Judge James P. O'Hara for all proceedings. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (tvn) (Entered: 08/22/2019) |
| 08/22/2019 | | | NOTICE OF DEFICIENCY – Designation of place of trial is missing and Exhibit 3 of the Complaint is not redacted properly. The filing party/attorney is directed to correct the deficiency immediately.(This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (tvn) (Entered: 08/22/2019) |
| 08/23/2019 | 3 | | DESIGNATION OF PLACE OF TRIAL filed by Plaintiff Susan Norwood – trial to be held in Kansas City. (Van Dyk, Dustin) (Entered: 08/23/2019) |
| 08/23/2019 | | | SUMMONS ISSUED as to United Parcel Service, Inc. (issued to Attorney for service) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry) (tvn) (Entered: 08/23/2019) |
| 09/24/2019 | 4 | | MOTION for attorney Luther Oneal Sutter to appear pro hac vice ( Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–4928741.) by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Affidavit Affidavit in Support of Motion for Leave to Appear Pro Hac Vice, # 2 ECF Registration Form Pro Hac Vice Electronic Filing Registration Form)(Van Dyk, Dustin) (Entered: 09/24/2019) |
| 09/24/2019 | 5 | | ORDER granting 4 Motion to Appear Pro Hac Vice of Luther O. Sutter for Susan Norwood pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Unless already registered, pro hac vice counsel should register for electronic notification pursuant to the court's Administrative Procedures by completing a CM/ECF Electronic Filing Registration Form at http://www.ksd.uscourts.gov/. Signed by Magistrate Judge James P. O'Hara on 9/24/19. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (hw) (Entered: 09/24/2019) |
| 09/25/2019 | 6 | | SUMMONS RETURNED EXECUTED – Certified Mail by Susan Norwood upon United Parcel Service, Inc. served on 9/18/2019, answer due 10/9/2019 (Attachments: # 1 Signed return receipt)(Van Dyk, Dustin) (Entered: 09/25/2019) |
| 10/07/2019 | 7 | | CLERKS ORDER EXTENDING TIME until 10/23/2019 for Defendant United Parcel Service, Inc. to answer or otherwise plead. Signed by deputy clerk on 10/07/2019. (gw) (Entered: 10/07/2019) |
| 10/23/2019 | 8 | | MOTION to Dismiss *or in the Alternative Motion for More Definite Statement* by Defendant United Parcel Service, Inc. (Hershewe, Anne) (Entered: 10/23/2019) |
| 10/23/2019 | 9 | | MEMORANDUM IN SUPPORT of 8 MOTION to Dismiss *or in the Alternative Motion for More Definite Statement* by Defendant United Parcel Service, Inc.(Hershewe, Anne) (Entered: 10/23/2019) |
| 10/23/2019 | 10 | | CORPORATE DISCLOSURE STATEMENT by United Parcel Service, Inc. identifying None as corporate parent . (Hershewe, Anne) (Entered: 10/23/2019) |
| 11/04/2019 | 11 | | |

3

| | | | |
|---|---|---|---|
| | | | INITIAL ORDER SETTING SCHEDULING CONFERENCE: Scheduling Conference set for 12/19/2019 at 9:00 AM in KC Courtroom 223 (JPO) before Magistrate Judge James P. O'Hara. Report of Parties Planning Meeting deadline 12/11/2019. Rule 26 Initial Disclosures Deadline set for 12/11/2019. Signed by Magistrate Judge James P. O'Hara on 11/4/19. (ss) (Entered: 11/04/2019) |
| 11/06/2019 | 12 | | AMENDED COMPLAINT against United Parcel Service, Inc., filed by Susan Norwood. (Attachments: # 1 Exhibit – Redacted EXHIBIT A)(Van Dyk, Dustin) (Entered: 11/06/2019) |
| 11/20/2019 | 13 | | MOTION to Dismiss *Amended Complaint, or in the Alternative, Motion for More Definite Statement* by Defendant United Parcel Service, Inc. (Hershewe, Anne) (Entered: 11/20/2019) |
| 11/20/2019 | 14 | | MEMORANDUM IN SUPPORT of 8 MOTION to Dismiss *or in the Alternative Motion for More Definite Statement* by Defendant United Parcel Service, Inc.(Hershewe, Anne) (Entered: 11/20/2019) |
| 11/29/2019 | 15 | | ORDER finding as moot defendant United Parcel Service, Inc.'s Motion to Dismiss (Doc. 8 ). On November 6, 2019, plaintiff filed an Amended Complaint (Doc. 12). And defendant filed a second Motion to Dismiss (Doc. 13). Thus, defendant's first Motion to Dismiss (Doc. 8) is moot and the court denies Doc. 8 for that reason. This result does not prejudice Doc. 13 or the arguments it makes. Signed by District Judge Daniel D. Crabtree on 11/29/2019. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 11/29/2019) |
| 12/04/2019 | 16 | | BRIEF IN SUPPORT OF RESPONSE 17 TO MOTION by Plaintiff Susan Norwood re: 13 MOTION to Dismiss *Amended Complaint, or in the Alternative, Motion for More Definite Statement* (Van Dyk, Dustin) Modified on 12/5/2019 correct title (ses). Modified on 12/5/2019 (ses). (Entered: 12/04/2019) |
| 12/04/2019 | 17 | | RESPONSE by Plaintiff Susan Norwood re 13 MOTION to Dismiss *Amended Complaint, or in the Alternative, Motion for More Definite Statement* (Van Dyk, Dustin) (Entered: 12/04/2019) |
| 12/13/2019 | 18 | | NOTICE of Hearing CHANGE:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Scheduling Conference set for 12/19/2019 at 10:00 AM by Telephone before Magistrate Judge James P. O'Hara. All parties participating in this phone conference are directed to dial the conference center line 888–363–4749, using access code 8914911 to join the conference.(ss) (Entered: 12/13/2019) |
| 12/18/2019 | 19 | | REPLY TO RESPONSE TO MOTION by Defendant United Parcel Service, Inc. re: 13 MOTION to Dismiss *Amended Complaint, or in the Alternative, Motion for More Definite Statement* (Ericsson, Shelley) (Entered: 12/18/2019) |
| 12/18/2019 | 20 | | CERTIFICATE OF SERVICE of Defendant's Initial Rule 26(a)(1) Disclosures by United Parcel Service, Inc.. (Ericsson, Shelley) (Entered: 12/18/2019) |
| 12/19/2019 | 21 | | MINUTE ENTRY for proceedings held before Magistrate Judge James P. O'Hara: SCHEDULING CONFERENCE held on 12/19/2019. (AT&T |

| | | | conference line.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 12/19/2019) |
|---|---|---|---|
| 12/19/2019 | 22 | | SCHEDULING ORDER: Mediation Notice or Confidential Settlement Report Due to Magistrate Judge on 1/31/2020. Discovery deadline 6/1/2020. Mediation deadline 2/28/2020. Proposed Pretrial Order due by 6/12/2020. Final Pretrial Conference set for 6/25/2020 at 01:30 PM in KC Courtroom 223 (JPO) before Magistrate Judge James P. O'Hara. Dispositive motion deadline 8/3/2020. Jury Trial set for 4/6/2021 at 09:00 AM in KC Courtroom 476 (DDC) before District Judge Daniel D. Crabtree. Signed by Magistrate Judge James P. O'Hara on 12/19/19. (ss) (Entered: 12/19/2019) |
| 12/23/2019 | 23 | | Joint MOTION for Protective Order *Joint Motion for Entry of Agreed Protective Order* by Defendant United Parcel Service, Inc. (referred to Magistrate Judge James P. O'Hara) (Hershewe, Anne) (Entered: 12/23/2019) |
| 12/23/2019 | 24 | | AGREED PROTECTIVE ORDER. The court finds good cause to enter the order submitted by the parties. Signed by Magistrate Judge James P. O'Hara on 12/23/19. (jc) (Entered: 12/23/2019) |
| 12/26/2019 | 25 | | CERTIFICATE OF SERVICE of First Interrogatories to Plaintiff and First Request for Production to Plaintiff by United Parcel Service, Inc.. (Hershewe, Anne) (Entered: 12/26/2019) |
| 01/29/2020 | 26 | | CERTIFICATE OF SERVICE of Responses to Plaintiff's First Interrogatories and Request for Production of Documents by United Parcel Service, Inc.. (Ericsson, Shelley) (Entered: 01/29/2020) |
| 01/31/2020 | 27 | | Joint JOINT MEDIATION NOTICE – Mediation to be held March 13, 2020 by United Parcel Service, Inc. re 22 Scheduling Order,, (Hershewe, Anne) (Entered: 01/31/2020) |
| 01/31/2020 | 28 | | NOTICE OF SERVICE by United Parcel Service, Inc. of Second Interrogatories to Plaintiff (Hershewe, Anne) (Entered: 01/31/2020) |
| 01/31/2020 | 29 | | ORDER granting the parties' joint e–mail request to extend the mediation deadline. The parties informed the court that their agreed–upon mediator is not available before the February 28, 2020 deadline imposed by the scheduling order (ECF No. 22). The court therefore extends the deadline to March 13, 2020, the date of the agreed–upon mediation. Signed by Magistrate Judge James P. O'Hara on 1/31/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 01/31/2020) |
| 02/07/2020 | 30 | | NOTICE by Defendant United Parcel Service, Inc. of taking deposition of Susan Norwood on March 12, 2020 (Ericsson, Shelley) (Entered: 02/07/2020) |
| 02/10/2020 | 31 | | CERTIFICATE OF SERVICE of Supplemental Rule 26(A)(1) Disclosures and First Supplemental Responses to Plaintiff's First Interrogatories by United Parcel Service, Inc.. (Hershewe, Anne) (Entered: 02/10/2020) |
| 02/13/2020 | 32 | | NOTICE by Plaintiff Susan Norwood of taking deposition of Eric Day on February 21, 2020 (Van Dyk, Dustin) (Entered: 02/13/2020) |
| 02/21/2020 | 33 | | NOTICE by Plaintiff Susan Norwood of taking deposition of Eric Day on February 24, 2020 (Van Dyk, Dustin) (Entered: 02/21/2020) |

| 02/24/2020 | 34 | | Unopposed MOTION for extension of time *to file Motion to Compel Discovery* by Defendant United Parcel Service, Inc. (referred to Magistrate Judge James P. O'Hara) (Hershewe, Anne) (Entered: 02/24/2020) |
| 02/25/2020 | 35 | | ORDER granting 34 defendant's motion for extension of time. For good cause shown, defendant shall file any motion to compel plaintiff's discovery responses by March 16, 2020. Signed by Magistrate Judge James P. O'Hara on 2/25/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 02/25/2020) |
| 02/26/2020 | 36 | | CERTIFICATE OF SERVICE of D's 2nd Supplemental Responses to P's 1st ROGs by United Parcel Service, Inc.. (Ericsson, Shelley) (Entered: 02/26/2020) |
| 02/26/2020 | 37 | | NOTICE by Plaintiff Susan Norwood of taking deposition of Jon Robertson on 03/02/2020 (Van Dyk, Dustin) (Entered: 02/26/2020) |
| 02/27/2020 | 38 | | Unopposed MOTION for extension of time by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Van Dyk, Dustin) (Entered: 02/27/2020) |
| 02/27/2020 | 39 | | ORDER granting 38 unopposed motion for extension of time until March 12, 2020, for plaintiff to file a motion to compel. Signed by Magistrate Judge James P. O'Hara on 2/27/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (amh) (Entered: 02/27/2020) |
| 03/12/2020 | 40 | | Unopposed MOTION for extension of time by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Van Dyk, Dustin) (Entered: 03/12/2020) |
| 03/12/2020 | 41 | | ORDER granting 40 second unopposed motion for extension of time. For good cause shown, the parties shall have until March 24, 2020 to file their respective motions to compel. Signed by Magistrate Judge James P. O'Hara on 3/12/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 03/12/2020) |
| 03/24/2020 | 42 | | MOTION to Compel *and to Exceed the Ten Deposition Limit* by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Van Dyk, Dustin) (Entered: 03/24/2020) |
| 03/24/2020 | 43 | | MEMORANDUM IN SUPPORT of 42 MOTION to Compel *and to Exceed the Ten Deposition Limit* by Plaintiff Susan Norwood (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E)(Van Dyk, Dustin) (Entered: 03/24/2020) |
| 03/24/2020 | 44 | | Second MOTION for extension of time *to File Motion to Compel regarding P's Responses to D's 1st ROGs & RFPDs* by Defendant United Parcel Service, Inc. (referred to Magistrate Judge James P. O'Hara) (Hershewe, Anne) (Entered: 03/24/2020) |
| 03/24/2020 | 45 | | ORDER expediting briefing regarding 44 motion for extension of time until April 7, 2020, for defendant to file a motion to compel discovery. Any response shall be filed by March 26, 2020. Any reply shall be filed by March 27, 2020. Signed by Magistrate Judge James P. O'Hara on 3/24/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (amh) (Entered: 03/24/2020) |

| 03/25/2020 | 46 | | RESPONSE by Plaintiff Susan Norwood re 44 Second MOTION for extension of time *to File Motion to Compel regarding P's Responses to D's 1st ROGs & RFPDs* (Van Dyk, Dustin) (Entered: 03/25/2020) |
| 03/25/2020 | 47 | | ORDER granting as unopposed 44 motion for extension of time until April 7, 2020, for defendant to file a motion to compel discovery. Signed by Magistrate Judge James P. O'Hara on 3/25/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (amh) (Entered: 03/25/2020) |
| 03/27/2020 | 48 | | ADR REPORT by United Parcel Service, Inc.. ADR session held on: March 13, 2020 and conducted by Richard McLeod. Results of ADR: Case did not settle. Status of litigation at time of ADR: Partial Discovery(Ericsson, Shelley) (Entered: 03/27/2020) |
| 04/01/2020 | 49 | | MOTION for extension of time *of all Deadlines* by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Van Dyk, Dustin) (Entered: 04/01/2020) |
| 04/01/2020 | 50 | | AMENDED SCHEDULING ORDER: granting 49 motion to extend deadlines. Discovery deadline 9/1/2020. Dispositive motion deadline 11/3/2020. Proposed Pretrial Order due by 9/14/2020. Jury Trial set for 7/6/2021 at 09:00 AM in KC Courtroom 476 (DDC) before District Judge Daniel D. Crabtree. Final Pretrial Conference set for 9/25/2020 at 09:00 AM in KC Courtroom 223 (JPO) before Magistrate Judge James P. O'Hara. Signed by Magistrate Judge James P. O'Hara on 4/1/2020. (amh) (Entered: 04/01/2020) |
| 04/03/2020 | 51 | | CERTIFICATE OF SERVICE of D's Responses & Objections to P's 2nd RFPDs and Responses, Answers & Objections to P's 3rd ROGs & RFPDs by United Parcel Service, Inc.. (Hershewe, Anne) (Entered: 04/03/2020) |
| 04/07/2020 | 52 | | RESPONSE by Defendant United Parcel Service, Inc. re 42 MOTION to Compel *and to Exceed the Ten Deposition Limit* (Attachments: # 1 Ex. A – Golden Rule Response, # 2 Ex. B – E–mail Exchanges between Counsel dated March 24, 2020, # 3 Ex. C – E–mail Exchange between Counsel dated Feb. 19, 2020, # 4 Ex. D – Email exchanges with Counsel dated Feb.18, 2020, # 5 Ex. E – UPS's Supplemental Rule 26 Disclosures)(Ericsson, Shelley) (Entered: 04/07/2020) |
| 04/07/2020 | 53 | | MOTION to Compel *(Discovery re ROG 15 & RFPD 14)* by Defendant United Parcel Service, Inc. (referred to Magistrate Judge James P. O'Hara) (Ericsson, Shelley) (Entered: 04/07/2020) |
| 04/07/2020 | 54 | | MEMORANDUM IN SUPPORT of 53 MOTION to Compel *(Discovery re ROG 15 & RFPD 14)* by Defendant United Parcel Service, Inc. (Attachments: # 1 Ex. A – Plaintiff's Responses to UPS's First Interrogatories to Plaintiff, # 2 Ex. B – Plaintiff's Responses to Defendant's First Requests for Production, # 3 Ex. C – E–mail exchange with Counsel dated Feb. 11, 2020, # 4 Ex. D – UPS Golden Rule Letter to Pl, # 5 Ex. E – Pl. Resp. to UPS's Golden Rule Letter, # 6 Ex. F – Email between Counsel dated 3.11.2020, # 7 Ex. G – Email between Counsel dated 3.24.2020, # 8 Ex. H – Pl.'s Supplemental Responses to UPS's Interrogatories, # 9 Ex. I – Pl's Supplemental Responses to UPS's Requests for Production, # 10 Ex. J – Email between Counsel dated 4.2.2020, # 11 Ex. K – Pl.'s Second Supplemental Discovery Responses)(Ericsson, Shelley) (Entered: 04/07/2020) |

| 04/14/2020 | 55 | | MOTION for Extension of Time to File response as to 53 MOTION to Compel *(Discovery re ROG 15 & RFPD 14)* by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Van Dyk, Dustin) (Entered: 04/14/2020) |
| --- | --- | --- | --- |
| 04/14/2020 | 56 | | MOTION for Leave to file Reply Within Two Weeks by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Van Dyk, Dustin) (Entered: 04/14/2020) |
| 04/14/2020 | 57 | | ORDER granting 56 unopposed motion for leave to file reply. Under D. Kan. Rule 7.1, plaintiff is entitled to file a reply in support of 42 her motion to compel without seeking leave. To the extent plaintiff seeks an extension of time to do so, she shall file the reply by April 28, 2020. Signed by Magistrate Judge James P. O'Hara on 4/14/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 04/14/2020) |
| 04/14/2020 | 58 | | ORDER granting 55 unopposed motion for extension of time. Plaintiff shall respond to 53 defendant's motion to compel by April 28, 2020. Signed by Magistrate Judge James P. O'Hara on 4/14/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 04/14/2020) |
| 04/28/2020 | 59 | | REPLY TO RESPONSE TO MOTION by Plaintiff Susan Norwood re: 42 MOTION to Compel *and to Exceed the Ten Deposition Limit* (Van Dyk, Dustin) (Entered: 04/28/2020) |
| 04/28/2020 | 60 | | RESPONSE by Plaintiff Susan Norwood re 53 MOTION to Compel *(Discovery re ROG 15 & RFPD 14)* (Van Dyk, Dustin) (Entered: 04/28/2020) |
| 05/01/2020 | 61 | | MOTION for extension of time *to file second Motion to Compel* by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Van Dyk, Dustin) (Entered: 05/01/2020) |
| 05/01/2020 | 62 | | ORDER denying 61 without prejudice plaintiff's motion for extension of time to file second motion to compel. The motion does not specify which discovery requests are at issue, when the motion to compel was due, or the cause for the extension, as required by D. Kan. R. 6.1(a). Plaintiff has a motion to compel [ECF No. 42] pending before the court. To the extent plaintiff seeks an extension to file a motion to compel different discovery responses, that should be laid out clearly in any renewed motion. Signed by Magistrate Judge James P. O'Hara on 5/1/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 05/01/2020) |
| 05/04/2020 | 63 | | MOTION for extension of time *to file second Motion to Compel Discovery* by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Van Dyk, Dustin) (Entered: 05/04/2020) |
| 05/04/2020 | 64 | | ORDER granting 63 plaintiff's unopposed motion for extension of time to file motion to compel. Plaintiff shall file any motion to compel defendant's responses to plaintiff's second and third sets of discovery by May 18, 2020. Signed by Magistrate Judge James P. O'Hara on 5/4/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 05/04/2020) |
| 05/12/2020 | 65 | | |

