No. 21-3145

In the
# United States Court of Appeals
for the
# Tenth Circuit

**SUSAN NORWOOD**
*Plaintiff-Appellant*

**v.**

**UNITED PARCEL SERVICE, INC.**
*Defendant-Appellee*

_____

On Appeal from the United States District Court for the District of Kansas
Case No. 2:19-cv-02496
The Honorable Daniel D. Crabtree, United States District Judge

_____

## APPELLANT NORWOOD'S OPENING BRIEF
**Oral Argument Requested**

_____

LUTHER ONEAL SUTTER (Ark 95031)
10th Circuit Bar No. 95031
**SUTTER & GILLHAM, P.L.L.C.**
P.O. Box  2012
Benton, AR 72018
501) 315-1910 (O) / 501) 315-1916 (F)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................3

STATEMENT OF RELATED CASES ..................................................6

JURISDICTIONAL STATEMENT .......................................................6

STATEMENT OF THE ISSUES...........................................................7

STATEMENT OF THE CASE...............................................................8

SUMMARY OF THE ARGUMENT ....................................................10

STANDARD OF REVIEW .................................................................12

ARGUMENT .......................................................................................14

    I.    The District Court Erred In Granting Summary Judgment Because A Reasonable Jury Could Believe That UPS Acted In Bad Faith By Willfully Concealing Its Willingness To Provide Norwood With A Notetaker...................................................14

    II.    The District Court Erred By Excluding All Evidence From Dr. Aliff Because Norwood Cited To It With Particularity In Her Statement Of Facts Supporting Denial Of UPS's Summary Judgment Motion ..................................................................19

        A.    The mislabeled exhibit could be easily ascertained......................20

        B.    The expert testimony is not conclusory .........................................21

        C.    Dr. Aliff's testimony provides expert insight on factual issues ................................................................................................25

    III.    The District Court violated Rule 56 when it granted UPS unreasonable inferences.........................................................26

        A.    The District Court's inferences related to the July 3, 2018 phone call are clearly erroneous. ......................................................30

    B.  The July 11, 2018 email exchange and the ensuing breakdown that Ms. Norwood experienced. .........................................................31

    C.  Ms. Norwood's testimony regarding the July 3, 2018 phone call ........................................................................................32

IV.    Even with the District Court's erroneous findings of fact, Summary Judgment was inappropriate. ...................................................33

    A.   Norwood established a prima facie case .......................................34

        1.   Norwood was disabled under the ADA ..................................34

        2.   Norwood was qualified to perform her job ...........................35

        3.   Norwood requested a plausibly reasonable accommodation ........................................................................35

    B.  UPS paid lip service to the interactive dialogue .............................36

CONCLUSION ...................................................................................................42

STATEMENT REGARDING ORAL ARGUMENT ............................................43

CERTIFICATE OF SERVICE & COMPLIANCE ..............................................44

ATTACHMENTS ...............................................................................................45

    1.   Memorandum and Order filed 16 July 2021

    2.   Final Judgment filed 16 July 2021

# TABLE OF AUTHORITIES

**A.    Cases**                                                                        **Page(s)**

*Aubrey v. Koppes*,
    975 F.3d 995 (10th Cir. 2020)........................................................13,35,36

*Battle v. United Parcel Serv., Inc.*,
    438 F.3d 856 (8th Cir. 2006)..............................................................7,8,10

*Beck v. U. of Wisconsin Bd. of Regents*,
    75 F.3d 1130 (7th Cir. 1996)..............................................................37,38

*Beem v. Providence Health & Services*, CV-10-0037-JLQ,
    2011 WL 4852301 (E.D. Wash. Oct. 13, 2011)....................................17

*Crumpley v. Associated Wholesale Grocers*,
    2018 WL 1933743 (D. Kan. Apr. 24, 2018). ..........................................26

*Exby-Stolley v. Bd. of Cty. Commissioners*,
    979 F.3d 784 (10th Cir. 2020)..........................................................7,8,10

*Fassbender v. Correct Care Sols., LLC*,
    890 F.3d 875 (10th Cir. 2018)................................................................12

*Hamric v. Wilderness Expeditions, Inc.*,
    6 F.4th 1108 (10th Cir. 2021)................................................................13

*Isberner v. Walmart Inc.*,
    No. 20-2001-JAR-KGG,
    2021 WL 4284540 (D. Kan. Sept. 21, 2021) ..........................................17

*Jarrett v. Sprint/United Mgmt. Co.*,
    37 F. Supp. 2d 1283, 1285 (D. Kan. 1999),
    aff'd, 203 F.3d 835 (10th Cir. 2000) ....................................................18,19

*Lara v. DNC Parks & Resorts at Tenaya, Inc.*,
    No. 1:14-CV-000103-LJO, 2015 WL 4394618
    (E.D. Cal. July 16, 2015)........................................................................17

*Lincoln v. BNSF Railway Co.*,
   900 F.3d 1166 (10th Cir. 2018)............................................................33,36

*Mason v. Amaya Commc'ns, Inc.*,
   357 F.3d 1114 (10th Cir. 2004).................................................................37

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ..................................................................................34

*McFarland v. City & Cnty. of Denver*,
   744 F. App'x 583 (10th Cir. 2018) .......................................................39,42

*Orner v. National Beef Packaging Company*, LLC,
   Not Reported in Fed. Supp., 2015 WL 8334544,
   99 Fed. R. Evid. Serv. 109,
   2015 A.D. Cases 404,044 9 (2015) .......................................................7,25

*Osborne v. Baxter Healthcare Corp.*,
   798 F.3d 1260 (10th Cir. 2015)..................................................................13

*Parker v. Salina Reg'l Health Ctr., Inc.*,
   463 F. Supp. 2d 1263 (D. Kan. 2006) .......................................................13

*Poole v. Centennial Imports, Inc.*, No. 2:12-CV-00647-APG,
   2014 WL 2090810 (D. Nev. May 19, 2014) ............................................17

*Punt v. Kelley Servs.*,
   862 F.3d 1040 (10th Cir. 2017).......................................................33,34,37

*Rehling v. City of Chicago*,
   207 F.3d 1009 (7th Cir. 2000), *amended* (Apr. 4, 2000) .........................37

*Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*,
   960 F.3d 1255 (10th Cir. 2020)..................................................................13

*Sanchez v. Vilsack*,
   695 F.3d 1174 (10th Cir. 2012)..................................................................34

*Smith v. Midland Brake, Inc.*,
   180 F.3d 1154 (10th Cir. 1999) (en banc)......................................34,37,39

*Steffes v. Stepan Co.,*
    144 F.3d 1070 (7th Cir.1998) ................................................................38

*Templeton v. Neodata Services, Inc.,*
    162 F.3d 617 (10th Cir. 1998) ..............................................................38

*United States v. Dazey,*
    403 F.3d 1147 (10th Cir. 2005) .............................................................25

**B.**    **Statutes and Rules**

28 U.S.C. § 1291 .....................................................................................6

28 U.S.C. § 1331 .....................................................................................6

42 U.S.C. § 12101 ...................................................................................6

42 U.S.C. § 12102 .................................................................................35

42 U.S.C. § 12111 ............................................................................35,37

42 U.S.C. § 12112 .................................................................................35

29 C.F.R. § Pt. 1630, App. .................................................................39,40

Fed. R. Civ. P. 56 ...................................................................................12

D. Kan. Rule 56.1 ..................................................................................20

## STATEMENT OF RELATED CASES

There are no prior or related appeals to this case.