| | | | |
|---|---|---|---|
| | | | REPLY TO RESPONSE TO MOTION by Defendant United Parcel Service, Inc. re: 53 MOTION to Compel *(Discovery re ROG 15 & RFPD 14)* (Ericsson, Shelley) (Entered: 05/12/2020) |
| 05/18/2020 | 66 | | Second MOTION for extension of time *to file a second motion to compel discovery* by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Van Dyk, Dustin) (Entered: 05/18/2020) |
| 05/18/2020 | 67 | | ORDER granting 66 plaintiff's second motion for extension of time to file motion to compel. Defendant has represented it does not oppose the request. Plaintiff shall file any motion to compel defendant's responses to plaintiff's second and third sets of discovery by June 1, 2020. Signed by Magistrate Judge James P. O'Hara on 5/18/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 05/18/2020) |
| 05/22/2020 | 68 | | ORDER granting 42 plaintiff's motion in part and denying in part. See order for details. Signed by Magistrate Judge James P. O'Hara on 5/22/20. (jc) (Entered: 05/22/2020) |
| 05/26/2020 | 69 | | Second MOTION to Compel by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Van Dyk, Dustin) (Entered: 05/26/2020) |
| 05/26/2020 | 70 | | MEMORANDUM IN SUPPORT of 69 Second MOTION to Compel by Plaintiff Susan Norwood(Van Dyk, Dustin) (Entered: 05/26/2020) |
| 05/29/2020 | 71 | | ORDER granting 53 defendant's motion to compel. Signed by Magistrate Judge James P. O'Hara on 5/29/20. (jc) (Entered: 05/29/2020) |
| 06/09/2020 | 72 | | RESPONSE by Defendant United Parcel Service, Inc. re 69 Second MOTION to Compel (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16)(Ericsson, Shelley) (Entered: 06/09/2020) |
| 06/11/2020 | 73 | | NOTICE OF SERVICE by Susan Norwood of Notice *Supplemental Discovery Responses* (Van Dyk, Dustin) (Entered: 06/11/2020) |
| 06/11/2020 | 74 | | EXHIBIT(S) IN SUPPORT of 73 Notice of Service by Plaintiff Susan Norwood . (Van Dyk, Dustin) (Entered: 06/11/2020) |
| 06/11/2020 | 75 | | EXHIBIT(S) IN SUPPORT of 73 Notice of Service by Plaintiff Susan Norwood . (Van Dyk, Dustin) (Entered: 06/11/2020) |
| 06/12/2020 | 76 | | CERTIFICATE OF SERVICE of Defendant's Third Supplemental Responses to Plaintiff's First Interrogatories by United Parcel Service, Inc.. (Ericsson, Shelley) (Entered: 06/12/2020) |
| 06/24/2020 | 77 | | NOTICE by Defendant United Parcel Service, Inc. of taking deposition of Susan Norwood on August 6, 2020 (Ericsson, Shelley) (Entered: 06/24/2020) |
| 06/26/2020 | 78 | | ORDER denying 69 plaintiff's motion to compel. Signed by Magistrate Judge James P. O'Hara on 6/26/20. (jc) (Entered: 06/26/2020) |
| 07/13/2020 | 79 | | Unopposed MOTION to Amend Scheduling Order by Defendant United Parcel Service, Inc. (referred to Magistrate Judge James P. O'Hara) |

| | | | (Hershewe, Anne) (Entered: 07/13/2020) |
|---|---|---|---|
| 07/14/2020 | 80 | | SECOND AMENDED SCHEDULING ORDER granting 79 motion to amend scheduling order. Discovery deadline 10/16/2020. Dispositive motion deadline 12/3/2020. Proposed Pretrial Order due by 10/26/2020. Jury Trial set for 8/3/2021 at 09:00 AM in KC Courtroom 476 (DDC) before District Judge Daniel D. Crabtree. Final Pretrial Conference set for 11/6/2020 at 11:00 AM in KC Courtroom 223 (JPO) before Magistrate Judge James P. O'Hara. Signed by Magistrate Judge James P. O'Hara on 7/14/20. (jc) (Entered: 07/14/2020) |
| 07/20/2020 | 81 | | NOTICE by Plaintiff Susan Norwood of taking deposition of Rebecca Aciego on July 22, 2020 (Van Dyk, Dustin) (Entered: 07/20/2020) |
| 07/20/2020 | 82 | | NOTICE by Plaintiff Susan Norwood of taking deposition of Terra Vellema on July 22, 2020 (Van Dyk, Dustin) (Entered: 07/20/2020) |
| 07/30/2020 | 83 | | NOTICE by Plaintiff Susan Norwood of taking deposition of Bryan Lennox on August 7, 2020 (Van Dyk, Dustin) (Entered: 07/30/2020) |
| 07/30/2020 | 84 | | NOTICE by Plaintiff Susan Norwood of taking deposition of Pete Elroy on August 7, 2020 (Van Dyk, Dustin) (Entered: 07/30/2020) |
| 08/03/2020 | 85 | | NOTICE OF SERVICE by Susan Norwood of 4th set of Reqeust for Production (Van Dyk, Dustin) (Entered: 08/03/2020) |
| 08/05/2020 | 86 | | NOTICE OF SERVICE by Susan Norwood of Plaintiffs Supplemental Discovery Responses (Van Dyk, Dustin) (Entered: 08/05/2020) |
| 08/05/2020 | 87 | | AMENDED NOTICE by Defendant United Parcel Service, Inc. of taking deposition of Susan Norwood on August 6, 2020 (Ericsson, Shelley) (Entered: 08/05/2020) |
| 08/07/2020 | 88 | | NOTICE OF INTENT TO ISSUE SUBPOENA by United Parcel Service, Inc. Subpoena to be issued to: Psychiatry Associates of Kansas City PA, Blue Valley Family Counseling, Sunflower Medical Group (Attachments: # 1 Exhibit A – Aznaurova Subpoena Packet, # 2 Exhibit B – Hadel Subpoena Packet, # 3 Exhibit C – Heartland–Sunflower Subpoeana Packet)(Ericsson, Shelley) (Entered: 08/07/2020) |
| 08/10/2020 | 89 | | NOTICE OF SERVICE by Susan Norwood of Fourth Set of Request for Production (Van Dyk, Dustin) (Entered: 08/10/2020) |
| 08/17/2020 | 90 | | NOTICE of Filing by Susan Norwood (Attachments: # 1 Ex EXHIBIT A)(Van Dyk, Dustin) (Entered: 08/17/2020) |
| 08/19/2020 | 91 | | NOTICE by Plaintiff Susan Norwood of taking deposition of Gayle Narimatsu on August 24, 2020 (Van Dyk, Dustin) (Entered: 08/19/2020) |
| 08/20/2020 | 92 | | NOTICE OF SERVICE by Susan Norwood of Request for Admissions Exhibits 1–26 to Defendant (Van Dyk, Dustin) (Entered: 08/20/2020) |
| 08/21/2020 | 93 | | NOTICE OF SERVICE by Susan Norwood of Second Request for Admissions to Defendants (Van Dyk, Dustin) (Entered: 08/21/2020) |
| 08/21/2020 | 94 | | NOTICE by Plaintiff Susan Norwood of taking deposition of Mark Bowen on August 25, 2020 (Van Dyk, Dustin) (Entered: 08/21/2020) |

| 08/21/2020 | 95 | | NOTICE by Plaintiff Susan Norwood of taking deposition of Waring Lester on August 28, 2020 (Van Dyk, Dustin) (Entered: 08/21/2020) |
| 08/31/2020 | 96 | | CERTIFICATE OF SERVICE of Defendant's Responses to Plaintiff's 4th Requests for Production and Expert Disclosures by United Parcel Service, Inc.. (Ericsson, Shelley) (Entered: 08/31/2020) |
| 09/04/2020 | 97 | | NOTICE by Defendant United Parcel Service, Inc. of taking deposition of Susan Norwood on 9/11/20 (Ericsson, Shelley) (Entered: 09/04/2020) |
| 09/04/2020 | 98 | | CERTIFICATE OF SERVICE of Second Supplemental Rule 26(a)(1) by United Parcel Service, Inc.. (Hershewe, Anne) (Entered: 09/04/2020) |
| 09/09/2020 | 99 | | CERTIFICATE OF SERVICE of Defendant's Responses & Objections to Plaintiff's 4th (actually 5th) Request for Production of Documents by United Parcel Service, Inc.. (Hershewe, Anne) (Entered: 09/09/2020) |
| 09/09/2020 | 100 | | CERTIFICATE OF SERVICE of Defendant's 4th Supplemental Responses to Plaintiff's First Interrogatories by United Parcel Service, Inc.. (Ericsson, Shelley) (Entered: 09/09/2020) |
| 09/14/2020 | 101 | | NOTICE by Defendant United Parcel Service, Inc. of taking deposition of Michelle M. Aliff on September 23, 2020 (Ericsson, Shelley) (Entered: 09/14/2020) |
| 09/15/2020 | 102 | | CERTIFICATE OF SERVICE of (Defendant's Third Interrogatories and Second Requests for Production of Documents to Plaintiff) by United Parcel Service, Inc.. (Hershewe, Anne) (Entered: 09/15/2020) |
| 09/21/2020 | 103 | | CERTIFICATE OF SERVICE of Defendant's Answers to Plaintiff's First and Second Requests for Admission by United Parcel Service, Inc.. (Hershewe, Anne) (Entered: 09/21/2020) |
| 09/28/2020 | 104 | | MOTION to Strike *Plaintiff Expert Amended Report and Take Expert Deposition Outside Close of Discovery and Integrated Suggestions in Support* by Defendant United Parcel Service, Inc. (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Hershewe, Anne) (Entered: 09/28/2020) |
| 09/28/2020 | 105 | | ORDER expediting briefing deadlines re: 104 motion to strike. Plaintiff shall file a response by October 2, 2020. Defendant shall file any reply by October 6, 2020. Signed by Magistrate Judge James P. O'Hara on 9/28/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 09/28/2020) |
| 09/29/2020 | 106 | | MOTION for extension of time *for Discovery Deadline and Leave to File Rebuttal Expert Report out of Time* by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Van Dyk, Dustin) (Entered: 09/29/2020) |
| 09/29/2020 | 107 | | ORDER EXPEDITING DEADLINES re 106 plaintiff's motion. Defendant shall file a response by October 2, 2020. Plaintiff shall file any reply by October 6, 2020. Signed by Magistrate Judge James P. O'Hara on 9/29/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 09/29/2020) |
| 09/29/2020 | 108 | | |

| | | | |
|---|---|---|---|
| | | | MEMORANDUM AND ORDER granting in part and denying in part re 13 Motion to Dismiss. The motion is granted for Count III and the association and retaliation claims under Count VI consistent with this Memorandum and Order. The court denies the motion to dismiss in all other respects. It is further ordered that 13 Motion for More Definite Statement is granted for Count I, Count II, and the race discrimination claim under Count IV, consistent with this Memorandum and Order. Plaintiff shall file with the court a Second Amended Complaint in accordance with this Order within 20 days. Signed by District Judge Daniel D. Crabtree on 9/29/2020. (smc) (Entered: 09/29/2020) |
| 10/01/2020 | 109 | | RESPONSE by Defendant United Parcel Service, Inc. re 106 Motion for Extension of Time *Opposition* (Attachments: # 1 Exhibit 1)(Ericsson, Shelley) (Entered: 10/01/2020) |
| 10/02/2020 | 110 | | RESPONSE by Plaintiff Susan Norwood re 104 Motion to Strike, *Plaintiff's Expert Amended Report and take Expert Deposition Outside Close of Discovery, and integrated Suggestions in Support* (Attachments: # 1 Exhibit A)(Van Dyk, Dustin) (Entered: 10/02/2020) |
| 10/05/2020 | 111 | | REPLY TO RESPONSE TO MOTION by Plaintiff Susan Norwood re: 106 Motion for Extension of Time *and to file a Belated Rebuttal Expert Report, and Integrated Suggestions in Support* (Van Dyk, Dustin) (Entered: 10/05/2020) |
| 10/06/2020 | 112 | | REPLY TO RESPONSE TO MOTION by Defendant United Parcel Service, Inc. re: 104 Motion to Strike, (Attachments: # 1 Ex. 1 – Elroy Depo Excerpts, # 2 Ex. 2 – emails)(Hershewe, Anne) (Entered: 10/06/2020) |
| 10/06/2020 | 113 | | NOTICE OF SERVICE by United Parcel Service, Inc. of Defendant United Parcel Service, Inc.s Fifth Supplemental Responses to Plaintiffs First Interrogatories and Requests for Production of Documents (Ericsson, Shelley) (Entered: 10/06/2020) |
| 10/07/2020 | 114 | | NOTICE by Plaintiff Susan Norwood of taking deposition of Mark Bowen on October 14, 2020 (Van Dyk, Dustin) (Entered: 10/07/2020) |
| 10/08/2020 | 115 | | Third MOTION to Compel by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Van Dyk, Dustin) (Entered: 10/08/2020) |
| 10/08/2020 | 116 | | EXHIBIT(S) IN SUPPORT of 115 Third MOTION to Compel by Plaintiff Susan Norwood . (Attachments: # 1 Exhibit A)(Van Dyk, Dustin) (Entered: 10/08/2020) |
| 10/08/2020 | 117 | | MEMORANDUM IN SUPPORT of 115 Third MOTION to Compel by Plaintiff Susan Norwood(Van Dyk, Dustin) (Entered: 10/08/2020) |
| 10/09/2020 | 118 | | NOTICE by Plaintiff Susan Norwood of taking deposition of Pete Elroy on October 15, 2020 (Van Dyk, Dustin) (Entered: 10/09/2020) |
| 10/12/2020 | 119 | | ORDER expediting briefing deadlines regarding 115 Motion to Compel. Any response is due by 10/16/20. Any reply is due by 10/21/20. Signed by Magistrate Judge James P. O'Hara on 10/12/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (amh) (Entered: 10/12/2020) |
| 10/12/2020 | 120 | | |

| | | | |
|---|---|---|---|
| | | | MOTION in Limine by Plaintiff Susan Norwood (Attachments: # 1 Exhibit A)(Van Dyk, Dustin) (Entered: 10/12/2020) |
| 10/14/2020 | 121 | | SECOND AMENDED COMPLAINT against United Parcel Service, Inc., filed by Susan Norwood. (Attachments: # 1 Exhibit A, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25)(Van Dyk, Dustin) (Entered: 10/14/2020) |
| 10/14/2020 | 122 | | NOTICE OF SERVICE by Susan Norwood of Plaintiffs Response to Defendants Third Interrogatories and Responses to Defendants Second Request for Production of Documents to Defendants (Van Dyk, Dustin) (Entered: 10/14/2020) |
| 10/15/2020 | 123 | | NOTICE OF INTENT TO ISSUE SUBPOENA by United Parcel Service, Inc. Subpoena to be issued to: 7th Street Casino, Ameristar Casino & Hotel, Argosy Casino Hotel & Spa, Casino Kansas City, Harrah's Kansas City & Hollywood Casino (Attachments: # 1 Exhibit A – Subpoenas)(Ericsson, Shelley) (Entered: 10/15/2020) |
| 10/15/2020 | 124 | | THIRD AMENDED SCHEDULING ORDER: Discovery deadline 11/16/2020. Dispositive motion deadline 1/4/2021. Jury Trial set for 9/7/2021 at 09:00 AM in KC Courtroom 476 (DDC) before District Judge Daniel D. Crabtree. Final Pretrial Conference set for 12/7/2020 at 11:00 AM in KC Courtroom 223 (JPO) before Magistrate Judge James P. O'Hara. ORDER granting 106 plaintiff's motion to amend. ORDER granting in part and denying in part 104 defendant's motion to strike. See order for details. Signed by Magistrate Judge James P. O'Hara on 10/15/20. (jc) (Entered: 10/15/2020) |
| 10/16/2020 | 125 | | AMENDED NOTICE by Defendant United Parcel Service, Inc. of taking deposition of Dr. Michelle M. Aliff on November 13, 2020 (Ericsson, Shelley) (Entered: 10/16/2020) |
| 10/16/2020 | 126 | | RESPONSE by Defendant United Parcel Service, Inc. re 115 Motion to Compel (Attachments: # 1 Ex. 1 – Declaration of Tara Gahr, # 2 Ex. 2 –D's Responses & Objections of P's 2nd & 4th Set of RFPDs, # 3 Ex. 3 – Emails, # 4 Ex. 4 – email)(Hershewe, Anne) (Entered: 10/16/2020) |
| 10/21/2020 | 127 | | REPLY TO RESPONSE TO MOTION by Plaintiff Susan Norwood re: 115 Motion to Compel (Van Dyk, Dustin) (Entered: 10/21/2020) |
| 10/22/2020 | 128 | | ORDER denying 115 plaintiff's third motion to compel. Signed by Magistrate Judge James P. O'Hara on 10/22/20. (jc) (Entered: 10/22/2020) |
| 10/23/2020 | 129 | | RESPONSE TO MOTION by Defendant United Parcel Service, Inc. re: 120 Motion in Limine (Attachments: # 1 Ex. A – emails, # 2 Ex. B – P's 5th RFPDs (2020.10.15))(Hershewe, Anne) Modified on 10/26/2020 to correct title, incorrect event used (hw). (Entered: 10/23/2020) |
| 10/28/2020 | 130 | | MOTION to Continue Pre–trial hearing by Plaintiff Susan Norwood (referred to Magistrate Judge James P. O'Hara) (Van Dyk, Dustin) (Entered: 10/28/2020) |

| 10/28/2020 | 131 | | FOURTH AMENDED SCHEDULING ORDER denying 130 motion to continue pretrial conference. Signed by Magistrate Judge James P. O'Hara on 10/28/2020. (amh) (Entered: 10/28/2020) |
| 10/28/2020 | 132 | | NOTICE OF INTENT TO ISSUE SUBPOENA by Susan Norwood Subpoena to be issued to: Ogletree, Deakins, Nash, Smoak & Stewart, PC (Attachments: # 1 Exhibit A)(Van Dyk, Dustin) (Entered: 10/28/2020) |
| 10/28/2020 | 133 | | ANSWER to 121 Amended Complaint,, *(Defendant's Answer to Plaintiff's Second Amended Complaint)* by United Parcel Service, Inc..(Hershewe, Anne) (Entered: 10/28/2020) |
| 11/02/2020 | 134 | | Objection to Order of Magistrate Judge re 128 Order on Motion to Compel by Plaintiff Susan Norwood(Van Dyk, Dustin) (Original filing contained error in certificate of service. Corrected version added on 11/2/2020: # 1 Corrected Main Document) (heo)) (Entered: 11/02/2020) |
| 11/02/2020 | 135 | | DOCKET ANNOTATION: Original filing of 134 Objection to Order of Magistrate Judge contained error in certificate of service. A corrected version has been added to that entry and this annotation for noticing purposes only. (heo) (Entered: 11/02/2020) |
| 11/06/2020 | 136 | | MOTION for Partial Summary Judgment by Plaintiff Susan Norwood (Van Dyk, Dustin) (Entered: 11/06/2020) |
| 11/06/2020 | 137 | | MEMORANDUM IN SUPPORT of 136 MOTION for Partial Summary Judgment by Plaintiff Susan Norwood (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33)(Van Dyk, Dustin) (Entered: 11/06/2020) |
| 11/13/2020 | 138 | | ORDER denying 120 plaintiff's motion in limine. Signed by Magistrate Judge James P. O'Hara on 11/13/20. (jc) (Entered: 11/13/2020) |
| 11/13/2020 | 139 | | MOTION for Protective Order *or, in the Alternative, Motion to Compel* by Defendant United Parcel Service, Inc. (referred to Magistrate Judge James P. O'Hara) (Ericsson, Shelley) (Entered: 11/13/2020) |
| 11/13/2020 | 140 | | MEMORANDUM IN SUPPORT of 139 MOTION for Protective Order *or, in the Alternative, Motion to Compel* by Defendant United Parcel Service, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Ericsson, Shelley) (Entered: 11/13/2020) |
| 11/16/2020 | 141 | | ORDER expediting briefing regarding 139 motion for a protective order or to compel discovery. Any response is due by November 20, 2020. Any reply is due by November 25, 2020. Signed by Magistrate Judge James P. O'Hara on 11/16/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (amh) (Entered: 11/16/2020) |
| 11/16/2020 | | | **Reset Deadlines as to 139 MOTION for Protective Order *or, in the Alternative, Motion to Compel*. Response deadline 11/20/2020. Reply** |