## JURISDICTIONAL STATEMENT

United States District Judge Daniel D. Crabtree decided this case, which was filed by Plaintiff Susan Norwood against Defendant United Parcel Service, Inc. ("UPS"). The District Court had undisputed subject-matter jurisdiction under 28 U.S.C. § 1331 because Norwood's claims involved a federal question pertaining to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"). **APX 275.** Norwood filed a motion for partial summary judgment on November 6, 2020. Weeks later, UPS filed its own motion for summary judgment in full on January 4, 2021, to which Norwood conceded, in the interests of judicial economy, her disparate treatment claim to only pursue her failure to accommodate claim.

The District Court granted UPS's motion for summary judgment on July 16, 2021, while refusing to consider Norwood's motion for partial summary judgment and UPS's motion to exclude the testimony of Norwood's expert witness, Dr. Michelle Aliff. **APX 4024.** The District Court entered its judgment the same day. **APX 4025.** On August 13, 2021, Norwood filed a timely notice of appeal from the District Court's final decisions, establishing this Court's jurisdiction under 28 U.S.C. § 1291. **APX 4026-4027.**

## STATEMENT OF THE ISSUES

1. Did The District Court Err In Granting Summary Judgment By Determining That UPS Acted In Good Faith During The Interactive Process Prompted By Norwood's Request For Accommodations Under The ADA When A Reasonable Jury Could Believe That UPS Deliberately Frustrated That Process By Hiding Possible Accommodations From Her? *Exby-Stolley v. Bd. of Cty. Commissioners*, 979 F.3d 784, 796 (10th Cir. 2020), cert. denied sub nom. *Bd. of Cty. Commissioners of Weld Cty., Colorado v. Exby-Stolley*, 141 S. Ct. 2858 (2021) *see also Battle v. United Parcel Serv., Inc*., 438 F.3d 856, 864 (8th Cir. 2006).

2. Should a Clerical Error That The Court Could Easily Ascertain And Determine allow a District Court to avoid recognizing Genuine Issue Of Fact As To Whether UPS Was Intentionally Unclear In Offering Norwood A Notetaker Accommodation, Only Adding To Norwood's Anxiety By UPS's Treatment Of Her In Its Purported Good Faith Dialogue? *Orner v. National Beef Packaging Company*, LLC, Not Reported in Fed. Supp., 2015 WL 8334544, 99 Fed. R. Evid. Serv. 109, 2015 A.D. Cases 404,044 9 (2015).

3. Did the District Court fail to grant reasonable inferences to Ms. Norwood as the non-moving party? *Exby-Stolley v. Bd. of Cty. Commissioners*, 979 F.3d 784, 796 (10th Cir. 2020), cert. denied sub nom. *Bd. of Cty. Commissioners*

*of Weld Cty., Colorado v. Exby-Stolley*, 141 S. Ct. 2858 (2021) *see also Battle v. United Parcel Serv., Inc*., 438 F.3d 856, 864 (8th Cir. 2006).

## STATEMENT OF THE CASE

Susan Norwood worked most of her adult life at United Parcel Service. She eventually became a female division manager at UPS in a work world dominated by males. **APX 2918**. Ms. Norwood performed successfully numerous duties for several years, winning an award for her success. **APX 1767**. Unfortunately, Ms. Norwood's mental health worsened when her parents became ill, so she was forced to request accommodation. **APX 2978-2879**. One example of her job functions was the requirement to remember daily conversations, then record them at a later time. Due to her mental illness, this became increasingly more difficult. **APX 2979.** But Ms. Norwood is a proud employee of UPS, so she was hesitant to admit she needed assistance. Her mental health status dictated otherwise.

So, Ms. Norwood requested an accommodation through Eric Day. As required by UPS policy, Day presented her request for accommodation to UPS's ADA checklist committee for review. **APX 3853 & 3856**. Ms. Norwood was not allowed to present her case for an accommodation, nor even be present as the ADA committee determined a reasonable accommodation for Ms. Norwood. **APX 3856.** So, Eric Day was the face of UPS during Norwood's ADA accommodation. **APX 3856.** Unfortunately, a reasonable jury could find that Day lied to Ms. Norwood.

The District Court unfortunately ignored this deception.  But the deception was important.

The ADA committee proposed to provide Ms. Norwood a notetaker and an agenda as a reasonable accommodation in notetaking.  **APX 3857.** Unfortunately, it was **undisputed** Day never told Ms. Norwood of the committee's notetaker proposal.  **APX 224-225, 1683, & 2727.** The District Court refused to recognize this key fact and grant Ms. Norwood reasonable inferences on the issue of bad faith[1].  **APX 4002**. Instead, the District Court, inappropriately granted UPS inferences as the nonmoving party on summary judgment, found that Day's email that asked whether Norwood had considered a notetaker as an accommodation somehow excused Day's flagrant lie to her face. **APX 4002.** The District Court erroneously found that Ms. Norwood was responsible for the breakdown of the ADA accommodation process. **APX 4022**. She was not.

According to Dr. Aliff[2], Ms. Norwood then had a nervous breakdown from the stress of UPS's refusal to engage with her in good faith. **APX 2830, ln. 18 -**

---

[1] One inference that flows from Day's deception and his violation of UPS ADA accommodation policy is that UPS hid a reasonable accommodation from Ms. Norwood because UPS was acting in bad faith.

[2] The District Court declined to consider Appellant's Motion for Partial Summary Judgment, even though it had been filed months before UPS' motion. The District Court also inappropriately declined to consider Dr. Aliff's testimony.

**2831, ln. 9.** Ms. Norwood sought an explanation of benefits, and UPS filled her job thereby forcing her to retire. **APX 1685**. Ms. Norwood brought the instant action for a failure to accommodate. The District Court granted summary judgment in favor of UPS erroneously finding that UPS engaged in the good faith interactive process with Ms. Norwood.

## SUMMARY OF THE ARGUMENT

An ADA failure-to-accommodate claim does not allege that the employer acted, but rather that the employer failed to act. *Exby-Stolley v. Bd. of Cty. Commissioners*, 979 F.3d 784, 796 (10th Cir. 2020), cert. denied sub nom. *Bd. of Cty. Commissioners of Weld Cty., Colorado v. Exby-Stolley*, 141 S. Ct. 2858 (2021). The District Court below lost sight of this critical distinction when it granted UPS summary judgment and dismissed this case. In *Exby-Stolley*, the Tenth Circuit worked hard to deliver on the promise of the ADA. In other Circuits, summary judgment on ADA claims appears to have devolved into an administrative trial on the record, with lip service paid to granting the nonmoving party all reasonable inferences and the like. But even the most conservative Circuits recognizes that tape recording and an agenda can be a reasonable accommodation. *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 864 (8th Cir. 2006).