| | | | **deadline 11/25/2020.(hw)** (Entered: 11/16/2020) |
|---|---|---|---|
| 11/16/2020 | 142 | | RESPONSE to 134 Objection to Order of Magistrate Judge, by Defendant United Parcel Service, Inc.. (Attachments: # 1 Ex. 1 – P's 5th RFPDs)(Hershewe, Anne) (Entered: 11/16/2020) |
| 11/17/2020 | 143 | | CERTIFICATE OF SERVICE of Defendant's Responses & Objections to Plaintiff's 6th (served as 5th) Set of Requests for Production of Documents by United Parcel Service, Inc.. (Hershewe, Anne) (Entered: 11/17/2020) |
| 11/20/2020 | 144 | | RESPONSE by Plaintiff Susan Norwood re 139 Motion for Protective Order (Van Dyk, Dustin) (Entered: 11/20/2020) |
| 11/20/2020 | 145 | | MEMORANDUM IN SUPPORT of 144 Response to MOTION for Protective Order *or, in the Alternative, Motion to Compel* by Plaintiff Susan Norwood(Van Dyk, Dustin) Modified on 11/20/2020 to correct docket text and link (hw). (Entered: 11/20/2020) |
| 11/23/2020 | 146 | | NOTICE of Hearing CHANGE:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Final Pretrial Conference set for 11/30/2020 at 9:00 AM by Telephone before Magistrate Judge James P. O'Hara. All parties participating in this phone conference are directed to dial the conference center line 888–363–4749, using access code 8914911 to join the conference.(ss) (Entered: 11/23/2020) |
| 11/23/2020 | 147 | | MOTION for Extension of Time to File Response as to 136 MOTION for Partial Summary Judgment by Defendant United Parcel Service, Inc. (Hershewe, Anne) (Entered: 11/23/2020) |
| 11/23/2020 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 147 MOTION for Extension of Time to File Response as to 137 Memorandum in Support of Motion,,, 136 MOTION for Partial Summary Judgment . The motion will be resolved by the District Judge.(ss)** (Entered: 11/23/2020) |
| 11/24/2020 | 148 | | ORDER. Defendant has filed a motion for extension of time to file a response (Doc. 147 ) to plaintiff's motion for partial summary judgment, seeking an extension of the November 27, 2020 deadline to January 4, 2021. Defendant's motion notes that plaintiff opposes the motion for extension of time. Given the upcoming federal holiday on November 26, 2020 and approaching filing deadline, the court directs plaintiff to file a response to defendant's motion for extension of time by 2:00 PM CT on Wednesday November 25, 2020, explaining plaintiff's reasons for objecting to defendant's request. If circumstances do not permit plaintiff's counsel to file a response via CM/ECF, counsel may instead submit the response by sending an email to ksd_crabtree_chambers@ksd.uscourts.gov. Signed by District Judge Daniel D. Crabtree on 11/24/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 11/24/2020) |
| 11/25/2020 | 149 | | RESPONSE by Plaintiff Susan Norwood re 147 Motion for Extension of Time to File Response/Reply *to Motion for Partial Summary Judgment* (Van Dyk, Dustin) (Entered: 11/25/2020) |
| 11/25/2020 | 150 | | |

| | | | |
|---|---|---|---|
| | | | Objection to Order of Magistrate Judge re 138 Order on Motion in Limine by Plaintiff Susan Norwood(Van Dyk, Dustin) (Entered: 11/25/2020) |
| 11/25/2020 | 151 | | REPLY TO RESPONSE TO MOTION by Defendant United Parcel Service, Inc. re: 139 Motion for Protective Order (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hershewe, Anne) (Entered: 11/25/2020) |
| 11/25/2020 | 152 | | ORDER granting 147 Defendant's Motion for Extension of Time to Respond to 136 plaintiff's Motion for Partial Summary Judgment. Response deadline extended to 1/4/2021. Signed by District Judge Daniel D. Crabtree on 11/25/2020. (mig) (Entered: 11/25/2020) |
| 11/30/2020 | 153 | | MINUTE ENTRY for proceedings held before Magistrate Judge James P. O'Hara: FINAL PRETRIAL CONFERENCE held on 11/30/2020.(AT&T conference line.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 11/30/2020) |
| 12/01/2020 | 154 | | NOTICE OF SERVICE by Susan Norwood of Third Supplemental Responses to Defendants First set of Interrogatories (Van Dyk, Dustin) (Entered: 12/01/2020) |
| 12/03/2020 | 155 | | ORDER granting in part and denying in part 139 defendant's motion for protective order or, in the alternative, motion to compel. See order for details. Signed by Magistrate Judge James P. O'Hara on 12/3/20. (jc) (Entered: 12/03/2020) |
| 12/07/2020 | 156 | | ORDER – Mindful that plaintiff's lead counsel timely sent an e−mail to the undersigned magistrate judge today stating that the former had no objections or proposed changes with regard to the revised pretrial order that was circulated for review on 11/30/20, the court hereby extends to 12/9/20 the deadline for both parties to e−mail any further objections or changes to chambers. The undersigned is hopeful this will allow the parties to reach stipulations on the admissibility of certain documents, as addressed in paragraph 2(b) of the pretrial order. Signed by Magistrate Judge James P. O'Hara on 12/7/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(O'Hara, James) (Entered: 12/07/2020) |
| 12/09/2020 | 157 | | RESPONSE to 150 Objection to Order of Magistrate Judge by Defendant United Parcel Service, Inc.. (Hershewe, Anne) (Entered: 12/09/2020) |
| 12/09/2020 | 158 | | PRETRIAL ORDER ENTERED Dispositive motion deadline 1/4/2021. Jury Trial set for 9/7/2021 at 9:00 AM in KC Courtroom 476 (DDC) before District Judge Daniel D. Crabtree. Estimated trial time 5 days. Signed by Magistrate Judge James P. O'Hara on 12/9/2020. (ss) (Entered: 12/09/2020) |
| 12/09/2020 | 159 | | NOTICE OF SERVICE by Susan Norwood of Fourth Supplemental Responses to Defendants First set of Interrogatories (Van Dyk, Dustin) (Entered: 12/09/2020) |
| 01/04/2021 | 160 | | Unopposed MOTION FOR LEAVE to File Exhibit 1D Conventionally by Defendant United Parcel Service, Inc. (Ericsson, Shelley) (Entered: 01/04/2021) |
| 01/04/2021 | 161 | | MOTION for Summary Judgment by Defendant United Parcel Service, Inc. (Ericsson, Shelley) (Entered: 01/04/2021) |

| 01/04/2021 | 162 | | MEMORANDUM IN SUPPORT of 161 MOTION for Summary Judgment by Defendant United Parcel Service, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16)(Ericsson, Shelley) (Entered: 01/04/2021) |
|---|---|---|---|
| 01/04/2021 | 163 | | RESPONSE by Defendant United Parcel Service, Inc. re 136 Motion for Partial Summary Judgment *in Opposition* (Attachments: # 1 Exhibit 1, # 2 2, # 3 3, # 4 4, # 5 5, # 6 6, # 7 7, # 8 8, # 9 9, # 10 10, # 11 11, # 12 12, # 13 13, # 14 14, # 15 15, # 16 16, # 17 17, # 18 18)(Ericsson, Shelley) (Entered: 01/05/2021) |
| 01/05/2021 | 164 | | ENTRY OF APPEARANCE by Daniel Patrick Johnson on behalf of United Parcel Service, Inc.. (Johnson, Daniel) (Entered: 01/05/2021) |
| 01/08/2021 | 165 | | MEMORANDUM AND ORDER – IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff Susan Norwood's 134 –1"Objection to Order Denying Third Motion to Compel" is denied and plaintiff's objections to Judge O'Hara's October 22, 2020 Order (Doc. 128) are overruled. IT IS FURTHER ORDERED THAT plaintiff Susan Norwood's 150 "Objection to Magistrate's Order Denying Plaintiff's Motion in Limine" is denied and plaintiff's objections to Judge O'Hara's November 13, 2020 Order (Doc. 138) are overruled. Signed by District Judge Daniel D. Crabtree on 1/8/2021. (ca) (Entered: 01/08/2021) |
| 01/08/2021 | 166 | | ORDER granting 160 Defendant's Unopposed Motion for Leave to Conventionally File Exhibit 1D to its Response in Opposition to Plaintiff's Motion for Partial Summary Judgment and Defendant's Memorandum in Support of its Motion for Summary Judgment (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.). Signed by District Judge Daniel D. Crabtree on 01/08/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 01/08/2021) |
| 01/12/2021 | 167 | | MOTION for Extension of Time to File Response as to 161 MOTION for Summary Judgment by Plaintiff Susan Norwood (Van Dyk, Dustin) (Entered: 01/12/2021) |
| 01/13/2021 | 168 | | ORDER granting 167 Plaintiff's Motion to Extend Time to Respond to Defendant's Motion for Summary Judgment. Plaintiff's Response to 161 MOTION for Summary Judgment is due February 17, 2021. Plaintiff's Reply to 136 MOTION for Partial Summary Judgment is due February 24, 2021. Signed by District Judge Daniel D. Crabtree on 01/13/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 01/13/2021) |
| 01/20/2021 | 169 | | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Anne L. Hershewe as to United Parcel Service, Inc. (Attachments: # 1 Exhibit A – email OK)(Hershewe, Anne) (Entered: 01/20/2021) |
| 02/17/2021 | 170 | | Second MOTION for Extension of Time to File response as to 161 MOTION for Summary Judgment by Plaintiff Susan Norwood (Van Dyk, Dustin) (Entered: 02/17/2021) |

| 02/17/2021 | 171 | | ORDER granting 170 Second Motion to Extend Time to Respond to Motion for Summary Judgment. Plaintiff's Response to 161 MOTION for Summary Judgment is due February 24, 2021. Plaintiff's Reply to 136 MOTION for Partial Summary Judgment is due March 3, 2021. Signed by District Judge Daniel D. Crabtree on 02/17/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 02/17/2021) |
| --- | --- | --- | --- |
| 02/23/2021 | 172 | | MOTION to Exclude *Testimony of Plaintiff's Expert* by Defendant United Parcel Service, Inc. (Ericsson, Shelley) (Entered: 02/23/2021) |
| 02/23/2021 | 173 | | MEMORANDUM IN SUPPORT of 172 MOTION to Exclude *Testimony of Plaintiff's Expert* by Defendant United Parcel Service, Inc. (Attachments: # 1 Ex. A VE Aliff Amended ADA Assessment, # 2 Ex. B Aliff Deposition)(Ericsson, Shelley) (Entered: 02/23/2021) |
| 02/24/2021 | 174 | | RESPONSE by Plaintiff Susan Norwood re 161 Motion for Summary Judgment (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit D, # 6 Exhibit D, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G)(Van Dyk, Dustin) (Entered: 02/24/2021) |
| 02/24/2021 | 175 | | BRIEF IN SUPPORT of 174 Response to Motion, by Plaintiff Susan Norwood (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit D, # 6 Exhibit D, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit – Redacted G, # 10 Exhibit F)(Van Dyk, Dustin) Modified title on 2/25/2021 (ca). (Entered: 02/24/2021) |
| 03/03/2021 | 176 | | REPLY TO RESPONSE TO MOTION by Plaintiff Susan Norwood re: 136 Motion for Partial Summary Judgment (Attachments: # 1 Exhibit A, # 2 Exhibit B Vol 1, # 3 Exhibit B Vol 2, # 4 Exhibit B Vol 3, # 5 Exhibit B Vol 4)(Van Dyk, Dustin) (Entered: 03/03/2021) |
| 03/08/2021 | 177 | | Unopposed MOTION for Extension of Time to File response as to 172 MOTION to Exclude *Testimony of Plaintiff's Expert* by Plaintiff Susan Norwood (Van Dyk, Dustin) (Entered: 03/08/2021) |
| 03/09/2021 | 178 | | ORDER granting 177 Plaintiff's Unopposed Motion for Extension of Time to File Response re 172 Defendant's MOTION to Exclude *Testimony of Plaintiff's Expert* and the Response deadline is extended to **3/16/2021**. Signed by District Judge Daniel D. Crabtree on 03/09/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ses) (Entered: 03/09/2021) |
| 03/10/2021 | 179 | | REPLY TO RESPONSE TO MOTION by Defendant United Parcel Service, Inc. re: 161 Motion for Summary Judgment (Attachments: # 1 Exhibit 1 – Replies to P's Responses to UPS Statements of Fact, # 2 Exhibit 2 – UPS Responses to Plaintiff's Additional Statements of Fact, # 3 Exhibit 3 Battle V. UPS Doc 49)(Ericsson, Shelley) (Entered: 03/10/2021) |
| 03/16/2021 | 180 | | RESPONSE by Plaintiff Susan Norwood re 172 Motion to Exclude *The Testimony of Michelle Aliff* (Attachments: # 1 Exhibit A)(Van Dyk, Dustin) (Entered: 03/16/2021) |
| 03/16/2021 | 181 | | MEMORANDUM IN SUPPORT of 180 Response to Motion by Plaintiff Susan Norwood . (Van Dyk, Dustin) (Entered: 03/16/2021) |
| 03/30/2021 | 182 | | |

| | | | Unopposed MOTION for Extension of Time to File Reply as to 172 MOTION to Exclude *Testimony of Plaintiff's Expert* by Defendant United Parcel Service, Inc. (Johnson, Daniel) (Entered: 03/30/2021) |
|---|---|---|---|
| 03/30/2021 | 183 | | ORDER granting 182 Defendant's Unopposed Motion for Extension of Time to File Reply re 172 MOTION to Exclude *Testimony of Plaintiff's Expert*. Reply deadline extended to 4/6/2021. Signed by District Judge Daniel D. Crabtree on 03/30/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 03/30/2021) |
| 04/06/2021 | 184 | | REPLY TO RESPONSE TO MOTION by Defendant United Parcel Service, Inc. re: 172 Motion to Exclude (Attachments: # 1 Exhibit C – Aliff Depo Transcript)(Ericsson, Shelley) (Entered: 04/06/2021) |
| 07/16/2021 | 185 | | MEMORANDUM AND ORDER dismissing as moot 136 Motion for Partial Summary Judgment; granting 161 Motion for Summary Judgment; dismissing as moot 172 Motion to Exclude. Signed by District Judge Daniel D. Crabtree on 7/16/2021. (ca) (Entered: 07/16/2021) |
| 07/16/2021 | 186 | | JUDGMENT. Signed by deputy clerk on 7/16/2021. (ca) (Entered: 07/16/2021) |
| 07/30/2021 | 187 | | MOTION for Attorney Fees by Defendant United Parcel Service, Inc. (Ericsson, Shelley) (Entered: 07/30/2021) |
| 08/13/2021 | 188 | | NOTICE OF APPEAL by Plaintiff Susan Norwood. Filing fee $ 505, Internet Payment Receipt Number AKSDC–5560103. (Van Dyk, Dustin) Modified on 8/13/2021 to link to 185 Memorandum and Order (ca). (Entered: 08/13/2021) |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SUSAN NORWOOD,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 19-2496-DDC-JPO** |
| **UNITED PARCEL SERVICE, INC.,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This case emerges from plaintiff Susan Norwood's employment by defendant United

Parcel Service (UPS).  Plaintiff seeks relief under the Americans with Disabilities Act (ADA)[1]

and Kansas Act Against Discrimination (KAAD) for (1) failing to accommodate, (2) disability

discrimination, and (3) retaliation.  Doc. 158 at 13–14 (Pretrial Order ¶ 4.a.).[2]

Plaintiff has filed a Motion for Partial Summary Judgment (Doc. 136).  And defendant

has filed its own Motion for Summary Judgment (Doc. 161).  The parties have briefed the issues

that each motion presents, and the two requests for summary judgment are now ripe.  Because

ruling defendant's Motion for Summary Judgment could resolve this litigation entirely, this

Memorandum and Order begins by considering that motion.  For the reasons explained below,

---

[1]  Plaintiff seeks relief under the ADA.  *See* Doc. 158 at 13–14 (Pretrial Order ¶ 4.a.).  The court construes the action as one under the ADA, as amended by the ADA Amendments Act of 2008 (ADAAA), and relies on that governing version of the ADA when ruling the pending motions.  *See Skerce v. Torgeson Elec. Co.*, ___ F. App'x ___, No. 19-3244, 2021 WL 1541506, at *4 (10th Cir. Apr. 20, 2021) (discussing *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016)).

[2]  In plaintiff's Response (Doc. 174) to defendant's Motion for Summary Judgment, plaintiff explains that she "concedes her disparate treatment claim for discrimination under the ADA, instead electing to pursue only her failure to accommodate claim."  Doc. 174 at 3 (¶ 5).  The court construes plaintiff's concession, explanation, and responsive filings (Doc. 174; Doc. 175) to signal—both explicitly and implicitly—that she does not contest defendant's request for summary judgment against all of plaintiff's claims except her failure to accommodate claim.

the court grants defendant's Motion for Summary Judgment and dismisses the remaining pending motion as moot.

The court starts by reciting the procedural background of this case.

## I.     Procedural Background

On July 10, 2018, plaintiff filed a charge of discrimination with the Kansas Human Rights Commission (KHRC) and Equal Employment Opportunity Commission (EEOC). Doc. 158 at 3 (Pretrial Order ¶ 2.a.vii.). The EEOC issued plaintiff a Notice of Right to Sue dated May 24, 2019. *Id.* (Pretrial Order ¶ 2.a.viii.). On August 22, 2019, plaintiff filed this lawsuit. *Id.* (Pretrial Order ¶ 2.a.ix.). Defendant filed a Motion to Dismiss (Doc. 13) plaintiff's First Amended Complaint. The court granted the Motion to Dismiss in part, and denied it in part. *See* Doc. 108 at 42. As directed by the court, plaintiff filed a Second Amended Complaint (Doc. 121). Defendant filed an Answer (Doc. 133). Next, plaintiff filed a Motion for Partial Summary Judgment (Doc. 136). The court later entered its Pretrial Order (Doc. 158). And then defendant filed a Motion for Summary Judgment (Doc. 161).

The court now turns to defendant's Motion for Summary Judgment.

## II.     Defendant's Motion for Summary Judgment (Doc. 161)

Defendant has filed a Motion for Summary Judgment (Doc. 161) against plaintiff's claims, and supplemented that motion with a Memorandum in Support (Doc. 162). Plaintiff filed a Response (Doc. 174) and a Brief in Support of Response (Doc. 175). And defendant later filed a Reply (Doc. 179).

The court first reviews the summary judgment facts, then recites the legal standard governing motions for summary judgment under Fed. R. Civ. P. 56, and finally applies that standard to the summary judgment facts.