A comparison of the evidence in this record with the District Court's order, and UPS' summary judgment papers, will show that the District Court granted unreasonable UPS inferences and refused to grant Appellant reasonable inferences in violation of the summary judgment standard:

> While plaintiff emphasizes that defendant failed to disclose explicitly to plaintiff certain Committee findings, no reasonable juror could conclude that defendant "made no effort" to work with plaintiff in the accommodations process. **APX 3889**.

Norwood argued Day lied, which was a reasonable inference on this record. The District Court's strawman characterization of Norwood's argument was an unreasonable inference the Court drew in UPS' favor. Compounding its error, the District Court further held:

> Plaintiff's focus on tape recording redirected the interactive process towards her preferred accommodation. Plaintiff asserts that her "alleged 'myopic' focus on tape recording as her preferred solution did not cause the breakdown in the interactive process." Doc. 175 at 31. She explains that she "continued to inquire about that alternative because she did not know [defendant] had proposed an alternative." Id. But plaintiff also explains she "focused on tape recording because Battle also requested a tape recorder, and a jury found for him." Doc. 175 at 31 (referring to the trial in Battle v. United Parcel Serv., Inc., 438 F.3d 856, 864 (8th Cir. 2006)); see also Doc. 162-1 at 119 (Decl. Ex. B) (pl.'s 3/29/2018 email to Roux) ("I request an agenda of all meetings, as well as the ability to tape[ ] record, as requested in Battle v. UPS, where [defendant] lost because it refused these

accommodations."). Plaintiff is correct to some extent. Her unbridled enthusiasm about tape recording strained the interactive process. She didn't break the process, however. But more concerning are plaintiff's (1) unwillingness to explore other potential forms of accommodation cooperatively and (2) refusal to answer directly, if at all, defendant's requests for information about the scope of plaintiff's need for accommodation. Considered as a whole, the summary judgment facts present no triable issue whether plaintiff's conduct during the interactive process was cooperative.

**APX 4012-4013.**

On its way to dismissing the ADA claim by determining what was reasonable and what was not, the District Court inappropriately refused to consider the Appellant's preemptively filed summary judgment and her expert's testimony. This was error, and Appellant respectfully requests this Court reverse the grant of summary judgment and remand for trial.

## STANDARD OF REVIEW

*Standard of Review.* This Court reviews an "order granting summary judgment de novo, applying the same standard as the district court." *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 882 (10th Cir. 2018). Summary judgment should only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court will consider the evidence in the light most favorable to the non-moving party. For there to be a "genuine" dispute of fact, there must be more than a mere scintilla of evidence; to avoid summary judgment, the evidence

must be such that a reasonable jury could return a verdict for the nonmoving party. *Aubrey v. Koppes*, 975 F.3d 995, 1004 (10th Cir. 2020) (quoting *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020)). The nonmoving party, however, "is given wide birth to prove a factual controversy exists." *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015).

Additionally, this Court's review of an order granting summary judgment "need not defer to factual findings rendered by the district court." *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1121 (10th Cir. 2021). And summary judgment "does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences." *Parker v. Salina Reg'l Health Ctr., Inc.*, 463 F. Supp. 2d 1263, 1265 (D. Kan. 2006).

## ARGUMENT

**I.      The District Court Erred In Granting Summary Judgment Because A Reasonable Jury Could Believe That UPS Acted In Bad Faith By Willfully Concealing Its Willingness To Provide Norwood With A Notetaker**

In granting UPS's motion for summary judgment, the District Court recognized its obligation to resolve all reasonable inferences in favor of Norwood but failed to follow through. Below, Norwood argued that UPS acted in bad faith when UPS HR representative Eric Day lied to Norwood and her husband about UPS' decision to allow Norwood a notetaker accommodation. **APX 2939**. According to the District Court, Norwood was the sole cause for any breakdown in the interactive process that began once she requested accommodations under the ADA, and Norwood was uncooperative with UPS's earnest endeavors to continue dialogue about providing accommodations. **APX 4021-4022.** But she wasn't a cause of the breakdown or uncooperative, nor were UPS's attempts to keep the discussion going sincere. On the contrary, UPS understood that talking about an agenda in preparation for the meeting without an accommodation for what was discussed during the meeting was useless. An agenda without a notetaker is useless. So, a reasonable inference is that Day's deception was intentional.  And an inference that Norwood was uncooperative is unwarranted because Norwood was well within her rights to ask questions seeking more information. All UPS had to do was be truthful!

14

Viewing the facts in the light most favorable to UPS yet again, the District Court further discounted that Norwood's testimony about a phone call from 3 July 2018 in violation of Rule 56. The District Court charitably described UPS as soliciting information about providing her with a notetaker and would therefore require an unreasonable inference as to Norwood's argument that UPS's conduct in that call was deceptive and dishonest by concealing its willingness to provide her with a notetaker. **APX 4001-4002.** But Norwood's testimony doesn't describe what the District Court asserts. To the contrary, the District Court's reasoning inappropriately equates Norwood's testimony about UPS providing agendas for meetings and UPS authorizing Norwood to take her own notes as if UPS was willing to provide someone else to take notes for her. **APX 4002.** The distinction is critical.

Additionally, the District Court refused to recognize that Eric Day testified that he did not remember the contents of the July 3, 2018 phone call. Thus, for the purposes of summary judgment, the District Court should not have granted UPS this inference. The District Court should not have rewarded Day's convenient amnesia. Day not only testified that he could not remember if he told Ms. Norwood that UPS proposed a note taker as an accommodation for her, **APX 2727**, Eric Day agreed that he never told Ms. Norwood that UPS proposed a notetaker. **APX 2720**. Eric Day conceded that he had not directly answered many of Ms.

Norwood's questions. **APX 2743**. A reasonable juror could conclude that Eric Day's indirect answers were deceptive. And Dr Aliff testified about the impact Day's deception had. **APX 2830, ln. 18 - 2831, ln. 9.**. The Norwoods swore that Mr. Day never communicated the notetaker to them. **APX 224-225, 1683**. Given Mr. Day's testimony, the District Court's assumption that Mr. Day communicated anything material to Ms. Norwood requires an unreasonable inference in favor of UPS which is forbidden when considering a summary judgment motion.