A.    **Summary Judgment Facts**[3]

Defendant is a package delivery company who provides specialized transportation and logistics services.  Doc. 158 at 2 (Pretrial Order ¶ 2.a.i.).  Defendant operates in more than 200 countries and territories worldwide.  *Id.*  Defendant has operations in Kansas and has operated a facility in Kansas City, Kansas, since before 2016.  *Id.* (Pretrial Order ¶ 2.a.ii.).  At all times relevant to plaintiff's claims, defendant had a Professional Conduct and Anti-Harassment Policy and a policy against discrimination.  *Id.* (Pretrial Order ¶ 2.a.iii.).  They prohibit discrimination, harassment, and/or retaliation of its employees.  *Id.*  Defendant also has policies and procedures for persons seeking an accommodation for a disability or disabilities.  *Id.*

Plaintiff began working for defendant in September 1989.  *Id.* (Pretrial Order ¶ 2.a.iv.).  On March 21, 2018—following plaintiff's ongoing performance deficiencies and additional performance meetings in January and February 2018—plaintiff and fellow employees Lester and Roux met to discuss plaintiff's performance and defendant's intention to place her on a manager performance improvement plan (MPIP) because of her substandard performance.[4]  Plaintiff admits this fact, but nonetheless "denies her performance was suffering or ongoing" and points out that "her Division had won the Eagle Award."  Doc. 175 at 10 (¶ 34) (citing Doc. 175-2 at 5 (S. Norwood Decl. ¶ 19)).  On March 26, 2018, five days after learning that defendant intended

---

[3]    Defendant asserts that many of plaintiff's statements of fact and responses to defendant's statements of fact rely on deposition testimony based on hypotheticals and speculation and thus should not be considered for purposes of summary judgment.  *See* Doc. 179 at 7 (citing *Jarrett v. Sprint/United Mgmt. Co.*, 37 F. Supp. 2d 1283, 1285 (D. Kan. 1999), *aff'd*, 203 F.3d 835 (10th Cir. 2000)).  The court agrees with defendant's reasoning.  *See id.* at 8 (discussing speculative nature of Narimatsu testimony about the parties' July 2018 interactive process).  The court disregards statements of fact based on speculation or hypotheticals because they aren't proper on a motion for summary judgment.

[4]    Doc. 162-3 at 4 (Pl. Dep. 22:11–24); Doc. 162-3 at 94 (Pl. Dep Ex. 2) (Roux 3/21/2018 email to pl.); Doc. 162-3 at 64–67 (Pl. Dep. 362:17–365:13); Doc. 162-3 at 129–37 (Pl. Dep. Ex. 29); Doc. 162-3 at 141–42 (Pl. Dep. Ex. 32); Doc. 162-3 at 82–83 (Pl. Dep. 440:9–21, 441:22–24); Doc. 162-3 at 150 (Pl. Dep Ex. 36); Doc. 162-2 at 17–18 (Roux Dep. 213:8–214:1); Doc. 162-2 at 21 (Roux Dep. Ex. 5); Doc. 162-5 at 2–3 (Lester Decl. ¶ 5); Doc. 162-5 at 8 (Lester Decl. Ex. B); Doc. 162-7 at 3 (Lester Dep. 199:4–14); Doc. 162-7 at 4 (Lester Dep. Ex. 15).

to place her on a performance improvement plan, plaintiff requested medical leave and signaled the need for an accommodation.  Doc. 162-3 at 96 (Pl. Dep. Ex. 4) (requesting an accommodation).  Defendant approved plaintiff's request for continuous medical leave beginning in March 2018.  Doc. 162-2 at 5–6 (Roux Dep. 51:20–52:5).  After March 31, 2018, plaintiff went on leave and never returned to work for defendant.  *Id.*; Doc. 162-3 at 5 (Pl. Dep. 25:7–24).

### The Initial Accommodations Dialogue

On March 26, 2018, plaintiff requested an accommodation.  Doc. 162-3 at 96 (Pl. Dep. Ex. 4).  The next day, defendant provided plaintiff with instructions explaining how employees could seek an accommodation.  Doc. 162-3 at 10 (Pl. Dep. 54:7–16); Doc. 162-3 at 95 (Pl. Dep. Ex. 4) (Vellema 3/27/2018 email to pl.).  On March 29, 2018, plaintiff emailed Roux to "request an agenda of all meetings, as well as the ability to tape[ ] record, as requested in Battle v. UPS, where [defendant] lost because it refused these accommodations."  Doc. 162-1 at 119 (Decl. Ex. B) (pl.'s 3/29/2018 email to Roux).

On April 2, 2018, defendant sent plaintiff an accommodation packet.  Doc. 162-8 at 2 (Narimatsu Decl. ¶ 5).  Defendant asked plaintiff to return the completed forms as quickly as possible, stating that a failure to return the forms within four weeks of April 2, 2018, would be considered a withdrawal of her request.  *Id.* at 5–6 (Narimatsu Decl. Ex. A) (Narimatsu 4/2/2018 email to pl.).  On April 16, 2018, defendant sent plaintiff a reminder to submit her paperwork timely.  *Id.* at 18 (Narimatsu Decl. Ex. C) (Narimatsu 4/16/2018 message to pl.).  Plaintiff did not return the paperwork, which resulted in defendant closing her case on April 30, 2018.  *Id.* at 2 (Narimatsu Decl. ¶ 9); *Id.* at 20 (Narimatsu Decl. Ex. D).

**The Second Accommodations Dialogue**

While she was out on approved medical leave in May 2018, plaintiff contacted defendant about her accommodation request.  *Id.* at 2 (Narimatsu Decl. ¶ 10); *Id.* at 22–23 (Narimatsu Decl. Ex. E).  On May 14, 2018, defendant sent plaintiff another accommodation packet.  *Id.* at 2 (Narimatsu Decl. ¶ 11); *Id.* at 22–23 (Narimatsu Decl. Ex. E) (Narimatsu 5/14/2018 email to pl.). And then on May 22, 2018, defendant sent plaintiff a reminder notification to return her ADA materials.  *Id.* at 3 (Narimatsu Decl. ¶ 12); *Id.* at 25–26 (Narimatsu Decl. Ex. F) (Narimatsu 5/22/2018 email to pl.).  On June 5, 2018, plaintiff returned the accommodation paperwork. Doc. 162-9 at 7–8 (Narimatsu Dep. Exs. 1B, 1C); Doc. 162-8 at 3 (Narimatsu Decl. ¶ 13); Doc. 162-8 at 28–36 (Narimatsu Decl. Ex. G) (Accommodation Packet).

On June 11, 2018, plaintiff emailed Roux explaining:  "I am scheduled to return to work on June 18 after my vacation this week.  However, I do not intend to return to work without the accommodations that were requested."  Doc. 162-1 at 122 (Roux Decl. Ex. C) (pl.'s 6/11/2018 email to Roux).

On June 15, 2018, defendant's Occupational Health Manager, Terra Vellema, emailed plaintiff:

> Thank you for your inquiries regarding your request for accommodation and returning to work.  We look forward to your return, and as you know, we initiated an accommodation request on your behalf.  The accommodation process is designed to be interactive and requires your input in order to determine a reasonable accommodation that may assist you in the performance of your job. Because you have been on your medical leave, we have not contacted you regarding your checklist meeting (where [defendant] and you explore potential accommodations).  Instead, we wanted to allow you to focus on your health.
>
> Now that you are in a position to return, we look forward to working with you, and will schedule your checklist meeting as soon as possible upon your return.  In this checklist meeting, you will have the opportunity to identify accommodations that may be of benefit to you as will [defendant] as we work towards solutions

that will allow you to be at work and perform the daily essential job functions as a division manager.

We will be in contact with you upon your return and will provide you with additional information. Again, we look forward to your return and working with you through this process.

Doc. 162-3 at 97–98 (Pl. Dep. Ex. 5) (Vellema's 6/15/2021 email to pl.).

On June 18, 2018, plaintiff replied, emailing: "I cannot do [t]his job without the accommodations I have requested. The lack of response is increasing my anxiety. I will be tape recording the operations calls but I still need an agenda for matters that are out of the ordinary. Please respond." *Id.* at 97 (Pl. Dep. Ex. 5) (pl.'s 6/18/2018 email to def.).

### The June 2018 Accommodations Checklist Meeting

On June 19, 2018, an Accommodation Checklist Meeting took place between plaintiff, Human Resources Manager J. Eric Day, Occupational Health Supervisor Gayle Narimatsu, and District Operations Human Resources Manager Jimmy McClure. Doc. 162-3 at 14–17 (Pl. Dep. 88:3–91:5); Doc. 162-3 at 99–100 (Pl. Dep. Ex. 6) ("Date of Meeting: 6-19-2018"); Doc. 162-10 at 5–6 (Def.'s Answers to Pl.'s Reqs. for Admis., RFA Nos. 13 and 17) (admitting checklist meeting occurred June 19, 2018).

During the Checklist Meeting, plaintiff described the following medical restrictions, symptoms, or needs affecting her ability to perform her job: Needing consistent sleep and a set schedule; needing to take her medication regularly and on schedule; anxiety; and issues with clarity, concentration, and understanding. Doc. 162-3 at 99–100 (Pl. Dep. Ex. 6). As accommodations, plaintiff asked defendant to provide an agenda for her to follow during meetings and asked to record meetings. *Id.* Mr. Day's role as the area Human Resources Manager was to present plaintiff's request to the Region Accommodation Committee and

thereafter serve as a liaison between the Committee and plaintiff as it worked to find an appropriate accommodation.  Doc. 162-11 at 3–4 (Day Dep. 14:19–15:16).

       After completing defendant's portion of the checklist, Mr. Day forwarded the packet to the Region Accommodation Committee.  Before the Committee met, plaintiff and Mr. Day communicated about the upcoming Committee meeting and the viability of plaintiff's request to tape record at work.  *See* Doc. 162-3 at 104–05 (Pl. Dep. Ex. 7) (Day's 6/19/2021 email to pl.). On June 28, 2018, the Region Accommodation Committee reviewed plaintiff's request to receive meeting agendas and to tape record meetings.  The Committee found recording an unreasonable request because plaintiff's position required that she have access to confidential and proprietary information (for this, and other reasons, defendant's policy prohibits employees from audio recording in the workplace) that needed to be safeguarded.  Doc. 162-11 at 8 (Day Dep. 66:2– 19).  However, the Committee identified reasonable alternatives, including providing meeting agendas to plaintiff for specific meetings; designating a note taker for identified meetings; and, authorizing note taking by both plaintiff and a designated note-taker during identified meetings, so that both sets of notes could be compared to ensure completeness, consistency, and accuracy. Doc. 162-11 at 7 (Day Dep. 56:5–17); Doc. 162-11 at 9–12 (Day. Dep. 93:17–94:8, 94:15–96:9); Doc. 162-3 at 106 (Pl. Dep. Ex. 11) (Day's 7/6/2018 email to pl.); Doc. 162-3 at 107–08 (Pl. Dep. Ex. 13) (Day's 7/9/2018 email to pl.); Doc. 162-14 at 2–3 (Cutaiar Decl. ¶¶ 6–10); Doc. 162-14 at 6 (Cutaiar Decl. Ex. A) (Region Committee Member Notes); Doc. 162-14 at 8 (Cutaiar Decl. Ex. B) (Region Committee Member Notes); Doc. 162-2 at 13–16 (Roux Dep. 101:22– 102:6, 131:19–132:5) (stating request to tape record is unreasonable); Doc. 162-1 at 55 (Roux Decl. Ex. A) (def.'s Employee Reference Guide explaining def.'s policy prohibiting tape recording of conversations).

**The Parties' July 2018 Communications**

Once the Committee had made its findings, defendant's human resources employee Eric Day contacted plaintiff at least six times to inform her of the findings[5] and work with her to return her to work. Mr. Day communicated with plaintiff on July 2, 3, 6, 9, 10, and 11, 2018.

On July 3, plaintiff and Mr. Day spoke by phone. Plaintiff asked Mr. Day about the Committee meeting's outcome and approval decisions. Doc. 175-2 at 3 (S. Norwood Decl. ¶ 12); Doc. 162-3 at 75 (Pl. Dep. 398:13–19). Mr. Day explained that the Committee would not allow an accommodation in the form of tape recording. Doc. 162-3 at 75–76 (Pl. Dep. 398:17–399:6). Mr. Day also asked plaintiff which meetings she would need an agenda for and which meetings she would need to take notes for. *Id.* at 76 (Pl. Dep. 399:7–15) ("[Day] said—he said what meetings—what meetings would you need an agenda for and what meetings would you need to take notes for."). Plaintiff replied that the ability to tape record would eliminate her need to take notes. *Id.* (Pl. Dep. 399:15–17) ("And I said if I had a tape recorder, I wouldn't need to take notes.").

On July 6, 2018, Mr. Day emailed plaintiff following up on conversations they had on July 2 and 3, 2018. *See* Doc. 162-3 at 106 (Pl. Dep. Ex. 11) (Day's 7/6/2018 email to pl.). Mr. Day explained the Region Accommodation Committee declined the request to tape record as unreasonable given the policy against recording and the nature of the information plaintiff handled on a daily basis. *See id.* Mr. Day previously had explained to plaintiff that in some cases tape recording in the workplace might violate the law. Doc. 162-3 at 104–05 (Pl. Dep. Ex. 7) (Day's 6/19/2018 email to pl.); Doc. 162-6 at 4 (Elroy Dep. 22:1–24) (explaining that plaintiff

---

[5]    Plaintiff denies this fact "as stated" because "[w]hile there was contact, Eric Day did not inform Plaintiff of the Committee's complete findings." Doc. 175 at 14 (citing Doc. 175-2 at 3 (S. Norwood Decl. ¶ 11)). Plaintiff asserts that "Day lied to the Plaintiff and did not disclose the notetaker." *Id.* (citing Doc. 175-2 at 3 (S. Norwood Decl. ¶¶ 11–12)). Plaintiff's assertions don't controvert the undisputed facts about Mr. Day's communications with plaintiff.

8

is on multiple calls with employees in different states and that recording without permission

would result in violating the law in several jurisdictions); Doc. 162-3 at 52 (Pl. Dep. 340:13–22)

(plaintiff acknowledging she did not seek consent of out-of-state call participants before

recording meeting).  Mr. Day's July 6 email also asked:

> The committee needs you to provide additional information as to exactly what
> operations meetings you feel you require agendas and post-meeting notes.  I know
> you have numerous meetings in any given day.  Can you give us some guidance
> on your request?  Are you referring only to certain meetings or every operations
> meeting?

Doc. 162-3 at 106 (Pl. Dep. Ex. 11) (Day's 7/6/2018 email to pl.).

On July 9, 2018, in response to text messages from plaintiff again asking to tape record

meetings, Mr. Day emailed plaintiff.  *Id.* at 107 (Pl. Dep. Ex. 13) (Day's 7/9/2018 email to pl.).

His email again explained that the Committee had deemed her request to tape record

unreasonable.  He also asked plaintiff again to provide information and specify, among other

things, which meetings she needed post-meeting notes for.  Mr. Day's email message read:

> I explained to you that this was because not only is recording a policy violation,
> but in your position you have access to confidential and proprietary information
> which needs to be protected.  As a result, tape recording in the workplace is not
> reasonable.  However, as I mentioned, [defendant] is still exploring what, if
> anything—short of tape recording—will allow you to do your job.  To that end, I
> asked you for which meetings you require an agenda and/or post-meeting notes.
> As you know, you attend numerous operation meetings throughout the day.  You
> still haven't provided us that information.  **Please let us know for which
> meetings you need agendas and/or notes so we can help get you back to work.**

*Id.* (emphasis in original).

On July 9, 2018, plaintiff told Mr. Day, "I do not want to file a Charge with the EEOC,

but [defendant] is creating a situation where I feel I must . . . Please respond with answers to my

questions by close of business Monday, or I will file the charge with the EEOC and perhaps they

can help us resolve the issue."  *Id.* (Pl. Dep. Ex. 13) (pl.'s 7/9/2018 text message to Day); *see*

*also id.* at 27–28 (Pl. Dep. 137:1–138:25).  On July 10, 2018, plaintiff filed her charge.  *See* Doc. 1 (Compl. Attachs. 1–5).

On July 10, 2018, Mr. Day responded to a text message from plaintiff.  Doc. 162-3 at 109 (Pl. Dep. Ex. 14) (Day's 7/10/2018 email to pl.).  The text message had explained plaintiff's desire to tape record and receive meeting agendas for all disciplinary meetings and conferences. *Id.*  Mr. Day's email sought clarification whether plaintiff wished to record only disciplinary meetings and conferences, asking:

> At this point, I understand your request is to record all meetings and conferences regarding performance or disciplinary issues and to receive agendas for those.  Is that accurate?  As we discussed a couple of times, I thought we were looking into operations meetings and how to help you handle that aspect of your job duties. Has that changed?  Please let us know.  We can't help you if you don't tell us exactly what you need.[6]

*Id.*  Plaintiff testified that the accommodation she sought asked to tape record meetings with Human Resources and/or her manager in which her performance or discipline was discussed. Doc. 162-3 at 32–33 (Pl. Dep. 148:15–49:25); Doc. 162-11 at 5–6 (Day Dep. 43:21–44:12).

On July 11, 2018, plaintiff emailed Mr. Day, again pursuing the ability to tape record meetings.  Doc. 162-12 at 11 (Day Decl. Ex. B) (pl.'s 7/11/2018 email to Day).  Plaintiff explained:

> l do not believe [defendant] is interpreting my requests in good faith.  Waring routinely combines operations calls with HR issues.  As an example, on the 6: 15 call, if you don't make your stops per car, he may ask for a write up and then assign Saturday duty.  I will agree that [defendant] may have sole custody of the tapes.  I just need an opportunity to review the tapes later in the day.  But all tapes must be preserved.  I think I have done all I can to address [defendant's] concerns on the taping issue.  l just think [defendant] is not proceeding in good faith, and l have filed an EEOC charge.  Perhaps [defendant] will mediate my accommodation request?  I think [defendant] has violated its obligations under the agreement with the EEOC on accommodation.  Luther Sutter agrees.

---

[6]     Plaintiff emphasizes here, as she does in response to many of the uncontroverted facts about Day's communications with plaintiff, that "Day also did not disclose [defendant] had agreed that a notetaker was reasonable."  Doc. 175 at 16 (citing Doc. 175-2 at 3 (S. Norwood Decl. ¶¶ 11–12)).

> Nonetheless, in the absence of answers to my question on undue burden, I will be compelled to give notice of my retirement on Monday. I urge [defendant] to answer my question on undue burden, but l cannot make [defendant] do so.

*Id.* Later that day, Mr. Day responded:

> I understand you want to tape record, but as I've told you that is not an option for many reasons. The law requires us to provide qualified individuals with an accommodation—not the accommodation of the employee's choice. That being said, we are working hard to understand how we can help you perform your job duties without recording. You mentioned the 6:15 am call. Have you considered requesting a note taker for that call, and then having the notes provided to you after the call? Does that seem like a possible solution? Please let me know. I'm still struggling to understand exactly what you think would help you perform your job other than tape recording.

Doc. 162-3 at 111–12 (Pl. Dep. Ex. 16) (Day's 7/11/2018 email to pl.); Doc. 162-3 at 143 (Pl.

Dep. Ex. 34) (Day's 7/12/2018 email to pl.). Plaintiff responded to Mr. Day's email, but she did

not acknowledge or otherwise respond to his questions about a note taker, instead focusing on

how much leave she had remaining. Doc. 162-3 at 143 (Pl. Dep. Ex. 34) (pl.'s 7/11/2018 PM

email to Day); Doc. 162-3 at 71–73 (Pl. Dep. 377:20–79:25).[7] Plaintiff conceded in her

deposition that having a note taker at meetings would have been a reasonable accommodation.

Doc. 162-3 at 7 (Pl. Dep. 39:14–19).[8]

---

[7]     Plaintiff admits this statement of fact, but again emphasizes: "Day did not state that [defendant] proposed a note taker. Additionally, Day had an obligation to get an answer about the note taker as well as inform Plaintiff of the consequences of not answering [defendant]." Doc. 175 at 17 (¶ 72) (citing Doc. 175-1 at 93 (Narimatsu Dep. 92:1–23)). Plaintiff's assertions don't controvert defendant's properly-supported statements of fact.

[8]     Plaintiff denies this statement of fact. She responds:

> Eric Day never told Plaintiff what [defendant] proposed. He merely asked what Plaintiff's thoughts were. Gayle Narimatsu agrees this is different and [defendant] has a duty to follow up with Plaintiff if she does not respond explaining the consequences of failing to respond. [Defendant] did not do this thereby failing to engage in the good faith interactive process.

Doc. 175 at 17 (¶ 73) (citing Doc. 175-1 at 93 (Narimatsu Dep. 92:1–23)). Plaintiff's assertions don't controvert the undisputed facts about plaintiff conceding that having a note taker at meetings would have been a reasonable accommodation.