In fact, it warrants this Court reverse and remand because it is the District Court's reasoning, not Norwood's, that requires an unreasonable inference: Norwood must have had psychic abilities on 3 July 2018 to know that UPS was willing to provide a notetaker accommodation. Without such powers, Norwood could not have known that UPS was willing to do so until 11 July 2018, even based on the District Court's findings. **APX 3983.** A reasonable juror could thus conclude that UPS acted in bad faith by concealing the extent of alternative accommodations it already deemed reasonable, including a notetaker, from its 28 June 2018 review of Norwood's accommodation request. **APX 3979.**

The District Court also failed to recognize the issues it created with its application of Rule 56. In its order, the District Court stated that it determined "whether a reasonable juror could concluded[sic] that anyone but plaintiff caused that interactive process to collapse." **APX 3992**. At worst, this is squarely an issue

for the jury as it determines credibility "as a summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences." *Isberner v. Walmart Inc.,* No. 20-2001-JAR-KGG, 2021 WL 4284540, at *1 (D. Kan. Sept. 21, 2021). Notably, the District Court provided no citation to any legal authority for this proposition. Rather, there are multiple courts that have recognized that this is precisely a jury question. If and when the interactive process broke down is usually a question of fact for the jury. *See Lara v. DNC Parks & Resorts at Tenaya, Inc.*, No. 1:14-CV-000103-LJO, 2015 WL 4394618, at *14 (E.D. Cal. July 16, 2015) ("whether an employer engaged in a good faith interactive process with a disabled employee are traditional questions of fact"); *Poole v. Centennial Imports, Inc.*, No. 2:12-CV-00647-APG, 2014 WL 2090810, at *7 (D. Nev. May 19, 2014) ("Whether [the defendant] satisfied the statutory requirement of an interactive process is a question of fact for the jury."); *see also Beem v. Providence Health & Services*, CV-10-0037-JLQ, 2011 WL 4852301, at 9 (E.D. Wash. Oct. 13, 2011)(although a reasonable jury "could determine that [plaintiff] was responsible for the breakdown in the interactive process when she declined the 8:30 a.m. start time" in 2005, it could also determine that the defendant was responsible for the breakdown when it denied plaintiff's request to work the graveyard shift in 2009). Day's deception created the breakdown, and a reasonable jury could so find.  But Day also violated

UPS policy.

Further, the District Court's handling of the testimony of Gayle Narimatsu is error. The District Court held that Narimatsu's testimony should be disregarded because "the court disregards statements of fact based on speculation or hypotheticals because they aren't proper on a motion for summary judgment." **APX 3975.** First, Gayle Narimatsu is an employee of United Parcel Service. Her primary job function is to participate in the accommodation process to ensure the employee's position is communicated in good faith. She is familiar with UPS policy and the good faith interactive process as envisioned by the ADA. Ms. Narimatsu was present at the checklist meeting and the committee meeting on 6/28/2018. Ms. Narimatsu has been trained in the ADA and the good faith interactive process. Her training was that good faith means telling the truth. **APX 1623**. Ms. Narimatsu took leave which caused her to be absent from the events in July, but she testified what UPS policy and the ADA required Mr. Eric Day to tell Ms. Norwood. **APX 1623.** For example, Ms. Narimatsu testified that in the July 3, 2018 phone call that the ADA good faith interactive process required Eric Day to tell Ms. Norwood the committee's findings. **APX 1623-4.**

In support of the District Court's proposition that Narimatsu's testimony should be disregarded, the District Court cited *Jarrett v. Sprint/United Mgmt. Co*., 37 F. Supp. 2d 1283, 1285 (D. Kan. 1999), aff'd, 203 F.3d 835 (10th Cir. 2000).

The citation is improper for two reasons. First, *Jarrett* does not hold what the District Court says it did. *Jarrett* merely states that "in a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Id*. *Jarrett* was a case where the Plaintiff failed to substantively respond to a motion for summary judgment. In that case, the Plaintiff filed a Rule 56(d) affidavit, but the Court rejected it since it was largely speculative. *Id*. That is not applicable to the case at bar. There are excluding UPS's own employee who oversees hundreds of claims for accommodation, understands UPS policy regarding the accommodation process, and who was partially involved in Ms. Norwood's request. She testified that Eric Day should have communicated to Ms. Norwood the committee's findings on 7/3/2018. Further, she concluded that if Eric Day had not done so, this would be a violation of the good faith interactive process. This is not speculation, rather Ms. Narimatsu is a high-level UPS employee whose job is to conduct the accommodation processes at UPS. Second, this Court has never held that testimony based on hypotheticals is not proper in response to a summary judgment motion. Such a holding would make high level human resource manager testimony irrelevant as most times they are not to testify about the specific facts of the case, but rather the policy of the company.

19

## II. The District Court Erred By Excluding Dr. Aliff's Testimony Because Norwood Cited To It With Particularity In Her Statement Of Facts Supporting Denial Of UPS's Summary Judgment Motion

The District Court made its determination "without considering Dr. Aliff's expert opinions or her report," reasoning that Norwood only cited to Dr. Aliff's testimony twice in her response to UPS's summary judgment motion and that those cites did not conform to the District Court's local rules about citing with particularity under D Kan. Rule 56.1(a)–(b). **APX 4023.** This reasoning was false mandating reversal. The District Court correctly observed that Norwood attached Dr. Aliff's deposition in responding to UPS's motion for summary judgment, *id.*, but it overlooked a third citation in which Norwood did comply with the rule in her statement of facts supporting denial of summary judgment, albeit labeled as Exhibit 'G' on the ECF docket instead of 'H' due to a clerical error in filing. **APX 15 & APX 2938, ¶ 28 ("See Exhibit H at P. 58:5-60:9").** In doing so, the District Court failed to consider Norwood's argument and draw reasonable inferences in her favor that UPS suggesting a notetaker was "materially different" than proposing one and whether the "lack of clarity increased [Norwood's] anxiety" during UPS's purported good faith interactive dialogue. *Id.* The District Court provided no explanation for its choice to exclude Aliff's testimony that was cited with particularity. A District Court cannot consider just the evidence that supports its result. A District Court must consider all admissible evidence on summary judgment. The District Court failed to do so in this case and should be reversed.

## A.      The mislabeled exhibit could be easily ascertained

This Court's review should consider the portion of Dr. Aliff's testimony that Norwood cited with particularity and disregard UPS's position in its response to Norwood's additional statements of fact that "Exhibit H [was] not attached or properly labeled such that" the District Court could "ascertain the record evidence supporting [Norwood's] claim." **APX 3891, ¶ 28.** Admittedly, the ECF docket does not show an Exhibit 'H' attached, but the District Court—and more importantly UPS—could have easily deduced that Norwood's citation to "Exhibit H" was in reference Dr. Aliff's testimony because Norwood explicitly designated "Aliff's Deposition" as "Exhibit H" in her response to UPS's summary judgment motion. **APX 1576, ¶ 6.** Dr. Aliff's testimony was attached multiple times in the record. UPS's subsequent claim otherwise marks a specious attempt to exclude relevant evidence damaging to its own summary judgment motion. This alone shows how the District Court overzealously granted summary judgment.