**Plaintiff's Attorney's July 12, 2018 Communication with Defendant on Plaintiff's Behalf**

On July 12, 2018, plaintiff's counsel, Luther Sutter, contacted defendant.  He asserted that plaintiff had instructed him to pursue a severance on her behalf, and that if defendant did not offer an "appropriate" severance package, she intended to retire.  Doc. 158 at 3 (Pretrial Order ¶ 2.a.vi.).  Plaintiff's representative also requested that all communications about plaintiff be directed to him.  *Id.*  He did not mention plaintiff's request for accommodation in his July 12, 2018 communication.  *Id.*; Doc. 162-3 at 127 (Pl. Dep. Ex. 26) (Sutter's 7/12/2018 email to def.).

**Plaintiff's Retirement Plans**

Despite her lawyer's instruction that communications should go through him, around July 27, 2018, plaintiff left a voicemail for Roux stating that her doctor had recommended that she not return to work, and so she wished to retire.  Doc. 162-1 at 5 (Roux Decl. ¶¶ 15–19) (explaining receipt of voicemail).[9]  By September 18, 2018, plaintiff submitted retirement paperwork, signaling that she intended to retire on November 1, 2018.  Doc. 162-3 at 50–51 (Pl. Dep. 333:20–34:14); Doc. 162-3 at 128 (Pl. Dep. Ex. 27) (9/18/2018 retirement report including plaintiff's name); Doc. 162-12 at 4 (Day Decl. ¶ 12); Doc. 162-12 at 20–21 (Day Decl. Ex. D) (Sept.–Oct. 2018 email exchange indicating pl. submitted retirement paperwork with a projected retirement date of Nov. 1, 2018); Doc. 162-11 at 13 (Day Dep. 124:3–20).

Based on plaintiff's decision to retire, defendant filled her position.  Doc. 162 at 23 (DSOF ¶ 79) (first citing Doc. 162-3 at 84–90 (Pl. Dep. 445:9–51:6); then citing Doc. 162-3 at 151–53 (Pl. Dep. Ex. 37) (Jan. 2019 email exchange); then citing Doc. 162-12 at 4 (Day Decl. ¶

---

[9]     Plaintiff admits this fact and responds, "Day had not disclosed [defendant] had agreed that a notetaker was reasonable[,] so Plaintiff believed retirement was her only option."  Doc. 175 at 18 (citing Doc. 175-2 at 3 (S. Norwood Decl. ¶¶ 11–12)).  Plaintiff's assertions don't controvert the undisputed facts about communicating to defendant her wish to retire.

12); then citing Doc. 162-12 at 20–21 (Day Decl. Ex. D) (Sept.–Oct. 2018 email exchange)

(further citations omitted)).[10]

After submitting her retirement paperwork, and despite her lawyer's instructions that he

was the point of contact, plaintiff again contacted defendant's personnel asking to audio record

meetings.  Doc. 162-10 at 42 (Def.'s Answers to Pl.'s Reqs. for Admis., RFA No. 148)

(admitting UPS 1607–08 is an email exchange between def. and pl.).[11]  Defendant offered to

reverse plaintiff's retirement request and resume the accommodation process, offering to search

for open positions she was qualified to perform (either with or without accommodation).  Doc.

162-12 at 4 (Day Decl. ¶ 12); Doc. 162-12 at 20–21 (Day Decl. Ex. D); Doc. 162-3 at 84–87 (Pl.

Dep. 445:9–448:15); Doc. 162-3 at 151–53 (Pl. Dep. Ex. 37) (Sept.–Nov. 2018 email exchange);

Doc. 162-10 at 39–40 (Def.'s Answers to Pl.'s Reqs. for Admis., RFA Nos. 136 and 138); Doc.

162-13 at 3 (Def.'s Resp. to Pl.'s First Interrogs. and RFPDs, No. 2).[12]

Plaintiff responded by again stating she wanted to tape record.  Doc. 162-13 at 6 (Def.'s

Resps. to Pl.'s First Interrogs. and RFPDs, Interrog. No. 2).  At plaintiff's request, defendant

moved her retirement date from November 1, 2018, to February 5, 2019, and then again (on her

---

[10]     Plaintiff denies this fact.  She asserts that she "told Eric Day she was considering retiring" and defendant "used this as a way to force Plaintiff into retirement."  Doc. 175 at 19 (¶ 79) (citing Doc. 162-12 (Day Decl.)).  Plaintiff's citation fails to comply with D. Kan. Rule 56.1(b).  It also cannot support the assertion plaintiff offers in response to DSOF ¶ 79.

[11]     Plaintiff admits this fact but adds that plaintiff "continued to ask what [defendant] proposed for an accommodation."  Doc. 175 at 19 (citing Doc. 175-2 at 6–7 (¶¶ 23–29)).  She also adds that "Eric Day never answered Plaintiff's questions even when he should have."  Id. (citing Doc. 175-1 at 94–95 (Narimatsu Dep. 93:22–94:1)).

[12]     Plaintiff asserts that her "accommodation request was placed on a legal hold beginning in August 2019."  Doc. 175 at 19 (¶ 81) (citing Doc. 175-1 at 93–95 (Narimatsu Dep. 92–94)).  She adds that plaintiff "continued to ask what [defendant] proposed for an accommodation" and "Eric Day never answered Plaintiff's questions even when he should have."  Id. (citing Doc. 175-1 at 55 (Narimatsu Dep. 54)).  Plaintiff's assertions don't controvert the undisputed facts about defendant's communications with plaintiff.

own request) from February 5, 2019, to April 1, 2019.  <u>Doc. 162-11 at 14</u> (Day Dep. <u>126:3–</u>
<u>10</u>).[13]

The court next recites the legal standard governing defendant's Motion for Summary

Judgment.

## B.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine

dispute" exists about "any material fact" and that it is "entitled to judgment as a matter of law."

<u>Fed. R. Civ. P. 56(a)</u>; *see also Celotex Corp. v. Catrett*, <u>477 U.S. 317, 322</u> (1986).  When the

court applies this standard, it views the evidence and draws reasonable inferences in the light

most favorable to the non-moving party.  *Scott v. Harris*, <u>550 U.S. 372, 378</u> (2007).  But the

court "need not make unreasonable inferences or adopt one party's version of the facts if the

record doesn't support it."  *Harte v. Bd. of Comm'rs of Cnty. of Johnson, Kan.*, <u>864 F.3d 1154,</u>

<u>1173</u> (10th Cir. 2017).  An issue of "material fact is 'genuine' . . . if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party" on the issue.  *Anderson v.*

*Liberty Lobby, Inc.*, <u>477 U.S. 242, 248</u> (1986).  And, an issue of fact is "material" if it has the

ability to "affect the outcome of the suit under the governing law[.]"  *Id.*

The party moving for summary judgment bears the initial burden of showing "the basis

for its motion."  *Celotex Corp.*, <u>477 U.S. at 323</u>; *Kannady v. City of Kiowa*, <u>590 F.3d 1161, 1169</u>

(10th Cir. 2010) (explaining that the moving party bears "'both the initial burden of production

on a motion for summary judgment and the burden of establishing that summary judgment is

appropriate as a matter of law'" (quoting *Trainor v. Apollo Metal Specialties, Inc.*, <u>318 F.3d 976,</u>

<u>979</u> (10th Cir. 2002)).  A summary judgment movant can satisfy this burden by demonstrating

---

[13]     Plaintiff admits this statement of fact but adds that she "continued to try to seek an
accommodation from defendant, but retired when she had no other option."  <u>Doc. 175 at 19</u> (¶ <u>83</u>).  She
cites no summary judgment evidence to support this response.  *See id.*

"that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also Kannady*, 590 F.3d at 1169 (explaining that, to meet its summary judgment burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim" (citation and internal quotation marks omitted)).

If the moving party satisfies its initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation and internal quotation marks omitted); *see also Kannady*, 590 F.3d at 1169 ("If the movant carries [the] initial burden, the nonmovant may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof." (citation and internal quotation marks omitted)).  To satisfy this requirement, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (citation and internal quotation marks omitted).  When deciding whether the parties have shouldered their summary judgment burdens, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The court applies this same standard to cross motions for summary judgment.  Each party bears the burden of establishing that no genuine issue of material fact exists and that it is entitled, as a matter of law, to the judgment sought by its motion.  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).  Cross motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co.*

*v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).  In certain circumstances, however, ruling one motion may render the other motion moot.  *See, e.g.*, *Szczygiel v. Kansas*, No. 14-CV-3011-EFM, 2016 WL 838935, at *8 (D. Kan. Mar. 3, 2016) (denying "as moot" plaintiff's cross-motion for summary judgment and explaining that because of the court's rulings on defendant's motion for summary judgment, the court "need not consider Plaintiff's cross-motion for summary judgment").  But where the cross motions overlap, the court may address the legal arguments together.  *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

Summary judgment is not a "disfavored procedural shortcut[.]"  *Celotex Corp.*, 477 U.S. at 327.  Instead, summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Id.* (quoting Fed. R. Civ. P. 1 (further citation omitted)).

## C.    Discussion

Defendant argues that it deserves summary judgment against plaintiff's failure to accommodate claim for two reasons.  *First*, because plaintiff rejected defendant's reasonable and effective accommodation.  Doc. 162 at 27–31.  And *second*, because any breakdown in interactive dialogue is attributable solely to actions of plaintiff and her attorney.  *Id.* at 31–32.  Plaintiff challenges both reasons.  *See, e.g.*, Doc. 174 at 1–3 (¶¶ 2, 4).  She argues that (1) defendant never offered her an accommodation, *see, e.g.*, Doc. 175 at 26 ("THIS IS FALSE"), and (2) defendant bears the blame for the breakdown in the accommodation process, Doc. 174 at 2 (¶ 2).  The court agrees with plaintiff, to some extent at least, on her first point.

As the court discusses below, a reasonable juror could conclude that defendant's dialogue with plaintiff about taking notes, post-meeting notes, and a note taker did not qualify as

16

defendant offering an accommodation.  Instead, a reasonable jury could find that defendant's actions merely attempted to foster an accommodation discussion with plaintiff to identify the scope of her needs and possible accommodations to satisfy those needs, and asked plaintiff to provide the information the Committee needed to assess possible accommodations.  *See* Doc. 162-3 at 106 (Pl. Dep. Ex. 11) (Day's 7/6/2018 email to pl.); Doc. 162-3 at 111 (Pl. Dep. Ex. 16) (Day's 7/11/2018 email to pl.).

The court thus devotes most of its analysis to defendant's second argument.  In it, the court considers whether plaintiff's failure to engage in the interactive process precludes her claim that defendant must face liability for failing to provide her a reasonable accommodation.

The court now briefly recites the law governing motions for summary judgment against ADA claims for failure to accommodate.

### 1. Summary Judgment Standard for Failure to Accommodate Claims

The Tenth Circuit "has adopted a modified burden-shifting framework to assess" failure to accommodate claims "simply to provide a useful structure by which the district court, when considering a motion for summary judgment, can determine whether the various parties have advanced sufficient evidence to meet their respective traditional burdens to prove or disprove the reasonableness of the accommodations offered or not offered."  *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (citation and internal quotation marks omitted).  "Under this modified framework, the employee must make an initial showing that (1) she is disabled; (2) she is otherwise qualified; and (3) she requested a plausibly reasonable accommodation."  *Id.* (citation and internal quotation marks omitted).

"Once the employee produces evidence sufficient to make a facial showing on . . . her prima facie case, the burden of production shifts to the employer to present evidence either (1)

conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Id.* (citation and internal quotation marks omitted).  If the employer makes one of those two showings, "summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitates any challenged elements of . . . her prima face case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Id.* (citation and internal quotation marks omitted).

### 2.   Plaintiff's Prima Facie Claim for Failure to Accommodate

Defendant asserts that plaintiff cannot establish a prima facie case for failure to accommodate under the ADA because plaintiff cannot establish that she requested a plausibly reasonable accommodation, and defendant failed to accommodate her reasonably.  Doc. 162 at 28 (citing *Punt*, 862 F.3d at 1050).  "The federal regulations implementing the ADA envision an interactive process that requires participation by both parties." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999) (citation and internal quotation marks omitted).  "In general, the interactive process must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting limitations, and expressing a desire for reassignment if no reasonable accommodation is possible in the employee's existing job." *Id.* at 1171–72 (citation and footnoted citations omitted).  "The employee should provide enough information about his or her limitations and desires so as to suggest at least the possibility that reasonable accommodation may be found in a reassignment job within the company." *Id.* at 1172.

"Once the employer's responsibilities within the interactive process are triggered by appropriate notice by the employee, both parties have an obligation to proceed in a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodations, for another job within the company and, if so, to identify an appropriate reassignment opportunity if any is reasonably available." *Id.* "The obligation to participate in this interactive process is inherent in the statutory requirement that the employer offer a disabled, but otherwise qualified employee a reasonable accommodation." *Aubrey v. Koppes*, 975 F.3d 995, 1007 (10th Cir. 2020). "The interactive process is typically an essential component of the process by which a reasonable accommodation can be determined." *Smith*, 180 F.3d at 1172.

"The interactive process requires the good faith participation of both the employer <u>and</u> employee." *Aubrey*, 975 F.3d at 1007. "Neither party may create or destroy liability by causing a breakdown of the interactive process." *Id.* at 1008–09 (citation and internal quotation marks omitted). "While the exact shape of this interactive dialogue will necessarily vary from situation to situation and no rules of universal application can be articulated, the interactive process necessarily includes good-faith communications between the employer and employee." *Id.* at 1007 (citation, internal quotations marks, and alterations omitted). "This is imperative because each side will possess different information, all of which is critical to determining whether there is a reasonable accommodation that might permit the disabled employee to perform the essential functions of her job." *Id.* "Both the employer and the employee have a responsibility to share relevant information in an attempt to craft a reasonable accommodation." *McFarland v. City & Cnty. of Denver*, 744 F. App'x 583, 587 (10th Cir. 2018).

Here, the parties do not disagree that plaintiff's request for an accommodation triggered defendant's duty to engage in good faith with plaintiff in "an interactive process to determine her limitations and consider whether the accommodations she requested, or perhaps others that might come to light during this interactive process, would enable [plaintiff] to return to work." *Aubrey*, 975 F.3d at 1007. While away from work on approved medical leave in May 2018, plaintiff contacted defendant about her accommodation request. Doc. 162-8 at 2 (Narimatsu Decl. ¶ 10). On May 14, 2018, defendant sent plaintiff an accommodation packet. *Id.* at 22–23 (Narimatsu Decl. Ex. E).[14]  On May 22, 2018, defendant sent plaintiff a reminder notification to return her ADA materials. *Id.* at 3 (Narimatsu Decl. ¶ 12); *Id.* at 25–26 (Narimatsu Decl. Ex. F).  On June 5, 2018, plaintiff returned the accommodation paperwork. Doc. 162-8 at 3 (Narimatsu Decl. ¶ 13); Doc. 162-8 at 28–36 (Narimatsu Decl. Ex. G) (Accommodation Packet).

Plaintiff and defendant engaged in an interactive process between June 2018 and July 2018.  Defendant's summary judgment motion requires the court to decide—on the summary judgment version of the facts—whether a reasonable juror could concluding that anyone but plaintiff caused that interactive process to collapse.  The court begins by considering the extent of defendant's role.

---

[14]    This dispatch was the second accommodation packet defendant had provided plaintiff.  On March 26, 2018, plaintiff had signaled that she needed an accommodation. Doc. 162-3 at 96 (Pl. Dep. Ex. 4). Defendant provided plaintiff with instructions about how to seek an accommodation. *Id.* at 95 (Pl. Dep. Ex. 4).  On March 29, 2018, plaintiff e-mailed Roux to "request an agenda of all meetings, as well as the ability to tape[ ] record." Doc. 161-1 at 119 (Roux Decl. Ex. B) (pl.'s 3/29/2018 email to Roux).  On April 2, 2018, defendant sent plaintiff an accommodation packet. Doc. 162-8 at 5–6 (Narimatsu Decl. Ex. A).  Defendant asked plaintiff to return the completed forms as quickly as possible, explaining that failing to return the forms within four weeks of April 2, 2018, would amount to withdrawing her request. *Id.*  On April 16, 2018, defendant sent plaintiff a reminder to submit her paperwork timely. *Id.* at 18 (Narimatsu Decl. Ex. C).  Plaintiff did not return the paperwork, which resulted in defendant closing plaintiff's case on April 30, 2018. *Id.* at 20 (Narimatsu Decl. Ex. D).  Plaintiff admits this statement of fact and adds that she "was o[n] medical leave[,]" but she cites nothing to support that comment. *See* Doc. 175 at 12 (¶ 48).  No reasonable juror could conclude that plaintiff was anything but the sole cause of the breakdown in this initial stage of the accommodations process.

20

**a. Whether Defendant Contributed to the Breakdown in the Interactive Process (or Otherwise Failed to Discharge its Obligation to Proceed in a Reasonably Interactive Manner)**

Plaintiff asserts that defendant was the *sole* cause of the breakdown in the interactive process. *See* Doc. 175 at 29. Several courts have held that when an employer contributes to the breakdown in the interactive process, that contribution will preclude summary judgment for the employer, even if the employee is also blameworthy. *See, e.g.*, *Aubrey*, 975 F.3d at 1008–09; *Jones v. Blue Cross Blue Shield of La.*, No. CV 16-340-JWD-RLB, 2018 WL 618599, at *9 (M.D. La. Jan. 29, 2018). The court thus considers not whether defendant was the sole cause, but, instead, whether a reasonable juror could conclude from the summary judgment facts that defendant contributed meaningfully to the breakdown in the interactive process.

Plaintiff argues that defendant's human resources employee Eric Day spoiled the interactive process in early July 2018. During a telephone call, plaintiff asked Mr. Day about what the Committee had approved during its June 28 review of plaintiff's request to receive meeting agendas and tape record meetings. Doc. 175-2 at 3 (S. Norwood Decl. ¶ 12); *see also* Doc. 162-3 at 75 (Pl. Dep. 398:13–99:17). Mr. Day failed to tell plaintiff and her husband that defendant "had approved a Notetaker." Doc. 175-2 at 3 (S. Norwood Decl. ¶ 12).[15] Mr. Day asked her which meetings she would need to take notes for. *See* Doc. 162-3 at 76 (Pl. Dep. 399:7–15) ("[Day] said—he said what meetings—what meetings would you need an agenda for and what meetings would you need to take notes for."). Plaintiff replied that the ability to tape record meetings would eliminate her need to take notes. *Id.* (Pl. Dep. 399:15–17) ("And I said if I had a tape recorder, I wouldn't need to take notes.").

---

[15]    It is uncontroverted that the Committee identified reasonable alternatives to tape recording. They included providing meeting agendas to plaintiff for specific meetings; designating a note-taker for identified meetings; and, authorizing note taking by both plaintiff and a designated note-taker during identified meetings, so that both sets of notes could be compared to ensure completeness, consistency, and accuracy. *See* Doc. 175 at 14 (¶ 60).

Plaintiff asserts that Mr. Day "lied to the Plaintiff and did not disclose the notetaker." Doc. 175 at 14 (¶ 61) (citing Doc. 175-2 at 3 (¶¶ 11–12)). In her brief opposing defendant's Motion for Summary Judgment, plaintiff exclaims that the "minute Mr. Day misle[ ]d [plaintiff], the accommodation process failed!" *Id.* at 40. And she asserts that had Mr. Day "simply told Plaintiff and her husband the truth in their telephone conversation, this case may never have been filed." *Id.* at 4. The court rejects plaintiff's argument. Under the summary judgment facts, *i.e.* the uncontroverted facts established by the summary judgment record viewed in the light most favorable to the plaintiff, no reasonable fact finder could conclude that defendant contributed meaningfully to the breakdown in the interactive process. Several reasons support this conclusion.