## B.      The expert testimony is not conclusory

Indeed, this Court should not buy UPS's theory that Norwood's arguments and citation to "Exhibit H" merely indicated "a conclusion that is unsupported by evidence." **APX 3891, ¶ 28.** What did Norwood argue?

> Eric Day's suggestion of a note taker was unclear. "Have you considered a note taker?" is materially different from "UPS proposes a note taker." This lack of clarity

increased Plaintiff's anxiety. See Exhibit H at P. 58:5-60:9.

**APX 2938, ¶ 28.** What did Norwood cite of Dr. Aliff's testimony, Exhibit H, in support of those claims? Most importantly, questions asked by UPS's own counsel:

> Q:    But you would agree, Dr. Aliff, as a doctor and as someone who is successful -- you've read the email. [Eric Day] asked her how about a notetaker. Did he not propose to her a notetaker as an accommodation in this case?
> A:    He told her to request it.
> Q:    Is there -- are you going to say that's the difference here?
> A:    So when you're dealing with an individual with a mental illness, unless you are going to specifically say UPS has proffered that a notetaker in lieu of recording as a potential accommodation, that is entirely different than saying have you thought about requesting. That puts the onus on Ms. Norwood to request something that UPS has already proffered in a meeting that she doesn't know they've already proffered.

**APX 2830, ln. 18 - 2831, ln. 9.** Certainly, Dr. Aliff's expert testimony here presents but one of many genuine issues of fact for a jury because it underscores the critical distinction between an employer telling someone to request a specific ADA accommodation as opposed to the employer actually offering it, especially if the employer had already determined that accommodation to be reasonable but withheld that determination from an employee wrestling with mental health issues.

So too did Dr. Aliff's testimony bolster Norwood's contention that UPS's lack of clarity increased Norwood's anxiety about the accommodations process.

22

**APX 2938, ¶ 28.** Addressing Eric Day's 11 July 2018 email to Norwood questioning whether she had considered requesting a notetaker who would then provide notes to her, Dr. Aliff stated:

> So at that point, it seems clear that [Eric Day] is not telling [Norwood] that ADA had thought about that, but he is asking her hey, do you think this could work. And then we see Ms. Norwood's anxiety and depression and just anger about the process and feeling that she is being ignored, she doesn't seize upon that notetaker and think whether that could work.

**APX 2830, ln. 10-17.** Here, as above, Dr. Aliff's testimony suggests that UPS was not transparent with Norwood about a notetaker accommodation. Moreover, it illustrates how UPS's conduct frustrated Norwood's attempts at seeking reasonable accommodations by adding to her problems rather than helping solve them.

The District Court's failure to consider any of Dr. Aliff's testimony, short of a scrivener's error citing "Exhibit H" rather than "Exhibit G," contributed to reasonable inferences not being drawn in Norwood's favor, including that UPS never actually offered a notetaker, as well as that UPS did not engage in bad faith from not explicitly offering a notetaker when it had already deemed one to be an alternative and reasonable accommodation. This Court should not do the same.

The District Court explicitly declined to work for Appellant, but it worked hard to find no fault for UPS. Enroute to its erroneous findings, the District Court raised an argument not even raised by UPS and one that is not supported by the

factual record. The District Court held "Plaintiff explained she asked Mr. Day about the Committee's decisions, and then Mr. Day asked her which meetings she needed to take notes for." **APX 4002**. The District Court reasoned that Ms. Norwood was implicitly saying that UPS had offered a note taker, so no reasonable jury could find that Eric Day lied. **Id.** The problem with this is that the District Court took this testimony out of context. Ms. Norwood could have always just taken notes herself, so this was not offering an accommodation. Ms. Norwood actually testified the following:

> Q. Did he say -- did he say anything else in terms of what UPS proposed or had decided?
> A. No.· He said -- he asked me what --first he asked me what was -- what agenda – what meetings would I need an agenda for.· And I said if I had a tape recorder, we wouldn't -- no.· Wait a minute.· He said -- he said what meetings – what meetings would you need an agenda for and what meetings would you need to take notes for.· And I said if I had a tape recorder, I wouldn't need to take notes.
> Q. All right.· And did he ever tell you that the region ADA committee had decided to offer you a note taker?
> A. No, sir.· That was not mentioned.
> Q. If he had said look, UPS proposes a note taker, what would you have done?
> **APX 1167 ln. 7-ln. 21.**

This is an instance of the District Court going out of its way to justify its erroneous decision. Instead of viewing this evidence in a light most favorable to Ms. Norwood, the District Court concluded that Ms. Norwood implicitly conceded that a notetaker was offered despite the following direct question. This sort of work for

the moving party during summary judgment should not be allowed especially when the District Court expressly states that it will not consider evidence that is not cited with particularity. **APX 4023.**

### C. Dr. Aliff's testimony provides helpful expert insight on factual issues

Because the District Court reached its decision without considering any of Dr. Aliff's testimony, dismissing as moot UPS's motion to exclude her testimony in full, Norwood maintains so as to not waive that considering Dr. Aliff's testimony as an expert witness on these properly cited issues of fact would still be proper. *Orner v. National Beef Packaging Company, LLC*, Not Reported in Fed. Supp., 2015 WL 8334544, 99 Fed. R. Evid. Serv. 109, 2015 A.D. Cases 404,044 9 (2015) is helpful in addressing the issues at bar. UPS made much ado about Dr. Aliff testifying that she was not an "expert" regarding the interpretation of the ADA. Had she answered that she was an expert on the ADA, *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005) would have been the basis for excluding her testimony. In attempting to clarify when an expert runs afoul of the Federal Rules of Evidence when offering ultimate opinions, the Advisory Committee Notes to Rule 704 offer the following helpful example: Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational

scheme of distribution?" would be allowed. *Id*. Here, Dr. Aliff's testimony fits well within this standard. Dr. Aliff will testify that Appellant is substantially limited in her ability to think, concentrate, and work because of her depression and anxiety but will not testify to the bald legal conclusion that Appellant is a person with a disability. "An expert may offer an opinion even if it 'embraces an ultimate issue to be determined by the trier of fact.' *Crumpley v. Associated Wholesale Grocers*, 2018 WL 1933743, at *5 (D. Kan. Apr. 24, 2018).

Interpreting this example, the United States Court of Appeals for the Tenth Circuit has stated that a trial court's primary inquiry is "distinguishing between testimony on issues of law and testimony on ultimate facts," where "testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case." According to the Tenth Circuit, district courts should thus exclude testimony that "simply tell[s] the jury to reach a particular verdict based on [the expert's] own say-so." But this is not what Dr. Aliff's testimony is. Dr. Aliff' is prepared to testify that Appellant was substantially limited in working, thinking, and concentrating, that Appellant was able to perform the essential functions of her job with these accommodations, and how Appellant's deficits impacted the interactive process. These are all issues well within the scope of Dr. Aliff's training, education, and experience. This testimony

was probative at least for summary judgment.