*First*, the interactive process did not collapse when Mr. Day failed to disclose the Committee's findings fully. Again, plaintiff asserts that the "minute Mr. Day misle[ ]d [plaintiff], the accommodation process failed!" *Id.* at 40. But this argument can find no support in the summary judgment record. The uncontroverted facts show that the accommodation process continued well after the July 3 phone call. At least one district court in our Circuit has reasoned that ongoing communication between employer and employee undermines plaintiff's claim that the employer caused the interactive process to breakdown. *See Mares v. Colo. Coal. for the Homeless*, No. 19-CV-03144-MEH, 2020 WL 7230625, at *9 (D. Colo. Dec. 8, 2020) (granting summary judgment after rejecting plaintiff's argument that employer "violated its obligation to engage in the ADA interactive process in working to identify an accommodation for Plaintiff's disability" where plaintiff-employee and defendant-employer "had literally dozens of communications during the relevant time period").

Here, after plaintiff and Mr. Day spoke by telephone on July 3, 2018, the two continued their ongoing dialogue about accommodations for at least one more week. The parties communicated frequently during this period. Between July 3 and July 11, plaintiff and Day communicated by phone calls, text messages, and emails.[16] Their communications sought and provided clarifications about both the scope of plaintiff's request for accommodations and defendant's reasoning for deeming certain requests unreasonable.[17] No reasonable juror could conclude from this substantive and productive exchange about accommodations that the interactive process broke down immediately on July 3. Only after July 3, and following several more exchanges via multiple mediums, did the interactive process break down.

But rejecting plaintiff's assertion that the interactive process came to an abrupt halt during that phone call does not resolve the issue whether Mr. Day's communication with plaintiff during the July 3 call precludes summary judgment against plaintiff's claim. Plaintiff explains that other courts have noted that the coup de grâce ending the interactive process is not necessarily the breakdown's cause. *See* Doc. 175 at 33. For example, the Seventh Circuit has held that the "last act in the interactive process is not always the cause of a breakdown, however, and courts must examine the process as a whole to determine whether the evidence requires a finding that one party's bad faith caused the breakdown." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 806 (7th Cir. 2005). Under *Sears*, an earlier act of bad faith, even if not instantly fatal, can still own the blame for a later breakdown.

Even if *Sears* represented controlling authority, the case would not favor plaintiff's position on this issue. Plaintiff's arguments might suggest that the earlier event causing a later

---

[16]     Plaintiff used text messages to communicate to overcome a temporary problem affecting either her outgoing emails to defendant or defendant's incoming emails from plaintiff. *See* Doc. 162-3 at 107–09, 111 (Pl. Dep. Exs. 13, 14, 16); *see also* Doc. 162-3 at 28 (Pl. Dep. 138:13–25).

[17]     *See* Doc. 162-3 at 106–12 (Pl. Dep. Exs. 11, 13–16).

23

breakdown was the July 3 conversation between plaintiff and Mr. Day. But that call, including Mr. Day's failure to answer plaintiff's question about the Committee's findings fully, neither ended the interactive process nor threatened it. Instead, it is undisputed, that phone conversation induced frequent communication between plaintiff and Mr. Day over the next week or so. That flurry of communication helped the parties understand and clarify, to some extent, each party's position. And this interactive process continued until July 12, 2018, when an intervening event ended the interactive process. The parties' numerous and productive discussions following the July 3 phone call preclude a reasonable juror from tracing the later breakdown back to Mr. Day's failure to disclose certain information during a phone call more than a week earlier. In short, the record cannot support a reasonable conclusion that Mr. Day's conduct during the July 3 phone call planted the seeds of destruction that later sprouted and eroded the interactive process.

*Second*, the extensive communications between plaintiff and Mr. Day reveal plaintiff's steadfast desire to secure an accommodation in the form of tape recording over an alternative accommodation. "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009); *see also Hankins v. The Gap, Inc.*, 84 F.3d 797, 800–01 (6th Cir. 1996); *Keyhani v. Trustees of Univ. of Pa.*, 812 F. App'x 88, 91–92 (3d Cir. 2020). The summary judgment record shows that plaintiff, at nearly every turn and even after defendant had suggested a note taker, displayed no interest in discussing a substitute accommodation for her preferred one—tape recording meetings.

For example, during the July 3 phone call with Mr. Day, plaintiff declined to answer questions about note taking, and instead reasserted the virtue of tape recording. *See* Doc. 162-3 at 76 (Pl. Dep. 399:7–17) ("[Day] said—he said what meetings—what meetings would you need

24

an agenda for and what meetings would you need to take notes for.  And I said if I had a tape recorder, I wouldn't need to take notes.").  The parties' subsequent communications similarly feature plaintiff's focus on tape recording at the expense of engaging in reasonable interaction with defendant.  *See, e.g.*, *id.* at 106–12, 143–49 (Pl. Dep. Exs. 11, 13–16, 34).  Plaintiff threatened to file an EEOC Charge unless defendant responded to her questions about tape recording.  *See* Doc. 162-3 at 110 (Pl. Dep. Ex. 15) ("I do not want to file a Charge with the EEOC, but [defendant] is creating a situation where I feel I must . . . Please respond with answers to my questions by close of business Monday, or I will file the charge with the EEOC and perhaps they can help us resolve the issue.").  And, even after announcing her intent to retire, plaintiff resumed expressing her desire to tape record.  Doc. 162-13 at 6 (Def.'s Resps. to Pl.'s First Interrogs. and RFPDs, Interrog. No. 2).  Plaintiff's relentless pursuit of tape recording—in the face of defendant's repeated efforts to explain this accommodation's problems—is palpable.  And it prevents a reasonable juror from finding that defendant caused the breakdown in the interactive process.

Also, plaintiff has explained that it was her unfruitful requests about tape recording (not notetaking) that led her to view the interactive process as deteriorating.  Plaintiff's text messages and emails reveal her frustration stemming from defendant's decision not to grant her requests to tape record, and her dissatisfaction with Mr. Day's answers to her questions about why the Committee deemed tape recording an unreasonable accommodation.[18]  To the extent that

---

[18]     *See* Doc. 162-3 at 107 (Pl. Dep. Ex. 13) (pl.'s 7/8/2018 text message to Day) ("Please tell me what is the undue burden with tape recording?"); Doc. 162-3 at 107 (pl.'s 7/9/2018 text message to Day) ("I must say that I really would like answers to my questions.  Why is a tape recording an undue burden?  I do not want to file a charge with the EEOC, but [defendant] is creating a situation where I feel I must."); Doc. 162-3 at 110 (Pl. Dep. Ex. 15) (pl.'s 7/11/2018 email to Day) ("I do not believe [defendant] is interpreting my request in good faith. . . . I think I have done all I can to address [defendant's] concerns on the taping issue.  I just think [defendant] is not proceeding in good faith, and I have filed an EEOC charge. . . . in the absence of answers to my question on undue burden, I will be compelled to give notice

defendant's subjectively unsatisfying answers to plaintiff's questions about accommodations induced plaintiff to walk away from the dialogue, no reasonable juror could conclude that those questions or unsatisfying answers pertained to *notetaking*. Nonetheless, plaintiff asserts that had Mr. Day "simply told Plaintiff and her husband the truth" about the possibility of accommodation in the form of a notetaker "this case may never have been filed." Doc. 175 at 4. No reasonable fact finder could agree with plaintiff about this factual contention.

*Third*, the summary judgment facts establish that defendant's conduct during the interactive process nourished an interactive dialogue rather than smothered it. In our Circuit, "parties have an obligation to proceed in a reasonably interactive manner[.]" *Smith*, 180 F.3d 1172; *see also Aubrey*, 975 F.3d at 1009 (describing the "obligation to undertake a good faith back-and-forth process"). Plaintiff invites the court to take a broader view of the interaction between the parties to determine who caused the interactive process to collapse. *See* Doc. 175 at 33 (citing *Sears, Roebuck & Co.*, 417 F.3d at 806). *Sears* held that "courts must examine the process as a whole to determine whether the evidence requires a finding that one party's bad faith caused the breakdown." *Sears, Roebuck & Co.*, 417 F.3d at 806. *Sears* emerged from the Seventh Circuit, but our Circuit has applied similar reasoning when determining whether an employer failed to engage in the interactive process. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1207 & n.29 (10th Cir. 2018) (rejecting appellants' suggestion that "they can advance their failure to accommodate claims past the summary judgment stage based on [employer's] failure to engage in the interactive process" because, "based on [defendant's] *over two years of efforts* to provide Appellants training and job opportunities, [the Tenth Circuit] agree[s] with the district

---

of my retirement on Monday. I urge [defendant] to answer my question on undue burden, but I cannot make [defendant] do so.").

court that the evidence conclusively shows that [defendant] engaged in the interactive process"
(emphasis added)).

Here, that broader view of the parties' accommodations dialogue reveals undisputed facts
establishing that defendant made repeated efforts to work with plaintiff after she expressed a
desire to seek an accommodation.  Mr. Day's communications with plaintiff following the July 3
call reveal his responses to plaintiff's frequent questions about tape recording, and also his
attempts to solicit additional details about plaintiff's request for an accommodation involving
meetings—including the specific meetings for which plaintiff required post-meeting notes.
Plaintiff's arguments ask the court to dissect the specific wording of Mr. Day's response to
plaintiff's question during the July 3 phone call.  But given the law governing cases in our
Circuit, the court cannot conclude that any reasonable juror could find Mr. Day's phone
conversation with plaintiff—even if he failed to answer plaintiff's question fully —taints
defendant's conduct during the multi-week dialogue about accommodations.  Some of that
dialogue continued productively long after the act that (according to plaintiff) poisoned the
parties' reservoir of cooperation.  "The ADA contemplates an affirmative obligation to undertake
a good faith back-and-forth process between the employer and the employee, with the goal of
identifying the employee's precise limitations and attempting to find a reasonable
accommodation for those limitations."  *Aubrey*, 975 F.3d at 1009.  "There may not always be a
workable accommodation, but the ADA mandates that the employer work with the employee to
try to find one."  *Id.*  Given defendant's numerous constructive actions and communications
during the interactive process between June 2018 and July 2018, no reasonable juror could find
that defendant failed to engage with plaintiff to try to find a workable accommodation.  And no
reasonable jury could find that defendant otherwise failed to satisfy its "obligation to proceed in

27

a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodations, for another job within the company and, if so, to identify an appropriate reassignment opportunity if any is reasonably available." *Smith*, 180 F.3d at 1172.

*Fourth*, defendant's failure to make an explicit offer of a note taker doesn't preclude summary judgment. No reasonable juror could conclude from this case's summary judgment facts that defendant failed to discharge its duty to work with the employee to try to find a workable accommodation.

Defendant argues that during its early July communication with plaintiff, defendant proposed an alternative accommodation—a note taker. Plaintiff disagrees. Mr. Day asked plaintiff: "Have you considered requesting a note taker for that call, and then having the notes provided to you after the call? Does that seem like a possible solution? Please let me know. I'm still struggling to understand exactly what you think would help you perform your job other than tape recording." Doc. 162-3 at 111 (Pl. Dep. Ex. 16) (Day's 7/11/2018 email to pl.). This question (and Mr. Day's previous discussions with plaintiff about meeting notes) injected the possibility of accommodation in the form of a note taker into the dialogue. But a reasonable juror could conclude that Mr. Day's comment did not necessarily *offer* a note taker as an accommodation. Mr. Day had told plaintiff just a few days earlier that:

> The committee is still trying to arrive at a solution that will hopefully allow you to return to work. As I mentioned, in order to continue assessing possible accommodations, the committee needs you to provide additional information as to exactly what operations meetings you feel you require agendas and post-meeting notes. . . . Can you give us some guidance on your request? Are you referring only to certain meetings, or every operations meeting? Thanks in advance for letting me know. I'll set up a review with the committee as soon as I hear from you.

Doc. 162-3 at 106 (Pl. Dep. Ex. 11) (Day's 7/6/2018 email to pl.).  This report about the Committee's work on plaintiff's accommodations requests signaled that the Committee still required additional information before it could arrive at a solution.

Given Mr. Day's continued struggle to solicit information from plaintiff, a reasonable juror could conclude that, the Committee, when Mr. Day emailed plaintiff on July 11, still lacked the additional information needed to arrive at a solution that might allow plaintiff to return to work.  In short, a reasonable juror could conclude that Mr. Day's July 11 comment about a note taker wasn't an offer, but instead merely reflected defendant's ongoing effort to work with plaintiff to identify the scope of her need for accommodation and identify possible accommodations that would satisfy that need.  So, Mr. Day putting a note taker on the table for discussion may not suffice to discharge defendant's obligations.  But Mr. Day's comment about plaintiff requesting a note taker (especially considered in the full context of his ongoing dialogue with plaintiff), supports defendant's argument that it discharged its obligation "to undertake a good faith back-and-forth process" with the employee, all "with the goal of identifying the employee's precise limitations and attempting to find a reasonable accommodation for those limitations."  *Aubrey*, 975 F.3d at 1009.

*Fifth*, no reasonable fact finder could accept plaintiff's characterization of Mr. Day's responses during the July 3, 2018 phone conversation.  Plaintiff proposes that a juror reasonably could infer that defendant's conduct during the interactive process was deceptive and dishonest.  *See, e.g.*, Doc. 175 at 4 (asserting that "there is evidence of employer deceptive conduct"); Doc. 175 at 14 (¶ 61) ("Day lied to the Plaintiff and did not disclose the notetaker." (citing Doc. 175-2 at 3 (S. Norwood Decl. ¶¶ 11–12))); Doc. 175 at 27 (asserting that "a reasonable jury could find

29

that Eric Day lied"). She asserts that Mr. Day "conceals" defendant's "decision to propose a notetaker." Doc. 175 at 3 (citing Doc. 175-2 at 3 (S. Norwood Decl. ¶ 12)).

At summary judgment, the non-movant surely deserves the benefit of all reasonable inferences. But this principle doesn't entitle the non-movant to unreasonable inferential leaps lacking any evidentiary support. "Although our summary judgment standard requires us to view the facts in the light most favorable to the non-moving party, it does not require us to make unreasonable inferences in favor of the non-moving party." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1187 (10th Cir. 2013) (citation and internal quotation marks omitted). Here, plaintiff's deposition testimony about the content of her July 3 phone call with Mr. Day undermines her allegations of bad faith. Plaintiff testified that Mr. Day failed to disclose explicitly or enumerate reasonable alternative accommodations and, instead, only asked her for information about those reasonable alternative accommodations. *See* Doc. 162-3 at 76 (Pl. Dep. 399:7–17). Plaintiff explained she asked Mr. Day about the Committee's decisions, and then Mr. Day asked her which meetings she needed to take notes for. *See id.* ("[Day] said—he said what meetings—what meetings would you need an agenda for and what meetings would you need to take notes for. And I said if I had a tape recorder, I wouldn't need to take notes."). Plaintiff thus describes Mr. Day as soliciting information about the same possible accommodation she asserts he deceptively was concealing from her. *Id.* Given these undisputed facts about the phone conversation's content, accepting plaintiff's assertion that Mr. Day acted in bad faith requires a fact finder to make an unreasonable inference lacking support from the record. No reasonable trier of fact could reach that conclusion.

*Sixth*, the facts here differ from cases where courts have faulted the employer for scuppering the interactive process. Our Circuit has held that evidence from which a reasonable

jury could find defendant failed to engage in the interactive process exists where "a jury could

find that [defendant] made no effort to discover exactly what [plaintiff's] limitations were at that

time, nor in exploring with [plaintiff] whether there were any accommodations that would have

enable[d] her to return to work at that time, or in the near future, even with her limitations."

*Aubrey*, 975 F.3d at 1008.  In contrast, the undisputed facts supply several examples of

defendant's efforts to discover exactly what plaintiff's limitations were and explore with plaintiff

whether there were any viable accommodations.  When plaintiff failed to respond directly (if at

all) to defendant's inquiries about plaintiff's specific limitations, defendant asked again.  *See,*

*e.g.*, Doc. 162-3 at 107 (Pl. Dep. Ex. 13) (Day's 7/9/2018 email to pl.) ("I asked you for which

meetings you require an agenda and/or post-meeting notes.  As you know, you attend numerous

operation meetings throughout the day.  You still haven't provided us that information.  **Please**

**let us know for which meetings you need agendas and/or notes so we can help get you back**

**to work.**" (emphasis in original)).  And when plaintiff sought information about defendant's

assessment of her proposed tape-recording accommodation, defendant reexplained its

reasoning.[19]  While plaintiff emphasizes that defendant failed to disclose explicitly to plaintiff

---

[19]     *See, e.g.*, Doc. 162-3 at 104 (Day's 6/19/2018 email to pl.) ("After thinking through your request
to have a recording device for conversations, I think the best approach would be to let the
accommodations process play out.  Our standard practice is, we do not record any conversations or
meetings at [defendant], its best we continue to follow that practice and not record any conversations or
meetings that take place.  You deal with sensitive, confidential information and recording that in some
instances could be a violation of the law."); Doc. 162-3 at 75–76 (describing pl.'s 7/3/2018 phone call
with Day) ("[Day] said that—[tape recording] is off the table, and I said why.  And he said, well, it's just
off the table.  Hang on.  It was just—he said it was just off the table.  It was a policy and it's not an
option."); Doc. 162-3 at 107 (Day's 7/9/2018 PM email to pl.) ("I emailed you on July 6, 2018 and told
you that the committee found your request to record unreasonable.  I explained to you that this was
because not only is recording a policy violation, but in your position you have access to confidential and
proprietary information which needs to be protected.  As a result, tape recording in the workplace is not
reasonable.  However, as I mentioned, [defendant] is still exploring what, if anything—short of tape
recording—will allow you to do your job."); Doc. 162-3 at 111 (7/11/2018 PM email to pl.) ("I
understand you want to tape record, but as I've told you, that is not an option for many reasons.").

certain Committee findings, no reasonable juror could conclude that defendant "made no effort" to work with plaintiff in the accommodations process. *Aubrey*, 975 F.3d at 1008.

Another district court within our Circuit has considered a failure to accommodate claim where the parties blamed "any problems with the interactive process on each other." *Nguyen v. City & Cnty. of Denver, Colo.*, 286 F. Supp. 3d 1168, 1188 (D. Colo. 2017). *Nguyen* held that "a reasonable jury could conclude that [defendant] did not adequately participate in the interactive process and therefore failed to accommodate" plaintiff. *Id. Nguyen* concluded that "the evidence suggesting [defendant] failed to sufficiently engage the interactive process is fairly compelling." But *Nguyen* based its conclusion on several facts absent here. Most notably, *Nguyen* emphasized, "despite telling [plaintiff] it was beginning the formal interactive process, there is evidence in the record that [defendant] had already decided to fire him." *Id. Nguyen* held that a reasonable jury could "find it persuasive that [defendant] did not initiate the formal interactive process until *after* it had recommended [plaintiff's] termination, and only then because [someone] in HR said that we needed to." *Id.* at 1189 (emphasis added) (citation and internal quotation marks omitted).

In contrast, the record here never suggests that defendant already had decided to fire plaintiff before it began the interactive process. In fact, the record includes evidence that defendant signaled openness to returning plaintiff to work, even months after the interactive process broke down and plaintiff had expressed her interest in retiring. *See, e.g.*, Doc. 162-12 at 21 (Day Decl. Ex. D) (Day 10/3/2018 email to pl.) ("If you no longer intend to retire and instead want me to reinstate the accommodation process, please let me know immediately."). Moreover, *Nguyen* emphasized summary judgment evidence suggesting the employer-defendant had based decisions about terminating plaintiff on the mistaken belief that there was no technology capable

of further mitigating plaintiff's disability.  *Id.* at 1189.  Again, the record here includes no evidence of that kind.