### III.    The District Court violated Rule 56 when it granted UPS unreasonable inferences.

The District Court repeatedly granted unreasonable inferences in favor of

UPS and refused to grant Ms. Norwood reasonable inferences:

> Plaintiff's focus on tape recording redirected the interactive process towards her preferred accommodation. Plaintiff asserts that her "alleged 'myopic' focus on tape recording as her preferred solution did not cause the breakdown in the interactive process." Doc. 175 at 31. She explains that she "continued to inquire about that alternative because she did not know [defendant] had proposed an alternative." *Id.* But plaintiff also explains she "focused on tape recording because Battle also requested a tape recorder, and a jury found for him." Doc. 175 at 31 (referring to the trial in *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 864 (8th Cir. 2006)); *see also* Doc. 162-1 at 119 (Decl. Ex. B) (pl.'s 3/29/2018 email to Roux) ("I request an agenda of all meetings, as well as the ability to tape[ ] record, as requested in Battle v. UPS, where [defendant] lost because it refused these accommodations.").
> **APX 4012-4013**.

The District Court then found Plaintiff 'strained" the process:

> Plaintiff is correct to some extent. Her unbridled enthusiasm about tape recording strained the interactive process. She didn't break the process, however. But more concerning are plaintiff's (1) unwillingness to explore other potential forms of accommodation cooperatively and (2) refusal to answer directly, if at all, defendant's requests for information about the scope of plaintiff's need for accommodation.

**APX 4013.**

While these "concerns" might support a jury verdict against her, none of these "concerns" warrant summary judgment dismissing this action.  The District Court did not tell us whether it found Day's untruthful answers about whether the UPS ADA Committee proposed an accommodation "concerning."   But this Court should find at the minimum that this record does not support the District Court's ruling and reverse.

On its way to granting summary judgment, the District Court found, "Considered as a whole, the summary judgment facts present no triable issue whether plaintiff's conduct during the interactive process was cooperative." **Id**. So, the District Court excused Day's untruthfulness but dismissed Norwood's Complaint because she was uncooperative? How can this be?

The District Court began by recognizing,

> "Our Circuit has explained that where 'the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process.' *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (quoting *Beck*, 75 F.3d at 1136). In *Templeton*, the Tenth Circuit affirmed summary judgment for the defendant-employer where the plaintiff-employee failed to comply with the defendant's reasonable request for medical information 'to determine appropriate reasonable accommodation for [plaintiff] in the event she was able to return to work at all.' *Templeton*, 162 F.3d at 619."

28

**APX 4013**.

According to the District Court, the Tenth Circuit held that an "employer cannot be expected to propose reasonable accommodation absent critical information on the employee's medical condition and the limitations it imposes." **Id**. So, how can an employee be expected to accept a reasonable accommodation absent critical information on the employer's proposed reasonable accommodation? An employee cannot. This is a huge flaw in the District Court's reasoning. But this is what happened.

On these facts, a jury should have decided whether the breakdown in the accommodation process was Day's failure to tell the Norwoods the truth or Ms. Norwood's alleged lack of cooperation?  Here, the District Court did not believe Ms. Norwood when she swore that Mr. Day lied to her. And the District Court should have credited Ms. Norwood's Affidavit about her willingness to accept a notetaker- had she known. But the District Court not only failed to consider her Affidavit, the District Court made inferences against her!  The District Court highlighted, "**Please let us know for which meetings you need agendas and/or notes so we can help get you back to work.**" **APX 4003** (emphasis in original). This illustrates the amount of work the District Court did to justify its end result. There is no way an employee like Ms. Norwood could answer this question without knowing that UPS had approved a notetaker, so the District Court

expectance of an answer is unreasonable. This Court is not required to accept the District Court's inferences. Rather this Court is empowered to review the record just as the District Court. Except, this Court must not grant UPS favorable inferences like the District Court erroneously did.

### A. The District Court's inferences related to the July 3, 2018 phone call are clearly erroneous.

Even though the standard of review for the grant of summary judgment is de novo, the District Court's findings regarding the July 3m 2018 phone call are reversible even under the higher abuse of discretion standard. The July 3, 2018 phone call is an instance of a failure to provide Norwood all reasonable inferences. The problem is that Eric Day could not remember the specifics of the phone call. **APX 2727.** But Ms. Norwood and her husband remembered the phone call clearly. They both swore in their affidavits that Mr. Day never told them that UPS proposed a note taker. Instead, Mr. Day concealed this from them, because had Mr. Day communicated this Mr. Norwood would have insisted that his wife accept the accommodation and return to work. **APX 224-225, 1683**. Mr. Day testified that he could not refute Ms. Norwood's testimony. It was further undisputed that Eric Day should have told Ms. Norwood the committee findings on July 3, 2018. **APX 3882**. The reasonable inference is that Mr. Day and therefore UPS deceived Ms. Norwood. Under no circumstances is that consistent with the meaning and spirit of the ADA. A reasonable juror could conclude that this deception was intentional.

Ms. Norwood should not be required to withstand deception from her employer during the good faith interactive process. A reasonable juror could conclude that this was the breakdown of the good faith interactive process as Dr. Aliff testified. Consequently, the District Court's finding regarding the July 3, 2018 phone call was clearly erroneous.

**B.      The July 11, 2018 email exchange and the ensuing breakdown that Ms. Norwood experienced.**

By July 11, 2018, nearly two weeks had passed since the committee had approved the notetaker. This was not communicated to Ms. Norwood. Instead, Eric Day continued to request more information from Ms. Norwood. From Ms. Norwood's perspective, she was essentially bargaining against herself because there was no feedback from UPS. **APX 1683.** Through all of the correspondence between Eric Day and Susan Norwood, the idea of a notetaker is mentioned once. There is no evidence that Eric Day mentioned the note taker in all of the phone calls between he and Ms. Norwood. Instead in the only mention of a notetaker, Eric Day wrote in his email on July 11, 2018, "Have you considered requesting a note taker for that call, and then having the notes provided to you after the call?" **APX 2929.** There is a genuine dispute about the meaning of this email. UPS contends that this was their offer of a notetaker. Ms. Norwood did not believe this was an offer rather it was another instance of smoke and mirrors from UPS. From here, Ms. Norwood felt like there was no progress being made on the

accommodation, so her mental illness took over. **APX 2830, ln. 18 - 2831, ln. 9.**

Ms. Norwood checked herself in to a mental hospital to receive treatment on July

12, 2018 because she was threatening self-harm. **APX 537.**

### C.    Ms. Norwood's testimony regarding the July 3, 2018 phone call.

While completing flipping the standard on its head, the District Court makes

an argument UPS never made and gives UPS inappropriate inferences regarding

Ms. Norwood's July 3, 2018 phone call. The District Court held that "Plaintiff

explained she asked Mr. Day about the Committee's decisions, and then Mr. Day

asked her which meetings she needed to take notes for." **APX 4002**. The District

Court reasoned that Ms. Norwood was implicitly saying that UPS had offered a

note taker, so no reasonable jury could find that Eric Day lied. **Id.** The problem

with this is that the District Court took this testimony out of context. Ms. Norwood

could have always just taken notes herself, so this was not offering an

accommodation. Ms. Norwood actually testified the following:

> Q. Did he say -- did he say anything else in terms of what
> UPS proposed or had decided?
> A. No.· He said -- he asked me what --first he asked me
> what was -- what agenda – what meetings would I need
> an agenda for.· And I said if I had a tape recorder, we
> wouldn't -- no.· Wait a minute.· He said -- he said what
> meetings – what meetings would you need an agenda for
> and what meetings would you need to take notes for.·
> And I said if I had a tape recorder, I wouldn't need to take
> notes.
> Q. All right.· And did he ever tell you that the region
> ADA committee had decided to offer you a note taker?