The out-of-circuit caselaw that plaintiff invokes differs substantially from the uncontroverted facts here.  Plaintiff highlights *Santhuff v. United Parcel Serv., Inc.*, No. CV 17-1404-JWD-EWD, 2019 WL 4545610, at *22 (M.D. La. Sept. 19, 2019).  *See* Doc. 175 at 2–3.  *Santhuff* concluded that "there is some evidence that each party contributed meaningfully to the breakdown in the interactive process[,]" and thus "summary judgment is inappropriate." *Santhuff*, 2019 WL 4545610, at *22 (citation and internal quotation marks omitted).  *Santhuff* reasoned that a "reasonable juror could conclude . . . that [defendant] did not meaningfully engage in the interactive process after Plaintiff requested an accommodation" given evidence showing defendant's "refusal to discuss [plaintiff's] need for accommodation" and "refusal to discuss the problems Plaintiff was having and his need for a change[.]"  *Id.*  Plaintiff had emailed and text messaged defendant "without response."  *Id.*

Here, defendant did not refuse to discuss plaintiff's need for an accommodation or refuse to discuss the problems plaintiff was having.  Instead, the summary judgment facts show that defendant repeatedly engaged plaintiff to discuss her need for accommodation and the scope of that need.  When plaintiff asked questions already answered, defendant re-answered those repeat questions.  When plaintiff failed to provide certain information, defendant asked again.  Given these substantial factual differences between the facts here and those in *Santhuff*, that case cannot support plaintiff's argument that this defendant contributed meaningfully to the breakdown in the interactive process.

Plaintiff also references *Geuss v. Pfizer, Inc.*, 971 F. Supp. 164, 175 (E.D. Pa. 1996) to support her argument that defendant's lack of good faith here precludes granting defendant's

Motion for Summary Judgment.  *See* <u>Doc. 175 at 28</u>.  *Geuss* refused to grant summary judgment against plaintiff's ADA claim where plaintiff had adduced evidence that defendant did not put forth a good faith effort to engage in the interactive process.  *Geuss*, <u>971 F. Supp. at 175</u>.  *Geuss* highlighted two facts signaling the employer's absence of good faith:  (1) testimony that defendant's employees "repeatedly told [plaintiff] there was nothing they could do to help him[,]" and (2) testimony that defendant (i) refused a state vocational rehabilitation counselor's request to observe where plaintiff worked, and (ii) denied there was any problem.  *Id.*  *Geuss* concluded that defendant didn't deserve summary judgment because "there was sufficient evidence for a jury to conclude that" defendant-employer "had repeatedly stymied [plaintiff] in his attempt to get [defendant] to provide reasonable accommodation."  *Id.*

Plaintiff fails to persuade the court that *Geuss* applies to her case.  *See* <u>Doc. 175 at 28</u>. She again recites her core argument that Mr. Day's failure to disclose the Committee's findings about a note taker represents a lack of good faith that precludes summary judgment.  *See id.*  But plaintiff does not assert that defendant either (1) told plaintiff that it couldn't help her or (2) denied a problem existed.  From this summary judgment record featuring defendant's many efforts to grease the wheels of the accommodation process, no reasonable juror could conclude that this defendant "repeatedly stymied" plaintiff in her attempt to get defendant to provide reasonable accommodation.  *Geuss*, <u>971 F. Supp. at 175</u>.

Plaintiff also cites *Jones v. Blue Cross Blue Shield of La.*, No. CV 16-340-JWD-RLB, <u>2018 WL 618599</u>, at *9 (M.D. La. Jan. 29, 2018).  <u>Doc. 175 at 3</u>.  *Jones* held that defendant could not secure summary judgment even though "Plaintiff can be faulted for much of the breakdown in the interactive process" where defendant's human resources employee "performed no research or inquiry[,]" and "a reasonable jury might find that Defendant's few emails to

34

Plaintiff did not constitute good faith participation in the interactive process." *Jones*, 2018 WL 618599, at *9. But here, the undisputed facts establish substantial effort by defendant's human resources representatives to facilitate a dialogue with plaintiff about accommodations. This dialogue lasted for months, and includes frequent communication and inquiries defendant sent plaintiff. *Jones* does not resemble the facts here.

Plaintiff also argues that *Adduci v. Yankee Gas Servs. Co.*, 207 F. Supp. 3d 170, 181–82 (D. Conn. 2016) supports her argument that defendant contributed meaningfully to the breakdown in the interactive process here. *See* Doc. 175 at 4–5. *Adduci* held that defendant could not secure summary judgment where a reasonable jury could find that defendant had not made a good faith effort to engage in an interactive process with plaintiff. *See Adduci*, 207 F. Supp. 3d at 182. *Adduci* noted that defendant had directed plaintiff to work with an employee to find another position for which he was qualified, but that employee told plaintiff that no such jobs existed. *Id.* Here, plaintiff claims that "[m]uch like" *Adduci*, defendant "continually gaslighted and deceived [plaintiff] to force her into retirement." Doc. 175 at 5; *see also* Doc. 175 at 30. But the court rejects plaintiff's assertion that *Adduci* supports her argument, *i.e.*, that defendant's conduct reflects an absence of good faith participation in the interactive process and thus precludes summary judgment, for two reasons.

*One*, plaintiff's assertion that defendant *deceived* her into retirement enjoys no support in the summary judgment record. *Two*, plaintiff asserts that defendant's *Adduci*-like conduct occurred in late 2018. *See* Doc. 175 at 30 (discussing defendant's conduct in Oct. 2018). By that time, the interactive process was long dead—felled by plaintiff's axe months earlier on July 12, 2018. *See* Doc. 158 at 3 (Pretrial Order ¶ 2.a.vi.); Doc. 162-3 at 127 (Pl. Dep. Ex. 26) (Sutter's 7/12/2018 email to def.).

These cases that plaintiff cites—*Santhuff*, *Geuss*, *Jones*, and *Adduci*—involved an employer whose engagement with the employee during the accommodations process was limited or counter-productive.  The facts of those cases hardly resemble the undisputed summary judgment facts presented here.  In this case, the summary judgment facts present no triable issue whether defendant stymied or foreclosed plaintiff's efforts to secure an accommodation. Evidence of Mr. Day's failure to disclose in certain terms certain information about a potential accommodation—while in the same conversation (and others) asking plaintiff to supply information about that same potential accommodation—is insufficient to permit a reasonable juror to conclude that defendant failed to act in good faith during the interactive process. Instead, a reasonable jury only could conclude that plaintiff's many communications with Mr. Day (and the content of those communications) reveal defendant's continued effort to reach a solution with an employee failing to cooperate with defendant in the interactive process.

*Finally*, the summary judgment facts show that plaintiff's actions derailed an otherwise ongoing interactive process.  Courts have held that more than one party meaningfully can contribute to a breakdown in the interactive process.  *See, e.g.*, *Jones*, 2018 WL 618599, at *9. But in this case, as discussed at length in the coming pages, the presence of an obvious alternative contributor that demonstrably ended the interactive process—plaintiff's conduct and her announcement of her decision to pursue severance or retirement—supports the conclusion that no reasonable juror could conclude that Mr. Day's role in defendant's July communications with plaintiff contributed meaningfully to the parties' accommodations dialogue souring.

Given the undisputed summary judgment facts, no reasonable juror could conclude that Mr. Day's conduct or omissions during his July 3, 2018 phone call with plaintiff *and* the period leading up to July 12 contributed substantially, if at all, to the breakdown in the interactive

process.  No reasonable juror could conclude that defendant obstructed or delayed the interactive process, or otherwise failed to muster a good faith effort to seek an accommodation during its dialogue with plaintiff.  *See Smith*, 180 F.3d at 1172.  No reasonable juror could conclude that defendant failed to engage with plaintiff reasonably interactively.  *See id.*  Defendant's conduct during the interactive process does not preclude summary judgment against plaintiff's failure to accommodate claim.

Next, the court considers whether plaintiff deserves blame for the breakdown in the interactive process.

### b. Whether Plaintiff Contributed to the Interactive Process's Breakdown

Defendant asserts that it deserves summary judgment against plaintiff's failure to accommodate claim because the uncontroverted facts establish that plaintiff caused the interactive process to break down.  *See* Doc. 162 at 31–32.  "Courts have repeatedly ruled in favor of employers in ADA claims where the employee failed to participate in good faith during the interactive process."  *McFarland v. City & Cnty. of Denver*, No. 15-CV-01258-KMT, 2017 WL 3872639, at *6 (D. Colo. Sept. 5, 2017) (granting defendant's motion for summary judgment against plaintiff's failure to accommodate claim), *aff'd*, 744 F. App'x 583 (10th Cir. 2018).[20] Plaintiff responds, arguing "there is no evidence Plaintiff contributed meaningfully to the breakdown of the interactive process in this case."  Doc. 175 at 3.  But the uncontroverted facts establish otherwise.  Two reasons undermine plaintiff's claim that she had nothing to do with the

---

[20]     *McFarland* explores two cases granting judgment against a plaintiff-employee's failure to accommodate claim.  *See McFarland*, 2017 WL 3872639, at *6–7 (first discussing *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1136–37 (7th Cir. 1996) (affirming summary judgment for employer where employer not responsible for breakdown of interactive process); then discussing *Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731 (5th Cir. 1999) (affirming judgment as a matter of law where breakdown of interactive process was attributable to plaintiff)).  Our Circuit affirmed *McFarland*'s own summary judgment against plaintiff's failure to accommodate claim.  *See* 744 F. App'x at 586–87.

break down of the interactive process. *First*, the summary judgment facts present no triable issue whether plaintiff failed to respond reasonably to defendant's requests for information critical to the accommodations process. *Second*, the summary judgment facts establish that plaintiff's attorney told defendant that plaintiff had instructed him to pursue a severance or retirement, and then she pursued retirement. The court discusses each reason, in turn, below.

### i. Whether Plaintiff Discharged Her Duty to Engage Reasonably Interactively in the Accommodations Process

The summary judgment facts present no triable issue whether plaintiff's conduct was reasonably interactive. Just the opposite, the communications between plaintiff and Mr. Day, even viewed in her favor, show plaintiff failed to engage reasonably in the interactive process. Her participation in the dialogue reflects intransigence, not cooperation. She continued to redirect the interactive process towards accommodation in the form of tape recording after defendant already had answered plaintiff's questions whether that potential accommodation was viable. *See, e.g.*, Doc. 162-3 at 75–76, 104–11 (communication between Day and plaintiff).

For example, on June 19, Mr. Day explained defendant's practice of prohibiting recording in the workplace, and why that practice applied to plaintiff. *See* Doc. 162-3 at 104 (Pl. Dep. Ex. 7) (Day's 6/19/2018 email to pl.) ("After thinking through your request to have a recording device for conversations, I think the best approach would be to let the Accommodations request process play out. Our standard practice is, we do not record any conversations or meetings at [defendant's workplace], it[']s best we continue to follow that practice and not record any conversations or meetings that take place. You deal with sensitive, confidential information and recording that in some instances could be a violation of the law.").

The next day, plaintiff responded by reiterating her desire to record and requesting more specific information about defendant's reasoning for restricting her ability to tape record. *Id.*

(pl.'s 6/20/2018 email to Day) ("I will need to [r]ecord all performance concerns meetings regarding talk withs and write ups and meetings with Stan Roux, and all operations meetings. Please tell me what laws would be violated.").

On July 3, Mr. Day spoke with plaintiff by phone and reiterated defendant's policy about tape recording.  Doc. 162-3 at 76 (Pl. Dep. 399:2–6) (describing plaintiff's 7/3/2018 phone call with Day and explaining that "[Day] said that—[tape recording] is off the table, and I said why. And he said, well, it's just off the table.  Hang on.  It was just—he said it was just off the table. It was a policy and it's not an option").  On July 6, Mr. Day followed up, sending plaintiff an email explaining to plaintiff the Committee's reasoning for finding accommodation in the form of tape recording unreasonable.  Doc. 162-3 at 106 (Pl. Dep. Ex. 11) (Day's 7/6/2018 email to pl.).  He explained:  "I'm following up on our July 2 and July 3 conversations about your accommodation request.  As I told you, the committee found your request to tape record meetings unreasonable, especially given our policy and the nature of information you deal with on a daily basis as a Division Manager."  *Id.*

Yet, plaintiff continued to ask Mr. Day about tape recording.  On July 8, plaintiff sent Mr. Day a text message to explain the virtues of tape recording, and she asked defendant "what is the undue burden with tape recording?"  *See* Doc. 162-3 at 107 (Pl. Dep. Ex. 13) (pl.'s 7/8/2018 text message).  That same day, plaintiff also called Mr. Day and asked him why she could not tape record.  *Id.* (Day's 7/9/2018 email to pl.).  The next day, plaintiff sent Mr. Day another text message asking "[w]hy is a tape recording an undue burden?"  *See id.* (pl.'s 7/9/2018 text message to Day).

On July 9, Mr. Day responded.  He sent plaintiff an email about defendant's view of plaintiff's request to tape record:

> I emailed you on July 6, 2018 and told you that the committee found your request to record unreasonable. I explained to you that this was because not only is recording a policy violation, but in your position you have access to confidential and proprietary information which needs to be protected. As a result, tape recording in the workplace is not reasonable. However, as I mentioned, [defendant] is still exploring what, if anything—short of tape recording—will allow you to do your job.

*Id.* (Day's 7/9/2018 PM email to pl.). Two days later, plaintiff reasserted her desire to tape record. She told Mr. Day: "I will agree that [defendant] may have sole custody of the tapes. I just need an opportunity to review the tapes later in the day. But all tapes must be preserved." *See id.* at 110 (Pl. Dep. Ex. 15) (pl.'s 7/11/2018 AM email to Day). Mr. Day responded: "I understand you want to tape record, but as I've told you, that is not an option for many reasons." *Id.* at 111 (Pl. Dep. Ex. 16) (7/11/2018 PM email to pl.). Months later, even after submitting her retirement paperwork, plaintiff again contacted defendant's personnel asking to audio record meetings. Doc. 162-10 at 42 (Def.'s Answers to Pl.'s Reqs. for Admis., RFA No. 148) (admitting UPS 1607–08 is an email exchange between defendant and plaintiff).

Plaintiff's focus on tape recording redirected the interactive process towards her preferred accommodation. Plaintiff asserts that her "alleged 'myopic' focus on tape recording as her preferred solution did not cause the breakdown in the interactive process." Doc. 175 at 31. She explains that she "continued to inquire about that alternative because she did not know [defendant] had proposed an alternative." *Id.* But plaintiff also explains she "focused on tape recording because Battle also requested a tape recorder, and a jury found for him." Doc. 175 at 31 (referring to the trial in *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 864 (8th Cir. 2006)); *see also* Doc. 162-1 at 119 (Decl. Ex. B) (pl.'s 3/29/2018 email to Roux ("I request an agenda of

all meetings, as well as the ability to tape[ ] record, as requested in Battle v. UPS, where

[defendant] lost because it refused these accommodations.").[21]

Plaintiff is correct to some extent.  Her unbridled enthusiasm about tape recording

strained the interactive process.  She didn't break the process, however.  But more concerning

are plaintiff's (1) unwillingness to explore other potential forms of accommodation cooperatively

and (2) refusal to answer directly, if at all, defendant's requests for information about the scope

of plaintiff's need for accommodation.  Considered as a whole, the summary judgment facts

present no triable issue whether plaintiff's conduct during the interactive process was

cooperative.

Our Circuit has explained that where "the missing information is of the type that can only

be provided by one of the parties, failure to provide the information may be the cause of the

breakdown and the party withholding the information may be found to have obstructed the

process."  *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (quoting *Beck*,

75 F.3d at 1136).  In *Templeton*, the Tenth Circuit affirmed summary judgment for the

defendant-employer where the plaintiff-employee failed to comply with the defendant's

reasonable request for medical information "to determine appropriate reasonable accommodation

for [plaintiff] in the event she was able to return to work at all."  *Templeton*, 162 F.3d at 619.

The Circuit held that an "employer cannot be expected to propose reasonable accommodation

absent critical information on the employee's medical condition and the limitations it imposes."

*Id.*

---

[21]     Defendant asserts that plaintiff misconstrues *Battle*.  Doc. 179 at 15 ("Mr. Battle did not request the use of a tape recorder as a reasonable accommodation, and none of the jury, the District Court, nor the Eighth Circuit found Mr. Battle was entitled to use a tape recorder as a reasonable accommodation—i.e. something to eliminate the conflict between Mr. Battle's disability and the essential functions of his job. Indeed, not even *Plaintiff's counsel* argued as much at trial or on appeal.  The only reasonable accommodation at issue in *Battle* was a request for agendas—ironically, one of the v[e]ry accommodations [defendant] was willing to provide to Ms. Norwood." (citing *Battle*, 438 F.3d at 864).

41

Here, the summary judgment facts establish that defendant's human resources representative asked reasonable questions seeking information about the scope of plaintiff's need for an accommodation. But plaintiff used those requests as platforms to re-center the dialogue on tape recording while declining to provide information defendant had requested, fully if at all. During the July 3 phone call, Mr. Day asked plaintiff to identify the meetings where she needed an accommodation. *See* Doc. 162-3 at 76 (Pl. Dep. 399:7–17). According to plaintiff, Mr. Day asked her, "what meetings would you need an agenda for and what meetings would you need to take notes for[?]" *Id.* And it's undisputed that she replied, "if I had a tape recorder, I wouldn't need to take notes." *Id.* But she didn't provide information fully responsive to Mr. Day's question.

On July 6, Mr. Day emailed plaintiff:

The committee is still trying to arrive at a solution that will hopefully allow you to return to work. As I mentioned, in order to continue assessing possible accommodations, *the committee needs you to provide additional information as to exactly what operations meetings you feel you require agendas and post-meeting notes*. . . . Can you give us some guidance on your request? Are you referring only to certain meetings, or every operations meeting? Thanks in advance for letting me know. I'll set up a review with the committee as soon as I hear from you.

Doc. 162-3 at 106 (Pl. Dep. Ex. 11) (Day's 7/6/2018 email to pl.) (emphasis added). On July 8, plaintiff informed Mr. Day: "The agenda issue and the tape issue are interrelated in my mind. I never intended to ask for an agenda at every meeting especially if I am allowed to tape record. If I am allowed to tape record I may not need as many agendas ex[ ][c]e[p]t for disciplinary conferences." *Id.* at 107 (Pl. Dep. Ex. 13) (pl.'s 7/8/2018 text message to Day).

The next day, Mr. Day responded:

[Defendant] is still exploring what, if anything—short of tape recording—will allow you to do your job. To that end, I asked you for which meetings [ ] you require an agenda/or post-meeting notes. . . . You still haven't provided us that

information.  **Please let us know for which meetings you need agendas and/or notes so we can help get you back to work.**

. . .

[W]e are working hard to get you back to work, but we need you to do your part. Please let us know by this Friday, July 13, 2018, which operations meetings are most troubling/difficult for you so we can determine how to best accommodate you given your current issues and get you back to work.

*Id.* (Day 7/9/2018 email to pl.) (emphasis in original).  Plaintiff responded:

I suggest allowing me to ta[p]e record all disciplinary meetings and all conferences between me and a member of HR, as well as meetings where I will be asked for a write up or discipline directed at me will be discussed.  I request an agenda for any meeting involving any member of HR or where a write up may be requested.  I request an agenda for all meetings where specific performance concerns related to me will be addressed.

*Id.* at 109 (Pl. Dep. Ex. 14) (pl.'s 7/9/2018 text message to Day).  This text message provides

plaintiff's most direct response to defendant's request for information.  It explains the scope of

her request for meeting agendas.  *Id.*  But it again fails to answer defendant's request to specify

"which operations meetings are most troubling/difficult" for plaintiff.  Plaintiff previously had

included operations meetings in her request to tape record.  *See id.* at 104 (Pl. Dep. Ex. 7) (pl.'s

6/20/2018 email to Day) ("I will need to Record all performance concerns meetings regarding

talk withs and write ups and meetings with Stan Roux, and all operations meetings.").  Like her

other responses to Mr. Day's requests for information or clarification, this response returned the

conversation to tape recording and failed to provide certain information her employer had

requested.