> A. No, sir.· That was not mentioned.
> Q. If he had said look, UPS proposes a note taker, what
> would you have done?
> **APX 1167 ln. 7-ln. 21.**

This is an instance of the District Court going out of its way to justify its erroneous decision. Instead of viewing this evidence in a light most favorable to Ms. Norwood, the District Court concluded that Ms. Norwood implicitly conceded that a notetaker was offered despite the following direct question.

## IV. Even with the District Court's erroneous findings of fact, Summary Judgment was inappropriate.

This Court's de novo review of UPS's summary judgment argument reveals that genuine issues of fact exist because a reasonable jury could believe that UPS acted in bad faith during the interactive process Norwood started by requesting accommodations under the ADA. Under the ADA, an employee "need not prove the employer's motivation or intent to discriminate to prevail on a failure to accommodate claim." *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018) (citing *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017)). Instead, the claim "is evaluated under a modified *McDonnell Douglas* burden-shifting framework." *Id.* at 1204 (citing *Punt*, 862 F.3d at 1049-50) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

### A. Norwood established a prima facie case

This burden-shifting framework requires an employee to first show "that '(1)

she is disabled; (2) she is 'otherwise qualified'; and (3) she requested a plausibly reasonable accommodation.'" *Punt*, 862 F.3d at 1050 (quoting *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012). After doing so, "the burden shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense[.]" *Id.* at 1050 (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999) (en banc)). Summary judgment for the employer is only proper if "the employer does either of the above," and an employee who subsequently "presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitates any challenged elements of . . . her prima facie case sufficiently to establish a genuine dispute of material fact as to such challenged elements" will defeat an employer's summary judgment motion. *Id.* (quoting *Smith*, 180 F.3d at 1179).

### 1. Norwood was disabled under the ADA

The ADA considers a "disability" as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment[.]" 42 U.S.C. §12102(1). "An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability," 42 U.S.C. § 12102(4)(C), and "[a]n impairment that is episodic or in remission is a

disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

Among other things, Norwood suffered from anxiety, difficulty concentrating, and problems with memory. **APX 3978.** UPS did not dispute that Norwood was disabled under the ADA as their summary judgment motion hinged solely on the good faith accommodation process. **APX 3992.** Norwood clearly fell within the ADA's meaning of disabled, establishing the first element of her prima facie case.

### 2.    Norwood was qualified to perform her job

The ADA "prohibits a 'covered entity' from 'discriminat[ing] against a qualified individual on the basis of disability." *Aubrey v. Koppes*, 975 F.3d 995, 1006 (10th Cir. 2020) (quoting 42 U.S.C. § 12112(a) (alteration in original)). A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

UPS found in the accommodation process that Ms. Norwood was qualified to do her job if she had a notetaker. **APX 1648**. Further, Ms. Norwood was a stellar employee who received awards from UPS due to her performance. **APX 1767**. UPS attempted to dispute this, but the evidence viewed in a light most favorable to Ms. Norwood shows that she was a good employee who encountered mental health

issues due to the stress of work and caring for her elderly parents. The ADA was meant to protect people who encounter these issues do not allow employers to play games to frustrate a mentally ill employee. This Court must reverse.

### 3. Norwood requested a plausibly reasonable accommodation

A reasonable accommodation under the ADA "refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." *Aubrey v. Koppes*, 975 F.3d 995, 1007 (10th Cir. 2020) (quoting *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1205 (10th Cir. 2018)). The ADA states a "reasonable accommodation may include—

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with such disabilities.

42 U.S.C. § 12111(9). "[W]hether a requested accommodation is reasonable 'must be made on the facts of each case taking into consideration the particular individual's disability and employment position.'" *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (quoting *Mason v. Amaya Commc'ns, Inc.*, 357 F.3d 1114, 1123-24 (10th Cir. 2004)).

A note taker was approved for Ms. Norwood, the issue is whether this

proposal was communicated to Ms. Norwood. The disputed facts in a light most favorable to Ms. Norwood shows the opposite.

### B.    UPS paid lip service to the interactive dialogue.

Once a request for an accommodation is made, the employer and the employee must engage each other to find a reasonable accommodation. *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999). This process requires "good-faith communications between the employer and employee." *Id*. A party that fails obstructs or delays the process could not be acting in good faith as well as a party that "fails to communicate, by way of initiation or response, may also be acting in bad faith." *Beck v. U. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). This process requires a great deal of communication between the parties. *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000), *amended* (Apr. 4, 2000).

While an employer's failure to engage in a good faith interactive process is not dispositive, it has been found to preclude summary judgment because it shows the employer failed to provide a reasonable accommodation. *Id*. When stating the reasons for its holding, the Seventh Circuit stated that when "the employer does not obstruct the process, but instead makes reasonable efforts both to communicate with the employee and provide accommodations based on the information it possessed, ADA liability simply does not follow." *Beck* at 1137. The Seventh

Circuit continued by stating that "because the University was never able to obtain an adequate understanding of what action it should take, it cannot be held liable for failure to make 'reasonable accommodations.'" *Id*. While the employee has a duty to engage in the good faith process, this Court has held repeatedly that the breakdown tends to occur when an employee fails to furnish their employer necessary information. *Beck,* 75 F.3d at 1136; *see also Steffes v. Stepan Co.,* 144 F.3d 1070, 1073 (7th Cir.1998) (noting that when the employee "fail[s] to hold up her end of the interactive process by clarifying the extent of her medical restrictions, [the employer] cannot be held liable for failing to provide reasonable accommodations"); see also *Templeton v. Neodata Services, Inc.,* 162 F.3d 617, 619 (10th Cir. 1998)( "Here, as in Beck, the employee's failure to provide medical information necessary to the interactive process precludes her from claiming that the employer violated the ADA by failing to provide reasonable accommodation."). This Court has followed the Seventh Circuit's holding in *Beck*. See *McFarland v. City & Cnty. of Denver*, 744 F. App'x 583, 587 (10th Cir. 2018).