On July 10, Mr. Day emailed plaintiff:

I want to make sure I'm understanding your clarification on the accommodation piece.  At this point, I understand your request is to record all meetings and conferences regarding performance or disciplinary issues and to receive agendas for those.  Is that accurate? As we discussed a couple of times, I thought we were looking into operations meetings and how to help you handle that aspect of your

43

job duties. Has that changed? Please let us know. We can't help you if you don't
tell us exactly what you need.

. . .

Please let me know as soon as you can if I have accurately understood your
response to my request for additional information regarding your accommodation.

*Id.* at 109 (Pl. Dep. Ex. 14) (Day 7/10/2018 email to pl.). Plaintiff responded, again promoting

her plan to tape record. She explained:

Waring routinely combines operations calls with HR issues. As an example, on
the 6:15 call, if you don't make your stops per car, he may ask for a write up and
then assign Saturday duty. I will agree that [defendant] may have sole custody of
the tapes. I just need an opportunity to review the tapes later in the day. But all
tapes must be preserved. I think I have done all I can to address [defendant's]
concerns on the taping issue.

*Id.* at 110 (Pl. Dep. Ex. 15) (pl.'s 7/11/2018 email to Day). Hours later, Mr. Day responded:

You mentioned the 6:15 am call. Have you considered requesting a note taker for
that call, and then having the notes provided to you after the call? Does that seem
like a possible solution? Please let me know. I'm still struggling to understand
exactly what you think would help you perform your job other than tape
recording.

*Id.* at 111 (Pl. Dep. Ex. 16) (Day's 7/11/2018 email to pl.). Later that evening, plaintiff replied

to Mr. Day's email, but again she failed to answer his questions about notes or discuss

accommodations. *See id.* at 143 (Pl. Dep. Ex. 34) (pl.'s 7/11/2018 PM email to Day).

   "One cannot negotiate with a brick wall." *McFarland*, 2017 WL 3872639, at *7

(citation omitted). The summary judgment facts establish that plaintiff failed to respond

meaningfully to Mr. Day's many inquiries between July 3 and July 11. She repeatedly declined

to satisfy defendant's request to clarify or confirm the scope of her accommodation needs after

defendant reasonably inquired. Plaintiff then (1) declared that she viewed the interactive process

as deteriorating, (2) suggested an absence of good faith by her employer, and (3) threatened to

elevate the dialogue to the EEOC. *See* Doc. 162-3 at 107 (Pl. Dep. Ex. 13) (pl.'s 7/9/2018 text message to Day); Doc. 162-3 at 110 (Pl. Dep. Ex. 15) (pl.'s 7/11/2018 AM email to Day).

By repeatedly declining to provide reasonably requested information and adopting a my-way-or-the-highway approach to the accommodations dialogue, plaintiff failed to engage reasonably in the interactive process. Construing the facts in the light most charitable to her, plaintiff's desire to secure accommodation in the form of tape recording limited her ability to cooperate meaningfully with defendant during the interactive process. The uncontroverted facts reveal plaintiff's frequent uncooperative conduct and refusal to comply with reasonable requests for information during the interactive process.

But still, a reasonable juror could find that plaintiff's conduct and communications before July 12 did not cause the interactive process to collapse. The uncontroverted facts establish that defendant proved undeterred by plaintiff's peculiar focus on tape recording, intransigence, and hesitance to entertain certain alternative accommodations. Even after plaintiff filed her charge with the EEOC, she and defendant continued to progress in their dialogue about potential accommodations, even if that progress was marginal at times. But plaintiff's decision to walk away from the accommodations process in favor of just two outcomes—severance or retirement—prevents a reasonable juror from concluding that plaintiff bears no blame for the breakdown in the interactive process.

The court thus considers plaintiff's July 12 communication with defendant and its effect on the interactive process.

### ii. Whether Plaintiff's July 12, 2018 Communication with Defendant Caused the Interactive Process to Break Down

Starting in June 2018, the parties engaged in substantive back-and-forth discussions about accommodations. The dialogue continued until July 12, 2018. On that day, a person named

Luther Sutter (who is now plaintiff's counsel of record in this lawsuit) contacted defendant on

plaintiff's behalf.  Doc. 158 at 3 (Pretrial Order ¶ 2.a.vi.).  Mr. Sutter's July 12 communique

contacted defendant and explained that plaintiff had instructed him to pursue a severance on her

behalf.  *Id.*  And he shared that if defendant did not offer plaintiff an "appropriate" severance

package, then plaintiff intended to retire.  *Id.*; *see also* Doc. 162-3 at 127 (Pl. Dep. Ex. 26)

(Sutter's 7/12/2018 email) ("I am [plaintiff's] spokesperson.  She has instructed me to pursue

severance.  Failing an appropriate severance package, she intends to retire.").  Mr. Sutter also

requested that defendant direct all communications about plaintiff to him.  Doc. 158 at 3 (Pretrial

Order ¶ 2.a.vi.).  This communication with defendant did not mention plaintiff's request for

accommodation.  Doc. 162-3 at 127 (Pl. Dep. Ex. 26) (Sutter's 7/12/2018 email).

Plaintiff asserts that she "and her attorney did not end the interactive process altogether

by moving the discussion to her voluntary departure from [defendant]'s employment." Doc. 175

at 29.  No reasonable jury could accept plaintiff's characterization of the undisputed facts.  When

Mr. Sutter manifested plaintiff's directive to seek a severance or pursue retirement, plaintiff

ended the interactive process.  The effect of this communication is apparent:  The

accommodations dialogue was alive before the July 12 communication, but it ceased with the

message's arrival announcing plaintiff's turn toward retirement.

Before plaintiff's July 12 announcement of her intent to seek severance or retirement, the

interactive process was ongoing.  Certainly, the seas were less than placid in the days just before.

Plaintiff had threatened to file an EEOC Charge and made good on that threat.  Doc. 162-3 at

109 (Pl. Dep. Ex. 14) (pl.'s 7/9/2018 text message to Day); Doc. 1 (Compl. Attachs. 1–5).  But

even after plaintiff filed her EEOC Charge on July 10, plaintiff and defendant continued to

engage in an interactive dialogue about accommodations.  *See, e.g.*, Doc. 162-12 at 3–4 (Day

Decl. ¶ 10); Doc. 162-10 at 11 (Day Decl. Ex. B) (pl.'s 6/11/2018 email to Day); Doc.162-3 at

111–12 (Pl. Dep. Ex. 16) (Day's 7/11/2018 email to pl.). This discussion continued until

plaintiff reoriented the dialogue towards the binary outcome of severance or retirement, the

interactive process remained alive—the parties still were discussing the scope of the

accommodation desired, the availability of possible accommodations, and the need for additional

information about each parties' requirements and limitations.

The July 12 communication transformed plaintiff's dialogue with defendant from

accommodations to retirement. *See* Doc. 158 at 3 (Pretrial Order ¶ 2.a.vi.); Doc. 162-3 at 127

(Pl. Dep. Ex. 26) (Sutter's 7/12/2018 email) ("[Plaintiff] has instructed me to pursue severance.

Failing an appropriate severance package, she intends to retire."). Plaintiff asserts that the

interactive process nonetheless remained ongoing because she "continued to ask why a tape

recorder was not allowed." Doc. 175 at 29. Plaintiff's explanation why the interactive process

survived her announcement of her wish to receive a severance or retire focuses on plaintiff's

subsequent communications with defendant. But these communications occurred months later.

Specifically, she notes that on "October 9, 2018, Plaintiff emailed Eric Day telling him that she

felt like she was forced to retire and asking what was unreasonable about her request" to tape

record. *Id.* at 30 (citing Doc. 137-22 at 1 (pl.'s 10/9/2018 email to def.)). She fails to explain

how the interactive process remained ongoing during the months separating her attorney's July

12 communication and plaintiff's later emails to defendant in October 2018 and January 2019.

*See id.* at 29–30. On this record, no reasonable juror could adopt plaintiff's assertion that she

"and her attorney did not end the interactive process altogether by moving the discussion to her

voluntary departure from [defendant]'s employment." *Id.* at 29; *see also Loulseged*, 178 F.3d at

737–38 (affirming district court's grant of judgment as a matter of law against plaintiff's failure

to accommodate claim under the ADA where plaintiff "quitting robbed [defendant-employer] of a chance to complete the process and demonstrate its good faith" and noting that to "hold otherwise would reward [plaintiff's] unilateral withdrawal from a process designed for her own benefit.").

Given the ongoing dialogue about accommodations just before plaintiff's attorney announced her wishes, no reasonable fact finder could conclude that her effort to negotiate a severance or retire was merely the coup de grâce that put a gasping interactive process out of its misery. Instead, the summary judgment facts leave room for just one conclusion: Plaintiff and defendant were engaged in the requisite interactive process about accommodations until the July 12, 2018 communication redirected the dialogue. Thus, while some courts have noted that the final act in the interactive process is not always the cause of a breakdown, no reasonable juror could find that this final act—here, by plaintiff, via her attorney on July 12—wasn't a substantial cause of the breakdown.

"The interactive process . . . requires ongoing participation from both parties." *McFarland*, 744 F. App'x at 587 (citing *Templeton*, 162 F.3d at 619). Plaintiff's counsel signaled to defendant that plaintiff no longer wished to participate in the accommodations process. And plaintiff acted accordingly—she began pursuing retirement.[22] No reasonable juror could conclude on this record that plaintiff, when her counsel notified defendant of the mandate he received from plaintiff to pursue a severance or retirement and plaintiff subsequently pursued

---

[22]     The undisputed summary judgment facts present no triable issue whether plaintiff began pursuing retirement. Doc. 175 at 18 (¶ 76) ("Day had not disclosed [defendant] had agreed that a notetaker was reasonable[,] so Plaintiff believed retirement was her only option." (citing Doc. 175-2 at 3 (S. Norwood Decl. ¶¶ 11–12))). By September 18, 2018, plaintiff submitted retirement paperwork, signaling that she intended to retire on November 1, 2018. Doc. 162-3 at 50–51 (Pl. Dep. 333:20–334:14); Doc. 162-3 at 128 (Pl. Dep. Ex. 27); Doc. 162-12 at 4 (Day Decl. ¶ 12); Doc. 162-12 at 20–21 (Day Decl. Ex. D) (Sept.–Oct. 2018 email exchange indicating plaintiff submitted retirement paperwork with a projected retirement date of Nov. 1, 2018); Doc. 162-11 at 13 (Day Dep. 124:3–20).

48

retirement, continued to seek an accommodation—let alone continued to engage in the interactive process with defendant. *See Loulseged*, 178 F.3d at 740–41.

Any reasonable juror would find that plaintiff deserved much blame for ending the interactive process. Plaintiff generally was uncooperative and then walked away from ongoing dialogue about accommodations. On this record, no reasonable juror could find that plaintiff discharged her "obligation to proceed in a reasonably interactive manner[.]" *Smith*, 180 F.3d at 1172. The governing case law concludes that neither party "may create or destroy liability by causing a breakdown of the interactive process." *Aubrey*, 975 F.3d at 1008–09 (citation and internal quotation marks omitted). From the record here, no reasonable juror could trace the breakdown in the interactive process back to anyone but plaintiff. Defendant is entitled to summary judgment.

## III.    Conclusion

Defendant seeks summary judgment against plaintiff's claims for failure to accommodate, disparate treatment, and retaliation. Defendant concedes her others claims, electing "to pursue only her failure to accommodate claim." *See* Doc. 174 at 3 (¶ 5). Defendant argues that it is entitled to summary judgment against plaintiff's remaining claim for failure to accommodate because plaintiff failed to discharge her duty to engage reasonably interactively in the accommodations process. Plaintiff counters by arguing that a reasonable jury could conclude that defendant bears the blame. She asserts that courts have held that a defendant cannot secure summary judgment against a failure to accommodate claim where a reasonable juror could conclude that both parties substantially contributed to the breakdown in the interactive process. And she asserts that defendant cannot secure summary judgment against the failure to

accommodate claim because defendant lacked good faith when engaging with plaintiff about accommodations and caused the interactive process to break down.

But the record here cannot support a reasonable conclusion that both parties contributed to the collapse in the interactive process. Instead, from this summary judgment record, a reasonable juror only could conclude that plaintiff failed to engage reasonably interactively by being uncooperative and evasive, then directing her attorney to shift the dialogue with defendant from accommodations to severance and retirement, and then pursuing retirement.

Meanwhile, no reasonable juror could conclude that defendant meaningfully contributed to the breakdown. The record reveals an employer's endeavors to engage with an uncooperative employee whose single-minded focus on an accommodation in the form of tape recording limited her willingness to engage with plaintiff's inquiries and requests for information. Plaintiff's tape recording pursuit also contributed to her unreasonable frustration with the interactive process, leading her to walk away unreasonably from the accommodations dialogue and towards retirement. Plaintiff has seized upon evidence she asserts could support a reasonable juror's conclusion that defendant caused the communications breakdown or failed to engage in a good faith interactive process. But on this record, no reasonable juror could agree with her.

Ultimately, no genuine issue for trial remains. "Neither party may create or destroy liability by causing a breakdown of the interactive process." *Aubrey*, 975 F.3d at 1008–09 (citation and internal quotation marks omitted). No reasonable juror could conclude that defendant caused the breakdown and plaintiff did not. So, no genuine dispute exists about any material fact and defendant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Defendant is entitled to summary judgment against plaintiff's failure to accommodate claim.

Because plaintiff conceded her other claims, the court construes defendant's Motion for Summary Judgment against those claims as uncontested. The court thus grants defendant's Motion for Summary Judgment (Doc. 161).

The court's ruling on defendant's Motion for Summary Judgment disposes of plaintiff's remaining claims. So, plaintiff's Motion for Partial Summary Judgment (Doc. 136) is moot. The court thus dismisses it accordingly. The court has reached its decisions on the parties' cross motions for summary judgment without considering Dr. Aliff's expert opinions or her report.[23] Because the court has granted summary judgment for defendants and thus dismissed plaintiffs' claims, the court need not decide whether Dr. Aliff's expert report is admissible evidence. The court thus dismisses as moot defendant's Motion to Exclude Testimony of Plaintiff's Expert (Doc. 172).

---

[23]      Plaintiff attaches Dr. Aliff's Deposition to her Response. *See* Doc. 174-10. Plaintiff asserts that Aliff's "testimony should be considered." Doc. 175 at 40. But she cites that deposition only twice in her Brief in Support of Response. *See id.* at 7, 22. Neither citation follows our court's local rules governing summary judgment motions. *See* D. Kan. Rule 56.1(a)–(b) (explaining "facts must be numbered and must *refer with particularity* to those portions of the record upon which [the party] relies" (emphasis added)). And neither supports a statement of fact relevant to the issue controlling defendant's motion.

*First*, plaintiff cites Dr. Aliff's deposition in support of plaintiff admitting defendant's statement of fact that "[a]s a Division Manager, Plaintiff needed to follow directions and routine; work independently with appropriate judgment; and concentrate, memorize, and recall information." *Id.* at 7 (¶ 14) (first citing Doc. 175-2 at 7 (S. Norwood Decl. ¶ 28); then citing "Deposition of Aliff generally"). Plaintiff's broad citation to a 142-page deposition transcript fails to "refer with particularity" to the portion of the record supporting this statement of fact. And that undisputed fact is not material to the interactive process issue that decides defendant's motion.

*Second*, plaintiff offers as a statement of fact that in "her report, Plaintiff's expert has concluded that Plaintiff is a qualified individual with a disability." Doc. 175 at 22 (citing "Exhibit 28"). Plaintiff attaches no "Exhibit 28" to Doc. 175. Plaintiff's citation might refer to an attachment to her earlier brief supporting plaintiff's Motion for Partial Summary Judgment. *See* Doc. 137-28 (Narimatsu Tr.). Even if the court could identify confidently the document plaintiff cites, she again fails to "refer with particularity" to the portion of the record that supports this statement of fact. *See* D. Kan. Rule 56.1(a)–(b). Further the parties' summary judgment arguments about the interactive process do not depend on plaintiff's expert's conclusions about whether plaintiff is a qualified individual with a disability.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 161) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's Motion for Partial Summary Judgment (Doc. 136) is dismissed as moot.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's Motion to Exclude Testimony of Plaintiff's Expert (Doc. 172) is dismissed as moot.

**IT IS SO ORDERED.**

**Dated this 16th day of July, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

52

# United States District Court

-------------------------- DISTRICT OF KANSAS---------------------------

SUSAN NORWOOD,

                    **Plaintiff,**

**v.**                                          **Case No. 19-2496-DDC-JPO**

**UNITED PARCEL SERVICE, INC.,**

                    **Defendant.**

## JUDGMENT IN A CIVIL CASE

☐      Jury Verdict.   This action came before the Court for a jury trial.  The issues have been tried and the jury has rendered its verdict.

☒      Decision by the Court.  This action came before the Court.  The issues have been considered and a decision has been rendered.

**Plaintiff recovers nothing, the action is dismissed on the merits, and the defendant shall recover costs from plaintiff consistent with the Memorandum and Order (Doc. 185) filed on July 16, 2021.**

     07/16/2021                              TIMOTHY M. O'BRIEN
          Date                                  CLERK OF THE DISTRICT COURT

                                              by:    s/ Megan Garrett               
                                                   Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SUSAN NORWOOD ,**                              ) | |
|                                                 ) | |
|                           **Plaintiff**         ) | **CIVIL ACTION** |
|                                                 ) | **CASE NO.   2:19-cv-02496** |
|                                                 ) | |
| **v.**                                          ) | |
|                                                 ) | |
| **UNITED PARCEL SERVICE, INC.,**                ) | |
|                                                 ) | |
|                           **Defendant**         ) | |

## <u>NOTICE OF APPEAL</u>

Comes now, **PLAINTIFF, SUSAN NORWOOD**, through counsel, and for this Notice

of Appeal, she states:

1.     Plaintiff, Susan Norwood, appeals to the United States Court of Appeals for the

10th Circuit the MEMORANDUM AND ORDER [Doc 185] dismissing as moot [Doc 136]

Plaintiff's Motion for Partial Summary Judgment; granting [Doc 161] Defendant's Motion for

Summary Judgment; dismissing as moot [Doc 172] Motion to Exclude handed down by the

United States District Court for the District of Kansas, entered in this case on July 16, 2021; and,

the refusal to consider all of the evidence in the manner required by Rule 56.

2.     The method of appendix preparation will be separate.

3.     Statement of issues are as follows:

    a.  Did the District Court err when it granted summary judgment finding UPS
       engaged in bad faith when a reasonable jury could believe UPS lied;

    b.  Did the District Court err in refusing to consider the evidence of Dr. Aliffe;

    c.  Did the District Court err by refusing to grant all reasonable inferences in favor of
       the Plaintiff;

1

d. Did the District Court err by denying Plaintiff's Motion for Partial Summary Judgment; and,

e. Did the District Court err by granting Defendant's Motion for Summary Judgment?

Respectfully submitted,

**SUTTER& GILLHAM, P.L.L.C.**
Attorneys at Law
Post Office Box 2012
Benton, Arkansas 72018
(501) 315-1910 – Office
(501) 315-1916 - Facsimile
*Attorneys for the Plaintiff*

By:    */s/ Luther Oneal Sutter*
Luther Oneal Sutter, ABN 95031
Luther.sutterlaw@gmail.com

-   And   -

By:    /s/ *Dustin L. Van Dyk*
Dustin L. Van Dyk Ks. S. Ct #23313
Palmer Law Group, LLP
2348 SW Topeka Blvd.
Topeka, KS 66611
dvandyk@jpalmerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Notice of Appeal, has been served on this, the 13th day of August, 2021, via electronic mail upon counsel for the Defendants, as follows:

Shelley Ericsson
shelley.ericsson@ogletree.com,
kcmdocketing@ogletreedeakins.com,
linda.curran@ogletree.com

By:    */s/ Luther Oneal Sutter*
Luther Oneal Sutter, ABN 95031

By:    /s/ *Dustin L. Van Dyk*
Dustin L. Van Dyk Ks. S. Ct #23313

2

74