The regulations governing the ADA are particularly instructive which this Court has previously found are entitled to a great deal of deference. *Smith* at 1165. The regulations provide a four-step process for reaching a reasonable accommodation. The regulation provides that the employer should:

> (1) Analyze the particular job involved and determine its purpose and essential functions;

> (2) Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation;
>
> (3) In consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position; and
>
> (4) Consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer.
>
> 29 C.F.R. § Pt. 1630, App.

UPS had completed the first three steps with the exception of consulting with Norwood about the potential accommodations. UPS had identified a notetaker as a reasonable accommodation that came from the information that was given to them by Ms. Norwood. The only step left was to "consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer." *Id*. UPS will attempt to argue that Ms. Norwood failed to provide the necessary information to complete step three, but the regulations undermine this. The regulation continues to state:

> Once potential accommodations have been identified, the employer should assess the effectiveness of each potential accommodation in assisting the individual in need of the accommodation in the performance of the essential functions of the position. If more than one of these accommodations will enable the individual to perform the essential functions or if the individual would prefer to provide his or her own accommodation, the preference of the individual with a disability should be

given primary consideration.
29 C.F.R. § Pt. 1630, App.

A reasonable accommodation has been identified. **APX 3979**. UPS had to communicate this to Ms. Norwood. But they did not. At a minimum, there is a fact dispute whether he even told Ms. Norwood. **APX 1683**. But this falls apart because Eric Day testified that he could not remember. **APX 2727**. Further to consider Ms. Norwood's preference, UPS would have necessarily had to explicitly disclose that they had approved a notetaker. **APX 3979**. Eric Day conceded that he did not do this directly. **APX 2727 & 2743**. On July 6, 2018, Eric Day represented to Ms. Norwood that "the committee is still trying to arrive at a solution that will hopefully allow you to return to work." **APX 595**. This was a lie. The committee had made its determination on June 28, 2018. **APX 3979**. There is no conceivable way that this is good faith.

Further, given all reasonable inferences the facts showed that UPS's employee, Eric Day, lied to Ms. Norwood about the committee findings. Mr. Norwood engaged with UPS in good faith. She gave them all of her medical information and told them how she needed to be accommodated in the checklist meeting. Then the undisputed record shows that UPS developed a reasonable accommodation in a notetaker. **APX 3979**. This was never communicated to Ms. Norwood. She and her husband asked Eric Day on 7/3/2018 what the committee proposed at which point Day did not respond. **APX 1683.** In that circumstance,

Day had a duty under the ADA to communicate the committee's findings to Ms. Norwood. He did not. In fact, he continued to try and solicit more information from Ms. Norwood. This was a red herring. UPS had made their determination. They did not need any other information. They had found a note taker to be a reasonable accommodation for Ms. Norwood. The only part of the interactive process left was for UPS to communicate this to Ms. Norwood.

*Beck* warrants reversal of the District Court. The Seventh Circuit emphasized the importance of communication between the parties. At the minimum, it is disputed that Eric Day told Ms. Norwood about the committee's findings. **APX 1683 & 2727.** Further, the committee had made its decision. **APX 3979.** In fact, Ms. Norwood had a nervous breakdown from Eric Day's lack of candor. Therefore, a reasonable juror could find that Eric Day's request for more information was disingenuous, and that these representations merely frustrated and delayed the interactive process.

*McFarland* is also instructive on the issue at hand. While the Court affirmed a grant of summary judgment in favor of the employer, the Court held that the undisputed facts showed that the employer provided an accommodation, and the employee never engaged the employer about the accommodation prior to suit. *McFarland* at 587. Neither of those elements are present in this case. Here, UPS never provided an accommodation, and Ms. Norwood provided sufficient

information for the UPS committee to determine that a note taker and an agenda would be a reasonable accommodation. UPS never provided this accommodation, and they never communicated the committee findings to Ms. Norwood.

The record in this case does not evince UPS struggling to offer reasonable accommodations in a good-faith interactive dialogue with Norwood. What the record does show, is that as early as 6/28/2018, UPS concluded that a notetaker would be a reasonable accommodation for Norwood. **APX 3979.** It then withheld these findings from Ms. Norwood until 7/11/2018 when Mr. Day asked if Ms. Norwood had considered a notetaker. **APX 3983**. This is not good faith. Especially considering the number of communications that Norwood and Eric Day had during that time frame. Mr. Day did not testify that he directly communicated the idea of a notetaker to Ms. Norwood. **APX 2727.** Rather, he testified that he could not remember. **Id**. Norwood stated that he did not. **APX 1683**. This fact presents a question for the jury as to whether UPS was acting in good faith. Then when considering the Narimatsu testimony, the effect is more damning to UPS. Ms. Narimatsu testified that if Eric Day did not communicate the note taker to Ms. Norwood, then that violated the good faith interactive process and UPS policy. **APX 1622**.

## CONCLUSION

Summary judgment is not appropriate in a case where member of high-level

management has testified that the company failed to follow their own policy regarding the good faith interactive process, and a reasonable juror could conclude that UPS was deceptive. The District Court wholly refused to acknowledge this testimony by stating it was conclusory. The standard that this would set would exclude any expert testimony, 30(b)(6) testimony, and other high level policy maker testimony because they do not have the requisite knowledge of particular facts. Just because Ms. Narimatsu was not present does not alleviate her particular knowledge with respect to the ADA and UPS policy. The District Court also erroneously granted numerous inferences in favor of UPS instead of Ms. Norwood which is expressly prohibited by Rule 56. Consequently for the foregoing reasons, Appellant respectfully requests that this Court reverse the holding of the District Court and remand this matter for trial.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel request oral argument. Counsel believes that this Court's disposition of this case will be aided by oral presentation to this Court.

Respectfully submitted,

LUTHER ONEAL SUTTER (Ark 95031)
10th Circuit Bar No. 95031
SUTTER & GILLHAM, PLLC
P.O. Box 2012
Benton, AR 72018
501) 315-1910 (O)/ 501) 315-1916 (f)
luthersutter.law@gmail.com

By **/s/ Luther Oneal Sutter**
*Counsel for Appellant Norwood*

## CERTIFICATE OF SERVICE & COMPLIANCE

On 11/17/2021, I served Appellant Norwood's Opening Brief by digital submission, after scanning it for viruses, through this Court's ECF system with an exact copy of this brief, notifying opposing counsel of record to be served. I further certify that within five (5) business days of being accepted by the clerk, I will file seven (7) hardcopies of this brief with the Clerk of the Court pursuant to 10th Cir. R. 31.

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9162 words after excluding parts under Fed. R. App. P. 32(f). It also complies with the typeface and style requirements under Fed. R. App. P. 32(a)(5)–(6) because it was prepared using Microsoft Word 2019 in 14 point, Times New Roman.

By **/s/ Luther Oneal Sutter**
Luther Oneal Sutter

## ATTACHMENTS

Appellant Norwood attaches the following pursuant to the Tenth Circuit's

Local Rule 28.2(a):

1.    Memorandum and Order filed 16 July 2021

2.    Final Judgment filed 16 July 2021