**Appeal No. 21-3145**

---

**United States Court of Appeals**
**For the Tenth Circuit**

---

**Susan Norwood,**
Plaintiff-Appellant,

vs.

**United Parcel Service, Inc.**
Defendant-Appellee.

---

Appeal From The United States District Court
For The District Of Kansas
Case No.: 19-2496-DDC-JPO
The Honorable Daniel D. Crabtree

---

**Brief of Appellee**

---

Shelley I. Ericsson
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
(816) 471-1301

Daniel P. Johnson
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
(816) 471-1301

**APPELLEE DOES NOT REQUEST ORAL ARGUMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................i

TABLE OF AUTHORITIES ............................................................... iii

CORPORATE DISCLOSURE STATEMENT ....................................1

STATEMENT OF RELATED CASES....................................................2

JURISDICTIONAL STATEMENT ......................................................3

STATEMENT OF THE ISSUES..........................................................4

STATEMENT OF THE CASE..............................................................4

    A.    Norwood's Employment Background..............................5

    B.    Norwood Goes on Medical Leave and Requests an
        Accommodation. ...............................................................6

    C.    Norwood Fails To Engage In The Interactive Process. ...................8

    D.    Norwood Seeks to Retire, and UPS Fills Her Position Based
        on that Representation. ....................................................14

    E.    UPS Moves for Summary Judgment..............................15

SUMMARY OF ARGUMENT ..........................................................16

STANDARD OF REVIEW ................................................................17

ARGUMENT AND AUTHORITIES..................................................19

I.    The District Court Appropriately Granted Summary Judgment to
    UPS. ..............................................................................................19

    A.    UPS Engaged in the Good-Faith Interactive Process with
        Norwood and Norwood Rejected UPS's Reasonable and
        Effective Accommodation..............................................20

    B.    Any Breakdown in the ADA's Interactive Dialogue is
        Attributable Solely to the Actions of Norwood and her Attorney..24

II.    Norwood cannot Establish that the District Court Failed to Apply
       the Appropriate Summary Judgment Standards. ..................................... 30

       A.    The District Court Drew Reasonable Inferences in Norwood's
             Favor. ......................................................................................... 31

       B.    The District Court Properly Excluded Norwood's Expert
             Witness Testimony. .................................................................... 35

       C.    The District Court Properly Refused to Consider Gayle
             Narimatsu's Speculative Testimony. .......................................... 39

CONCLUSION .................................................................................................. 42

CERTIFICATE OF COMPLIANCE .................................................................. 43

CERTIFICATE OF DIGITAL SUBMISSION  AND PRIVACY
       REDACTIONS .......................................................................................... 44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Wal-Mart Stores, Inc.*,
144 F.3d 664 (10th Cir. 1998) ............................................................. 35

*Allen v. Muskogee*,
119 F.3d 837 (10th Cir. 1997) ............................................................. 40

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 248 (1986) ............................................................................ 16

*Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*,
912 F.2d 1238 (10th Cir.1990) ............................................................ 15

*Argo v. Blue Cross & Blue Shield of Kansas, Inc.*
452 F.3d 1193 (10th Cir. 2006) ........................................................... 38

*Aubrey v. Koppes*,
975 F.3d 995 (10th Cir. 2020) ........................................................ 22, 33

*BancOklahoma Mortgage Corp. v. Capital Title Co.*,
194 F.3d 1089 (10th Cir.1999) ............................................................ 16

*Battle v. United Parcel Serv., Inc.*,
438 F.3d 856 (8th Cir. 2006) ......................................................... *passim*

*Battle v. United Parcel Serv., Inc.*,
Case No. 4:03CV00847-RSW, U.S. Dist. Court, ................................. 26

*Beaird v. Seagate Tech., Inc.*,
145 F.3d 1159 (10th Cir. 1998) ........................................................... 16

*Beck v. Univ. of Wisconsin Bd. of Regents*,
75 F.3d 1130 (7th Cir. 1996) .............................................................. 22

*Bones v. Honeywell Intern., Inc.*
366 F.3d 869 (10th Cir. 2004) ........................................................ 38, 40

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................ 16

*Conaway v. Smith*,
　853 F.2d 789 (10th Cir.1988) ...............................................................38

*EEOC v. Agro Distribution, LLC*,
　555 F.3d 462 (5th Cir. 2009) ...............................................................21

*Gilliard v. Georgia Dep't of Corr.*,
　500 F. App'x 860 (11th Cir. 2012) ......................................................19

*Gross v. Burggraf Const. Co.*,
　53 F.3d 1531 (10th Cir. 1995) .............................................................37

*Hankins v. The Gap, Inc.*,
　84 F.3d 797 (6th Cir. 1996) .................................................................22

*Jarrett v. Sprint/United Mgmt. Co.*,
　37 F. Supp. 2d 1283 (D. Kan. 1999), aff'd, 203 F.3d 835
　(10th Cir. 2000) ....................................................................................38

*Kiel v. Select Artificials, Inc.*,
　169 F.3d 1131 (8th Cir.1999) ..............................................................19

*Llewellyn v. Allstate Home Loans, Inc.*,
　711 F.3d 1173 (10th Cir. 2013) .....................................................16, 31

*Lujan v. Nat'l Wildlife Fed'n*,
　497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ....................17

*Mares v. Colo. Coal. For the Homeless*,
　No. 19-cv-03144-MEH, 2020 WL 7320625 (D. Colo. Dec. 8,
　2020) .....................................................................................................30

*McFarland v. City & Cnty. of Denver*,
　744 F. App'x 583 (10th Cir. 2018) ......................................................17

*Miller v. Regents of the Univ. of Colo.*,
　188 F.3d 518, 1999 WL 506520 (10th Cir.1999)(unpublished)..........37

*Murphy v. City of Tulsa*,
　950 F.3d 641 (10th Cir. 2019) .............................................................35

*Penry v. Fed. Home Loan Bank of Topeka*,
　155 F.3d 1257 (10th Cir. 1998) ...........................................................29

*Phelps v. Optima Health, Inc.*,
    251 F.3d 21 (1st Cir. 2001)...................................................................22

*Punt v. Kelly Servs.*,
    862 F.3d 1040 (10th Cir. 2017) ...................................................18, 26

*Rice v. United States*,
    166 F.3d 1088 (10th Cir.1999) ...........................................................40

*Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kans.*,
    691 F.3d 1211 (10th Cir. 2012) ..........................................................15

*Roska ex rel. Roska v. Peterson*,
    328 F.3d 1230 (10th Cir. 2003) ..........................................................35

*Sac & Fox Nation v. Hanson*,
    47 F.3d 1061 (10th Cir.1995) .............................................................33

*Schmidt v. Methodist Hosp. of Ind., Inc.*,
    89 F.3d 342 (7th Cir. 1996) ...............................................................22

*Sessoms v. Trustees of Univ. of Pennsylvania*,
    739 F. App'x 84 (3d Cir. 2018) ..........................................................23

*Sidlo v. Millercoors, LLC*,
    718 Fed. Appx. 718 (10th Cir. 2018)............................................29, 33

*Smith v. Midland Brake, Inc.*,
    180 F.3d 1154 (10th Cir.1999) ....................................................*passim*

*Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*,
    131 F.3d 874 (10th Cir.1997) .............................................................17

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*,
    117 F.3d 1278 (11th Cir.1997) ...........................................................19

*Taylor v. Phoenixville Sch. Dist.*,
    184 F.3d 296 (3d Cir. 1999) ...............................................................23

*Templeton v. Neodata Servs., Inc.*
    162 F.3d 617 (10th Cir. 1998) .................................................17, 23, 24

*Treff v. Galetka*,
  74 F.3d 191 (10th Cir.1996) ..............................................................16

*United States v. Austin*,
  426 F.3d 1266 (10th Cir.2005) ..........................................................37

*Wilburn v. Mid–South Health Dev., Inc.*,
  343 F.3d 1274 (10th Cir.2003) ..........................................................34

**Statutes**

28 U.S.C. § 1291 ....................................................................................1

Americans with Disabilities Act ........................................................3, 13

Americans with Disabilities Act of 1990..........................................*passim*

Family and Medical Leave Act of 1993 ................................................27

**Other Authorities**

10th Cir. R. 28.1 (A) ............................................................................34

10th Cir. R. 28.2(C) ...............................................................................2

10th Cir. R. 32.1(A) ............................................................................37

D. Kan. Rule 56.1 (a)-(b) ....................................................................34

D. Kan. Rule 56.1(b)(2) ......................................................................35

D. Kan. Rule 56.1, *et seq.* ............................................................33, 34

Fed. R. App. P. 26.1 ...............................................................................1

Fed. R. Evid. 704 ................................................................................34

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Defendant-Appellee United Parcel Service, Inc., by and through its counsel, discloses that there is no parent corporation. Defendant-Appellee United Parcel Service, Inc. further states that it is a publicly traded company, and no publicly held corporation holds a ten percent (10%) or more ownership interest in it.

## STATEMENT OF RELATED CASES

Pursuant to Tenth Circuit Rule 28.2(C), appellee states that there are no prior or related appeals related to this case.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because it is an appeal from the entry of a final judgment on all claims and parties.

## STATEMENT OF THE ISSUES

Whether the District Court properly granted summary judgment on Norwood's failure to accommodate claim because there is no dispute of material fact that Norwood caused the breakdown of the interactive process by (1) failing to reasonably respond to United Parcel Service, Inc.'s requests for information critical to the accommodation process; (2) redirecting the interactive process toward her preferred accommodation; and (3) pursuing retirement.

## STATEMENT OF THE CASE

Defendant-Appellee United Parcel Service, Inc. ("UPS") is a package delivery company that provides specialized transportation and logistics services. The company operates in more than 200 countries and territories worldwide, including a facility in Kansas City, Kansas. (App. Vol. 1. at APX276; App. Vol. 2 at APX307).

At all times relevant to Plaintiff-Appellant Susan Norwood's claims, UPS had policies and procedures for persons seeking an accommodation for a disability or disabilities.  (App. Vol. 2 at APX308, APX348, APX413-APX462). Pursuant to these policies and procedures, an employee first completes an ADA Accommodation Packet and submits it to UPS, and UPS reviews the completed paperwork to determine whether the employee may be disabled under the ADA. (*Id*. at APX461-462). Local UPS management then meets with the employee in an

ADA Checklist meeting to review the employee's relevant medical restrictions and to attempt to identify a reasonable accommodation that will enable the employee to perform the essential functions of their job, or an open position allowing for the same. *(Id.)* If the parties can identify a potential accommodation, UPS management will investigate whether the accommodation is available and feasible. (*Id.*) A Region ADA Committee of Occupational Health and Human Resources Managers from the appropriate Region and District, along with outside counsel, reviews accommodation requests to ensure consistency and compliance with the ADA. (*Id*. at APX435-APX436). UPS policy prohibits tape recording in the workplace. (*Id*. at APX400).

### A.    Norwood's Employment Background.

Norwood held the position of Division Manager at UPS for the West Central Division in the Central Plains District from June 2016 until approximately November 2018. (*Id*. at APX309, APX480). As Division Manager, Plaintiff oversaw the safety, service, and performance of operations in her division, and was required to adhere to company policies in doing so. (*Id*. at APX471-APX472). She also had access to UPS's proprietary and confidential information in her position; she participated in meetings where such information was discussed, and agreed to safeguard such information.  (App. Vol. 2 at APX309; App. Vol. 3 at APX507, APX602-APX604, APX645-APX646). Her role as Division Manager required her

to follow directions and routine; work independently with appropriate judgment; and concentrate, memorize, and recall information. (App. Vol. 2 at APX309, APX477-APX478).

### B.    Norwood Goes on Medical Leave and Requests an Accommodation.

Following ongoing issues with her performance, on March 21, 2018, Norwood met with her supervisor, Waring Lester, Operations Manager for the Central Plains District, and Stan Roux, Human Resources Manager for the Central Plains District, to discuss Norwood's performance and UPS's intention to place her on a manager performance improvement plan ("MPIP").  (App. Vol. 2 at APX312, APX485-APX486; App. Vol. 3 at APX493-APX494, APX553-APX556, APX583, APX618-APX626, APX630). Following the meeting, Norwood had an anxiety attack. (App. Vol. 2 at APX312; App. Vol. 3 at APX566).

On March 26, 2018, Norwood requested medical leave and indicated she needed an accommodation. (App. Vol. 2 at APX313; App. Vol. 3 at APX498, APX584-APX585). On March 27, 2018, UPS provided Norwood with instructions about how to seek an accommodation.  (App. Vol. 2 at APX313; App. Vol. 3 at APX499, APX584-APX585). On March 29, 2018, Norwood e-mailed Roux to "request an agenda of all meetings, as well as the ability to taper (sic) record." (App. Vol. 2 at APX313, APX348-APX349, APX463-APX465). After March 31,

2018, Norwood went on leave and never returned to work at UPS.[1] (App. Vol. 2 at APX313, APX473-APX474; App. Vol. 3 at APX494).

On April 2, 2018, UPS sent Norwood an accommodation packet.  (App. Vol. 2 at APX313; App. Vol. 3 at APX700, APX703-APX707).  UPS asked Norwood to return the completed forms as quickly as possible, stating that a failure to return the forms within four weeks of April 2, 2018, would be considered a withdrawal of her request. (App. Vol. 2 at APX314; App. Vol. 3 at APX700, APX703-APX707, APX737, APX740-APX749). On April 16, 2018, UPS sent Norwood a reminder to timely submit her paperwork.  (App. Vol. 2 at APX314; App. Vol. 3 at APX700, APX716). Norwood did not return the paperwork, which resulted in UPS closing her case on April 30, 2018. (App. Vol. 2 at APX314; App. Vol. 3 at APX700, APX716).

Norwood contacted UPS in May 2018 regarding her accommodation request and UPS sent her another accommodation packet on May 14, 2018.  (App. Vol. 2 at APX314; App. Vol. 3 at APX700, APX720-APX721). UPS sent Norwood a reminder notification on May 22, 2018, to return her ADA materials. (App. Vol. 2 at APX314; App. Vol. 3 at APX701, APX723-APX724). Norwood returned the accommodation paperwork on June 5, 2018. (App. Vol. 2 at APX314; App. Vol. 3 at APX701, APX726-APX734, APX737, APX741-APX742).

---

[1] Because Norwood was on leave, UPS never placed her on an MPIP. (App. Vol. 2 at APX313, APX473; App. Vol. 3 at APX523).

Norwood emailed Roux on June 11, 2018 and said "I am scheduled to return to work on June 18 after my vacation this week. However, I do not intend to return to work without the accommodations that were requested." (App. Vol. 2 at APX314, APX349-350, APX467). On June 15, 2018, Terra Vellema, Occupational Health Manager at UPS, emailed Norwood:

> Thank you for your inquiries regarding your request for accommodation and returning to work. We look forward to your return, and as you know, we initiated an accommodation request on your behalf. The accommodation process is designed to be interactive and requires your input in order to determine a reasonable accommodation that may assist you in the performance of your job. Because you have been on your medical leave, we have not contacted you regarding your checklist meeting (where UPS and you explore potential accommodations). Instead, we wanted to allow you to focus on your health. Now that you are in a position to return, we look forward to working with you, and will schedule your checklist meeting as soon as possible upon your return. In this checklist meeting, you will have the opportunity to identify accommodations that may be of benefit to you as will UPS as we work towards solutions that will allow you to be at work and perform the daily essential job functions as a division manager. We will be in contact with you upon your return and will provide you with additional information. Again, we look forward to your return and working with you through this process.

(App. Vol. 2 at APX314-APX315; App. Vol. 3 at APX500-APX502, APX586-587, APX737-APX738, APX744).

### C.    Norwood Fails To Engage In the Interactive Process.

On June 19, 2018, Norwood, Human Resources Manager Eric Day, Occupational Health Supervisor Gayle Narimatsu, and District Operations Human

Resources Manager Jimmy McClure participated in an Accommodation Checklist Meeting.  (App. Vol. 2 at APX315; App. Vol. 3 at APX503-APX506, APX588-APX592; App. Vol. 4 at APX754-APX755).  During this meeting, Norwood described the following medical restrictions, symptoms, or needs affecting her ability to perform her job: needing consistent sleep and a set schedule; needing to take her medication regularly and on schedule; anxiety; and issues with clarity, concentration, and understanding.  (App. Vol. 2 at APX315; App. Vol. 3 at APX503-APX506, APX588-APX592).  As accommodations, Norwood sought to be provided with an agenda to follow during meetings and to tape record all meetings in which she participated.  (App. Vol. 2 at APX315, APX348-APX349, APX463-APX464).

After completing UPS's portion of the checklist, Day forwarded the packet to the Region Accommodation Committee.  (*Id.*) On June 28, 2018, the Region Accommodation Committee reviewed Norwood's request to receive meeting agendas and tape record meetings, and found recording to be an unreasonable request because Norwood's Division Manager position required that she have access to confidential and proprietary information (for this, and other reasons, UPS policy prohibits employees from audio recording in the workplace) that needed to be safeguarded. (App. Vol. 2 at APX316; App. Vol. 4 at APX803, APX843-APX847). However, the Committee identified reasonable alternatives, including

9

providing meeting agendas to Norwood for specific meetings; designating a note-taker for identified meetings; and, authorizing note taking by both Norwood and a designated note-taker during identified meetings, so that both sets of notes could be compared to ensure completeness, consistency, and accuracy.  (App. Vol. 2 at APX316-APX317, APX348-APX349, APX481-APX482; App. Vol. 3 at APX510-APX517;  App.  Vol.  4  at  APX802,  APX804-APX805,  APX843-APX847, APX850-APX851, APX854, APX856).

Once the Committee made its findings, Day contacted Norwood at least six times to inform her of the findings and work with her to return her to work (specifically, Day communicated with Norwood on July 2, 3, 6, 9, 10, and 11, 2018). (App. Vol. 2 at APX317; App. Vol. 3 at APX510-APX511, APX513-APX514,  APX519-APX524,  APX563-APX565,  APX567-APX568,  APX595-APX601;  App.  Vol.  4  at  APX766-APX769,  APX771,  APX777,  APX780-APX782). Day's role as the area Human Resources Manager was to present Norwood's request to the Region Accommodation Committee and, thereafter, serve as a liaison between the Committee and Norwood as it worked to find an appropriate accommodation. (App. Vol. 2 at APX316; App. Vol. 4 at APX798-APX799).

On July 6, 2018, Day emailed Norwood following up on conversations they had on July 2 and 3, 2018, in which he had explained the Region Accommodation

Committee declined the request to tape record as unreasonable given the policy against recording and the nature of the information Norwood dealt with on a daily basis.  (App. Vol. 2 at APX317; App. Vol. 3 at 595-596; App. Vol. 4 at APX768). Day also explained that in some cases tape recording in the workplace might be a violation of the law.  (App. Vol. 2 at APX317; App. Vol. 3 at APX507-APX508, APX541, APX593-APX594, APX674). Day also stated in his July 6, 2018 email:

> [T]he committee needs you to provide additional information as to exactly what operations meetings you feel you require agendas and post-meeting notes.  I know you have numerous meetings in any given day.  Can you give us some guidance on your request?  Are you referring only to certain meetings or every operations meeting?

(App. Vol. 2 at APX317-APX318; App. Vol. 3 at APX510-APX511, APX595; App. Vol. 4 at APX768).

On July 9, 2018, in response to text messages from Norwood again asking to tape record meetings, Day emailed Norwood and again explained the request to record had been deemed unreasonable.  Day's email message read:

> I explained to you that this was because not only is recording a policy violation, but in your position you have access to confidential and proprietary information which needs to be protected.  As a result, tape recording in the workplace is not reasonable.  However, as I mentioned, UPS is still exploring what, if anything—short of tape recording—will allow you to do your job.  To that end, I asked you for which meetings you require an agenda and/or post-meeting notes. As you know, you attend numerous operation meetings throughout the day.  You still haven't provided us that information.  **Please let us know for which meetings you need agendas and/or notes so we can help get you back to work.**

(App. Vol. 2 at APX318; App. Vol. 3 at APX518-APX517, APX596-APX597; App. Vol. 4 at APX774-APX777). Norwood told Day on July 9, 2018:

> I do not want to file a Charge with the EEOC, but UPS is creating a situation where I feel I must . . . Please respond with answers to my questions by close of business Monday, or I will file the charge with the EEOC and perhaps they can help us resolve the issue.

(App. Vol. 2 at APX318; App. Vol. 3 at APX518-APX519, APX596-APX597). Norwood filed her charge on July 10, 2018. (App. Vol. 1 at APX18; App. Vol. 2 at APX319).

On July 10, 2018, in response to a text message from Norwood stating that she wanted to tape record and receive meeting agendas for all disciplinary meetings and conferences, Day sought clarification of whether Norwood only wanted to record disciplinary meetings and conferences, asking:

> At this point, I understand your request is to record all meetings and conferences regarding performance or disciplinary issues and to receive agendas for those.  Is that accurate?  As we discussed a couple of times, I thought we were looking into operations meetings and how to help you handle that aspect of your job duties.  Has that changed?  Please let us know.

(App. Vol. 2 at APX319; App. Vol. 3 at APX519-APX522, APX598-APX599; App. Vol. 4 at APX780). Norwood testified that the accommodation she sought was to tape record meetings with Human Resources and/or her manager in which

her performance or discipline was discussed. (App. Vol. 2 at APX319; App. Vol. 3 at APX521-APX522).

On July 11, 2018, Norwood emailed Day again requesting to tape record meetings. (App. Vol. 2 at APX319; App. Vol. 4 at APX814-APX815). That same day (July 11, 2018), Day responded to Norwood:

> I understand you want to tape record, but as I've told you that is not an option for many reasons. The law requires us to provide qualified individuals with an accommodation – not the accommodation of the employee's choice. That being said, we are working hard to understand how we can help you perform your job duties without recording. You mentioned the 6:15 am call. **Have you considered requesting a note taker for that call, and then having the notes provided to you after the call? Does that seem like a possible solution? Please let me know**. I'm still struggling to understand exactly what you think would help you perform your job other than tape recording.

(App. Vol. 2 at APX319-APX320; App. Vol. 3 at APX557-APX559, APX600-APX601; App. Vol. 4 at APX774-APX777). Norwood responded to Day's email that included his comment about a note-taker, but she did not acknowledge or otherwise respond to his questions about a note-taker, instead focusing on how much leave she had remaining. (App. Vol. 2 at APX320; App. Vol. 3 at APX560-APX561, APX632-APX638). Although Norwood ignored UPS's offered accommodation at the time, during her deposition, Norwood conceded having a note-taker at meetings would have been a reasonable accommodation. (App. Vol. 2 at APX320; App. Vol. 3 at APX496).

On July 12, 2018, Norwood's counsel of record, Luther Sutter, contacted UPS personnel stating that Norwood had instructed him to pursue a severance on her behalf, and that if UPS did not offer an "appropriate" severance package, she intended to retire. Sutter further requested that all communications about Norwood be directed to him. (App. Vol. 1 at APX277; App. Vol. 2 at APX320; App. Vol. 3 at APX537-APX538, APX616). Sutter did not mention Norwood's request for accommodation in his July 12, 2018, communication. (*Id*.)

### D. Norwood Seeks to Retire, and UPS Fills Her Position Based on that Representation.

Despite her lawyer's instruction that communications should go through him, on or about July 27, 2018, Norwood left a voicemail for Roux stating that her doctor's recommendation was that she not return to work, and so she wished to retire. (App. Vol. 2 at APX320, APX350, APX468; Supp. App. at 22). On August 28, 2018, Norwood informed Day she had inquired about retirement. (App. Vol. 2 at APX321; App. Vol. 3 at APX524, APX555, APX568-APX569). By September 18, 2018, Norwood submitted retirement paperwork, indicating she intended to retire on November 1, 2018. (App. Vol. 2 at APX321; App. Vol. 3 at APX539-APX540, APX617; App. Vol. 4 at APX787-APX788, APX815, APX831-APX834).

After submitting her retirement paperwork, and despite Sutter's instructions that he was the point of contact, Norwood again contacted UPS personnel asking to

audio record meetings. (App. Vol. 2 at APX321; App. Vol. 3 at APX539-APX540, APX617; App. Vol. 4 at APX787-APX788, APX791, APX815, APX831-APX834). UPS offered to reverse Norwood's retirement request and resume the accommodation process, offering to search for open positions she was qualified to perform (either with or without accommodation). (App. Vol. 2 at APX321-APX322; App. Vol. 4 at APX787-APX788, APX791-APX792, APX815, APX831-APX834, APX843-APX847). Norwood responded by again stating she wanted to tape record. (App. Vol. 2 at APX322; App. Vol. 3 at APX583-APX587). At Norwood's request, UPS moved her retirement date from November 1, 2018, to February 5, 2019, and then again (at her request) from February 5, 2019, to April 1, 2019. (App. Vol. 2 at APX322; App. Vol. 4 at APX809). Norwood retired on April 1, 2019.  (App. Vol. 2 at APX322; App. Vol. 3 at APX569-APX570).

### E.    UPS Moves for Summary Judgment.

UPS filed a motion for summary judgment on all of Norwood's claims on January 4, 2021. (App. Vol. 2 at APX297-APX895). Norwood opposed that motion via a brief filed on February 24, 2021, in which she conceded her disparate treatment claim under the Americans with Disabilities Act, as amended ("ADA"), and elected to pursue only her failure to accommodate claim.  (App. Vol. 7 at APX1574-APX1578; App. Vol. 12 at APX2913-APX2953; App. Vol. 16 at APX3973, n. 2). Norwood also moved for partial summary judgment and UPS

responded. (App. Vol. 1 at APX130-APX151; App. Vol. 4 at APX896-947).  On July 16, 2021, the District Court granted UPS's motion. (App. Vol. 16 at APX3973-APX4025). The District Court also dismissed remaining pending motions as moot.[2] (App. Vol. 16 at APX3973-3974).

## SUMMARY OF ARGUMENT

The arguments made in Norwood's opening brief are insufficient to reverse the District Court's judgment in UPS's favor. Summary judgment should not be reversed because the District Court was correct in its analysis.  Norwood cannot establish that UPS failed to engage in the interactive process in good faith. The District Court made inferences in Norwood's favor, as the nonmoving party, but properly did not make inferences where they were not warranted.  Moreover, the District Court properly excluded inadmissible evidence and did not consider it in reaching its conclusion.

UPS engaged in the interactive process with Norwood in good faith. From May 2018 through July 2018, UPS attempted to gather information regarding her condition and her need for accommodations. After Norwood proposed the accommodation of tape recording meetings, UPS informed her that it was not a viable accommodation and offered as an alternative the use of a note-taker during

---

[2] This included Norwood's Summary Judgment Motion and UPS's motion to exclude Norwood's expert witness from testifying. (App. Vol 1 at APX130-APX274; App. Vol. 6 at APX1520-APX1537).

certain meetings.[3] Norwood refused to respond or share pertinent information that UPS needed to further assess the proposed accommodation. Instead, she repeatedly requested to be permitted to record her meetings. Ultimately, and regrettably, Norwood's insistence on her favored accommodation and her ultimate decision to retire caused the breakdown in the interactive process.

### STANDARD OF REVIEW

This Court reviews the District Court's grant of summary judgment de novo, and the evidence is viewed in the light most favorable to the nonmoving party. *Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kans.*, 691 F.3d 1211, 1216 (10th Cir. 2012).  The Court takes all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party and determines whether there exists a genuine issue of material fact or whether the moving party is entitled to judgment as a matter of law.  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).  However, the Court's summary judgment standard "does not require [the Court] to make

---

[3] In her appellate brief, Norwood's counsel inaccurately states the Eighth Circuit "recognizes that tape recording…can be a reasonable accommodation" citing *Battle v. United Parcel Serv., Inc.,* 438 F.3d 856, 864 (8th Cir. 2006). (Aplt.'s Opening Brief, p. 10). A simple reading of *Battle* proves the Eighth Circuit made no such finding, and an examination of the record proves neither the jury nor the lower court in that case made such a finding. *See generally, Battle*, 438 F.3d at 864. This misstatement of the law underpinned Norwood's zealous belief that UPS was "required" to grant her favored request for a tape recorder, and is central to Norwood's contentions on appeal. (*See* App. Vol. 1 at APX147;  App. Vol. 12 at APX2943, n. 4; Aplt.'s Opening Brief, p. 7-8, 10-12, and 27 (all citing *Battle*)).

unreasonable inferences in favor of the non-moving party." *Llewellyn v. Allstate Home Loans, Inc*., 711 F.3d 1173, 1187 (10th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (the substantive law at issue determines which facts are material in a given case; an issue of material fact is genuine if a "reasonable jury could return a verdict for the nonmoving party").

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson*, 477 U.S. at 256.    To withstand summary judgment, the nonmoving party must establish the elements essential to her case on which she bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323; *see also Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir.1996).

"For purposes of summary judgment, 'facts' must be established by evidence which would be admissible at trial." *BancOklahoma Mortgage Corp. v. Capital Title Co*., 194 F.3d 1089, 1101 (10th Cir.1999). This Court reviews "a District Court's decision to exclude evidence at the summary judgment stage for abuse of

18

discretion." *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 894 (10th Cir.1997); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894–98, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (concluding that District Court did not abuse its discretion in declining to admit affidavits on summary judgment);

## ARGUMENT AND AUTHORITIES

### I.    The District Court Appropriately Granted Summary Judgment to UPS.

The District Court correctly granted UPS's motion for summary judgment. Contrary to Norwood's argument that "if and when the interactive process broke down is usually a question of fact for a jury," this Court has routinely affirmed summary judgment on issues of breakdowns of the interactive process.[4] (Aplt.'s Opening Brief, p. 17); *See e.g., McFarland v. City & Cnty. of Denver*, 744 F. App'x 583, 587 (10th Cir. 2018)(affirming summary judgment where breakdown in the interactive process was due to the employee's failure to communicate with her employer); *Templeton v. Neodata Servs., Inc*. 162 F.3d 617, 619 (10th Cir. 1998)(affirming summary judgment where employee refused to provide medical information that was reasonably requested by her employer). The District Court properly granted summary judgment to UPS because undisputed facts demonstrate (1) UPS offered Norwood an undisputedly reasonable and effective accommodation in the form of a note-taker and (2) Norwood failed to engage in

---

[4] Norwood's only case law supporting her allegation is not binding on this Court.

the ADA's interactive process in good faith. Quite simply, Norwood's intransigence, her stubborn adhesion to the one accommodation she favored, effectively foreclosed any discussion about a range of potential accommodations, including an alternative UPS offered her. Norwood offers no evidence to the contrary. Since discussion of a range of potential accommodations is the essence of the interactive process, and because the undisputed evidence shows that Norwood refused to engage in discussion of any alternative to her favored accommodation, the District Court's ruling that the breakdown in the interactive process was solely attributable to Norwood should be affirmed. No reasonable jury could find otherwise on these facts.

### A.    UPS Engaged in the Good-Faith Interactive Process with Norwood and Norwood Rejected UPS's Reasonable and Effective Accommodation.

To establish a *prima facie* case of failure to accommodate under the ADA, Norwood must show that: (1) she is disabled under the ADA; (2) she is a qualified individual under the ADA; and (3) she requested a plausibly reasonable accommodation, and the employer failed to reasonably accommodate her. *Punt v. Kelly Servs*., 862 F.3d 1040, 1050 (10th Cir. 2017). Norwood cannot establish the last of these elements. Therefore, no reasonable jury could conclude that that UPS failed to accommodate her.

Crucially, although Norwood may have been entitled to an accommodation under the ADA, she was not entitled to the accommodation of her choice. "[The ADA's] use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires…Stated plainly, under the ADA a qualified individual with a disability is not entitled to the accommodation of her choice, but only to a reasonable accommodation." *Smith v. Midland Brake, Inc*., 180 F.3d 1154, 1177 (10th Cir.1999) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278, 1285–86 (11th Cir.1997)); *see also Gilliard v. Georgia Dep't of Corr*., 500 F. App'x 860, 868 (11th Cir. 2012) ("The plaintiff bears the burden of identifying a reasonable accommodation that would allow a qualified individual to perform the job, and an employer is not required to accommodate an employee in any manner in which the employee desires"). An employer "has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." *Smith*, 180 F.3d at 1177 (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1137 (8th Cir.1999)).

The undisputed evidence in the summary judgment record demonstrates UPS engaged Norwood in a good-faith interactive dialogue, as required by the ADA. UPS offered to reasonably accommodate Norwood by providing her a note-

taker – an accommodation Norwood agreed in her deposition was reasonable. (App. Vol. 2 at APX320; App. Vol. 3 at APX496). The correspondence between Norwood and Day from the first two weeks of July 2018 provide irrefutable evidence that Day suggested meeting notes on July 6 and 9, 2018, and specifically asked about the viability of a note-taker on July 11, 2018. (App. Vol. 2 at APX318; App. Vol. 3 at APX510-APX511, APX513-APX514, APX519-APX524, APX563-APX565, APX567-APX568, APX595-APX601, APX632-APX638; App. Vol. 4 at APX766-APX769, APX771, APX777, APX780-APX782). Norwood received and responded to each of those e-mails, yet ignored and did not respond to Day's inquiries about the viability of using a note-taker. (App. Vol. 2 at APX317-APX321). Norwood's refusal to acknowledge the reasonable accommodation she was offered does not create a material factual dispute as to whether UPS provided Norwood a reasonable and effective accommodation. Indeed, during her deposition, Norwood **admitted** the accommodation UPS offered – a note-taker – was reasonable and effective. (App. Vol. 2 at APX320; App. Vol. 3 at APX496).

On July 12, 2018, in the midst of UPS's interactive dialogue with Norwood, her attorney, Sutter, intervened, asked that all communications regarding Norwood go through him, and derailed the interactive dialogue when he indicated Norwood wanted a severance package or, if the severance package was not "appropriate," she would retire. (App. Vol. 1 at APX277; App. Vol. 2 at APX320; App. Vol. 3 at

APX537-APX538, APX616). Sutter did not indicate that Norwood remained interested in continuing the dialogue about possible accommodation. (*Id*.). Notably, following Sutter's July 12, 2018 e-mail, neither Norwood nor her lawyer responded to UPS's offered accommodation, and instead they chose to pursue negotiation of the conclusion of her employment either via severance agreement or retirement. (*Id*.).

Norwood's failure to accommodate claim is simply a complaint that UPS did not provide her the specific accommodation she requested (i.e. the meeting agendas and permission to create audio recordings of meetings). But the law does not require UPS to give Norwood the accommodation of her choice. *See, e.g. Smith,* 180 F.3d at 1177. Rather, the accommodation UPS offered must only be reasonable and effective. *Id*. Norwood conceded under oath that UPS's offered accommodation of a note taker would have been reasonable and effective.[5] (App. Vol. 2 at APX320; App. Vol. 3 at APX496.) Despite this admission, she refused to accept – or, even respond to – inquiries about this accommodation. Norwood's refusal to accept this reasonable accommodation entitled UPS to summary judgment on her failure to accommodate claim. *Smith,* 180 F.3d at 1177; *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (stating that the ADA

---

[5] Norwood also admitted she would have accepted recording only meetings at which her performance or disciplinary record had been discussed. (App. Vol. 2 at APX319; App. Vol. 3 at APX521-522).

provides a right to reasonable accommodation, not to the Plaintiff's preferred accommodation); *Phelps v. Optima Health, Inc*., 251 F.3d 21, 28 (1st Cir. 2001) (same); *Schmidt v. Methodist Hosp. of Ind., Inc*., 89 F.3d 342, 344–45 (7th Cir. 1996) (holding that employee's rejection of reasonable accommodations offered by employer "render[ed] him unqualified under the ADA"); *Hankins v. The Gap, Inc*., 84 F.3d 797, 802 (6th Cir. 1996) (holding that "Plaintiff's refusal to accept available reasonable accommodations precluded her from arguing that other accommodations should have also been provided").

### B.    Any Breakdown in the ADA's Interactive Dialogue is Attributable Solely to the Actions of Norwood and her Attorney

The District Court properly ascertained that UPS was entitled to summary judgment because Norwood caused the breakdown of the interactive process. The interactive process "requires a good-faith communication between the employer and employee, and neither party should cause a breakdown in the process." *Smith v. Midland Brake, Inc*., 180 F.3d 1154, 1179 (10th Cir. 1999) (*en banc*) (*citing Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). ("A party that fails to communicate, by way of initiation or response, may also be acting in bad faith" and other cases discussing both parties' good faith duty to engage in the interactive process). Both parties have an "obligation to participate in th[e] interactive process." *Aubrey v. Koppes*, 975 F.3d 995, 1007 (10th Cir. 2020)(citing *Smith*, 180 F.3d at 1172). Where an employee fails to reasonably

participate (such as by failing to provide appropriate medical information or failing to communicate), and the result is a "breakdown" of the interactive process, the employer is "insulated" from liability under the ADA. *Smith*, 180 F.3d at 1173 (*citing Templeton v. Neodata Servs., Inc*., 162 F.3d 617, 618-19 (10th Cir. 1998)).

Norwood failed to fully and promptly engage in the interactive process on multiple occasions. As correctly detailed by the District Court, she failed to respond to UPS's reasonable requests for information and/or clarification and to its proposal of an undisputedly reasonable and effective accommodation: a note-taker. (App. Vol. 2 at APX320-APX321; App. Vol. 3 at APX557-APX559, APX593-APX595; App. Vol. 4 at APX774-APX777).  UPS repeatedly contacted Norwood in a good faith effort to find a solution that would allow her to return to work, asking her what she wanted, seeking clarification about the meetings for which she needed agendas, and offering and discussing alternatives to tape recording. (*Id*.); *see Sessoms v. Trustees of Univ. of Pennsylvania*, 739 F. App'x 84, 87 (3d Cir. 2018) ("An employer may demonstrate good faith in various ways, including meeting with the employee, requesting information about the employee's condition and limitations, asking what the employee wants, showing signs of having considered the employee's request, and offering and discussing available alternatives when the request is too burdensome.") (citing *Taylor v. Phoenixville Sch. Dist*., 184 F.3d 296, 319-20 (3d Cir. 1999)). Indeed, when Norwood returned

the requested documentation, UPS set up a meeting to review the matter and collect more information about what Norwood needed to return to work, and UPS also began corresponding with Norwood to clarify the meetings for which she wanted an agenda. (App. Vol. 2 at APX315, APX317; App. Vol. 3 at APX510-APX511, APX513-APX514, APX519-APX524, APX563-APX565, APX567-APX568, APX595-APX601, APX632-APX638; App. Vol. 4 at APX754-APX755, APX766-APX769, APX771, APX777, APX780-APX782). Norwood (and her counsel) failed to respond to requests for information or proposals of alternatives, instead repeatedly demanding that she be permitted to tape record without ever articulating a reason why she needed this specific accommodation. (*Id.*). Norwood and her attorney then ended the interactive process altogether by moving the discussion to her voluntary departure from UPS's employment. (App. Vol. 1 at APX277; App. Vol. 2 at APX320; App. Vol. 3 at APX537-APX538, APX616). Her myopic focus on tape recording as her preferred solution, as well as her failure to respond to reasonable questions as to what she needed or sought, culminating with Sutter's abrupt termination of the discussion about possible accommodation, and her failure to respond to UPS's offers to search for another job for her, caused the breakdown in the interactive process. As a result, the District Court correctly granted UPS's summary judgment motion. *Smith*, 180 F.3d at 1173 (citing *Templeton v. Neodata Servs., Inc*., 162 F.3d 617, 618-19 (10th Cir. 1998)).

Norwood's insistence that *Battle v. United Parcel Serv., Inc*., required UPS to provide Norwood a tape recorder, and requires reversal of the District Court's grant of summary judgment, is simply wrong. (App. Vol. 12 at APX2943, n. 4.). Unlike Norwood, Mr. Battle did not request the use of a tape recorder as a reasonable accommodation. Further, none of the jury, the District Court, nor the Eighth Circuit found Mr. Battle was entitled to use a tape recorder as a reasonable accommodation – *i.e.* something to eliminate the conflict between Mr. Battle's disability and the essential functions of his job. Indeed, not even Norwood's counsel – who also represented Mr. Battle – argued as much at trial or on appeal. The only reasonable accommodation at issue in *Battle* was a request for agendas – ironically, one of the very accommodations UPS was willing to provide to Norwood. *See Battle v. United Parcel Serv., Inc.,* 438 F.3d at 864 (only accommodation at issue at trial was request for agendas; no discussion whatsoever of tape recordings as an alleged reasonable accommodation).

On the contrary, Mr. Battle's counsel (now Norwood's counsel) was unambiguous in his opening statement to the jury: Mr. Battle wanted to use a tape recorder as a litigation aide. Or, stated differently, the tape recorder was not to allow Mr. Battle to perform the essential functions of his job; rather, the proffered recording was to create a record so that the jury would not have to decide who to believe (Battle or UPS's witnesses) at trial. (App. Vol. 8 at APX1854-APX1855

27

(Plaintiff's Opening Statement in *Battle v. United Parcel Serv., Inc.*, Case No. 4:03CV00847-RSW, U.S. Dist. Court, Eastern District of Arkansas); App. Vol. 9 at APX 1945-1946 (request for tape recording was not to facilitate performance of job duties, but for use in litigation); App. Vol. 10 at APX2313, APX2468, and APX2488 (tape recording as part of search for truth, eliminating swearing match; not because it was a reasonable accommodation – it was sought as a litigation aid); App. Vol. 15 at APX3828 ("All Battle ever requested was an agenda…yet UPS failed to [accommodate] him."); and *see generally, Battle*, 438 F.3d at 864 (only accommodation at issue at trial was request for agendas; no discussion whatsoever of tape recordings as an alleged reasonable accommodation).

In addition, Mr. Battle's case was decided more than 13 years ago, before changes to the ADA were implemented in 2009, and has no precedential or probative value to the issues in this case. Moreover, whether an accommodation is reasonable is an individualized inquiry, and the facts and circumstances surrounding Norwood's request for a reasonable accommodation differ significantly from Mr. Battle's circumstances, and therefore the case is not instructive. *Punt v. Kelly Servs*., 862 F.3d 1040, 1050 (10th Cir. 2017) ("The determination of whether a requested accommodation is reasonable 'must be made on the facts of each case taking into consideration the particular individual's disability and employment position.'") (internal quotation omitted).

Importantly, and as noted above, nowhere in *Battle* does the 8th Circuit discuss whether a tape recording is a reasonable accommodation. Rather, the accommodation at issue in *Battle* was whether Mr. Battle's request for an agenda was a reasonable accommodation. *Battle*, 438 F.3d at 859. Norwood's request – to tape record conversations in the workplace – is a wholly different request than the accommodation at issue in *Battle*. Additionally, Mr. Battle suffered from substantially different impairments than those from which Norwood suffers. After returning from FMLA leave, Mr. Battle found it "increasingly difficult for him to understand, concentrate on, and perform many tasks" that he needed to perform for his job. *Battle*, 438 F.3d at 859. These are conditions that led to his request for an accommodation. *Id.* Conversely, Plaintiff allegedly needed consistent sleep and a schedule; needed to take her medication regularly and on schedule; suffered from anxiety; and, had issues with clarity, concentration, and understanding. (App. Vol. 3 at APX505, APX588-APX592). These conditions made it difficult for her to perform the essential functions of her job and differ significantly from the conditions suffered by Mr. Battle. Finally, Mr. Battle's case is distinguishable from this case because Mr. Battle ultimately returned to work without an accommodation. *Battle*, 438 F.3d at 860. Here, Plaintiff retired. She did not return to work at UPS, with or without an accommodation. Because *Battle* differs significantly from this case, this Court should disregard Plaintiff's reliance on it.

The simple fact is, rather than continue the interactive dialogue with UPS by answering the unambiguous inquiries posed by Mr. Day, Plaintiff ignored the questions and hastened toward litigation based on her ill-founded belief that this case was simply "*Battle* 2.0." Norwood may not weaponize her failure to act in good faith to inflict liability on UPS. The District Court's grant of summary judgment was proper**.**

## II.    Norwood Cannot Establish that the District Court Failed to Apply the Appropriate Summary Judgment Standards

On appeal, Norwood makes several red herring arguments in an attempt to demonstrate that the District Court failed to apply the appropriate standards for summary judgment. These arguments fall short of their attempt to distract this Court from the undisputed facts warranting the District Court's finding of summary judgment. She alleges that instead of drawing all reasonable inferences in her favor, the District Court only found inferences in UPS's favor. This is untrue; it was evident from the District Court's order that it drew inferences in Norwood's favor where it could. It simply refused to grant her unreasonable inferences. Norwood also challenges the District Court's decision to exclude her expert's testimony and report from consideration on summary judgment, and the court's decision to exclude testimony from Gayle Narimatsu. But the District Court did not abuse its discretion in making these exclusionary decisions. Therefore, reversal of the District Court's finding is unwarranted.

**A.     The District Court Drew Reasonable Inferences in Norwood's Favor**

Norwood's contention that the District Court failed to view the evidence in the light most favorable to her, and instead drew unreasonable inference in favor of UPS, is meritless. Norwood mischaracterizes the District Court's analysis by quibbling with immaterial facts.

Despite the significant evidence to the contrary, Norwood asserts that the District Court impermissibly dismissed Norwood's argument that Mr. Day intentionally deceived her during a phone call on July 3, 2018, thus spoiling the interactive process. However, as described by the District Court, no reasonable juror could conclude that the interactive process broke down on July 3, 2018. At the summary judgment stage, "a reviewing court must examine the factual record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party, but it may grant summary judgment when the record taken as a whole couldn't lead a rational trier of fact to find for the non-moving party." *Sidlo v. Millercoors, LLC*, 718 Fed. Appx. 718, 726 (10th Cir. 2018) (citing *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998)). Here, the District Court properly granted summary judgment because the record, when considered in its entirety, could not lead a jury to find in Norwood's favor.

The District Court carefully considered the record as a whole in making its summary judgment finding, accounting for the discussions that took place between

31

UPS and Norwood well beyond July 3, 2018. Indeed, ongoing communication between an employer and employee undermines an employee's claim that the employer caused the interactive process to breakdown. *See Mares v. Colo. Coal. For the Homeless*, No. 19-cv-03144-MEH, 2020 WL 7320625, at *9 (D. Colo. Dec. 8, 2020) (rejecting plaintiff's allegations that the defendant violated its obligation to engage in the interactive process where the plaintiff and defendant "had literally dozens of communications during the relevant time period."). Norwood's allegation that the Court failed to draw inferences in her favor regarding the breakdown of the interactive process ignores her repeated refusal to answer basic questions about her condition, her failure to identify the meetings for which she would need agendas or notes, and her pursuit of single accommodation: tape recording. (App. Vol. 2 at APX315, APX317; App. Vol. 3 at APX503-APX506, APX510-APX511, APX513-APX514, APX519-APX524, APX563-APX565, APX567-APX568, APX588-APX592, APX595-APX601, APX632-APX638; App. Vol. 4 at APX754-APX755, APX766-APX769, APX771, APX777, APX780-APX782).  Her argument also blatantly fails to acknowledge that Sutter, as Norwood's counsel, advised UPS that Norwood no longer wanted to pursue the interactive process. He told UPS she either wanted severance from the company or that she wanted to retire. (App. Vol. 1 at APX277; App. Vol. 2 at APX320; App. Vol. 3 at APX537-APX538, APX616). By choosing to pursue retirement, there is

no dispute that Norwood, and her counsel by extension, ended the interactive process. When considered in its entirety, the record clearly entitled UPS to summary judgment.

Norwood's allegation that Mr. Day lied is unreasonable because it was not supported by record evidence, and therefore was properly disregarded by the District Court. The summary judgment standard "does not require [the Court] to make unreasonable inferences in favor of the non-moving party." *Llewellyn v. Allstate Home Loans, Inc*., 711 F.3d 1173, 1187 (10th Cir. 2013). As explained by the District Court, Norwood's deposition testimony regarding the alleged "deception" by Mr. Day does not support the proposition that Mr. Day "lied." (App. Vol. 12 at APX2937). Rather, Norwood's cited deposition testimony described Mr. Day gathering information regarding a potential accommodation. (*Id*.). To find that UPS deceived her during this conversation, this Court would need to make unreasonable leaps in logic to determine that Mr. Day lied to her without any record evidence supporting such a conclusion. To believe her allegation that this phone call caused a breakdown in the interactive process would likewise require this Court to ignore the undisputed communications that occurred throughout July 2018, including Sutter's communication that she wanted to pursue retirement. There is nothing in the summary judgment record that would support

either conclusion. Therefore, the District Court properly discharged its duty with regard to inferences of fact.

Regardless, despite Norwood's allegation to the contrary, the alleged failure of UPS to make an explicit offer of a note-taker does not preclude summary judgment in UPS's favor. Indeed, drawing reasonable inferences to Norwood, the District Court found a reasonable juror could conclude that UPS did not offer her a note-taker. (App. Vol. 12 at APX2935-APX2936). Despite this finding in Norwood's favor, however, the District Court reiterated that communications between Mr. Day and Norwood, when considered as whole, supported a finding of summary judgment in UPS's favor. (*Id.*) The communications began in June 2018 and lasted through July 12, 2018, when Sutter contacted UPS personnel stating Norwood would accept a severance package or retire. (App. Vol. 2 at APX315, APX317; App. Vol. 3 at APX315, APX317; App. Vol. 3 at APX510-APX511, APX513-APX514, APX519-APX524, APX563-APX565, APX567-APX568, APX593-APX601, APX632-APX638; App. Vol. 4 at APX754-APX755, APX766-APX769, APX771, APX777, APX780-APX782). When Sutter inserted himself into the dialogue, he did not mention Norwood's request for accommodation. (App. Vol. 1 at APX277; App. Vol. 2 at APX320; App. Vol. 3 at APX537-APX538, APX616). Rather, he focused solely on Norwood's attempt to end her employment. (*Id.*) Mr. Day's comment about a note-taker in the July 11 email

communication, or lack of a comment during the July 3 phone call, needs to be taken within the context of all the communications, up to the point in which Norwood and her counsel, Sutter, ceased discussions regarding any possible accommodation *See Sidlo*, 718 Fed. Appx. at 726. Ultimately, Mr. Day's constant communication and inquiries support UPS's argument that it discharged its obligation to "undertake a good faith back-and-forth process" with Norwood. *Aubrey*, 975 F.3d at 1009. Even if this Court accepts her allegations that UPS allegedly never offered her a note taker as at face value, they do not preclude summary judgment.

### B.    The District Court Properly Excluded Norwood's Expert Witness Testimony

Relying on D. Kan. Rule 56.1, the District Court did not abuse its discretion by excluding citations to Norwood's expert witness deposition and report, cited in response to UPS's summary judgment motion. (App. Vol. 16 at APX4023, n. 23). Norwood argues on appeal that the District Court erred in excluding this testimony from consideration for purposes of summary judgment. (Aplt.'s Opening Brief, 20-27). However, her argument is untenable.[6]

---

[6] Despite not being an issue on appeal, Norwood also appears to re-allege her argument in response to UPS's motion to exclude Norwood's expert from testifying at trial. (Aplt.'s Opening Brief, p. 25-27). This issue was not considered by the District Court's grant of summary judgment, and therefore cannot be considered by this Court on appeal. *See Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir.1995) (issue not raised in District Court ordinarily not

Norwood plainly ignored the procedural rules in litigating this case. The requirement of D. Kan. Rule 56.1 are clear; it requires that "facts must be numbered and must refer with particularity to those portions of the record upon which [the party] relies." D. Kan. Rule 56.1 (a)-(b). The District Court specifically refused to consider two instances in which Norwood cited to her expert's deposition testimony and expert report, without identifying where in the 142 page transcript or multi-page report supported her statements. (App. Vol. 16 at APX4023, n. 23). Instead of disputing the District Court's finding, Norwood's argues on appeal that the Court erred in disregarding a third citation to the expert testimony, despite not properly identifying the portion of the record on which she

---

considered on appeal). Moreover, to the extent Norwood seeks to overturn the District Court's mootness finding with regard to UPS's motion to exclude Aliff's testimony, it is not properly developed. *See Wilburn v. Mid–South Health Dev., Inc.*, 343 F.3d 1274, 1281 (10th Cir.2003) ("We ... will not consider issues that are raised on appeal but not adequately addressed."). She briefly addresses, in two pages, arguments developed by the parties in extensive briefs. (*See generally*, App. Vol. 6 at APX150-1537; App. Vol. 16 at APX3918-APX3972). Norwood cites to case law not binding on this Court and Advisory Committee notes to Fed. R. Evid. 704 without developing any legal argument about how this applies to her appeal of the District Court's summary judgment ruling. (Aplt.'s Opening Brief, p. 25-26). Instead, she makes sweeping and conclusory claims, such as Aliff "is prepared to testify that Appellant was substantially limited in working, thinking and concentrating, that she was able to perform the essential functions of her jobs with these accommodations, and how the Appellant's deficits impact the interactive process," without citing to one piece of the summary judgment record in support of her allegations. (*Id*. at 26); see 10th Cir. R. 28.1 (A) ("For each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on."). For these reasons, this Court should disregard this argument.

relied. Norwood admitted that she mislabeled "Exhibit 'G' on the ECF docket instead of 'H' due to a clerical error in filing." (Aplt.'s Opening Brief, p. 20). Norwood now asks this Court to reverse the District Court's finding because of her error. Her argument here fails for several reasons.

First, contrary to her allegation that the District Court and UPS "could have easily deduced" that "Exhibit G" was actually "Exhibit H," Norwood fails to consider the complicated record on summary judgment. (Aplt.'s Opening Brief, p. 21). The record included two competing summary judgment motions, each with several exhibits. (*See generally,* App. Vol. 1-16). Norwood's factual assertions needed to be "supported by references in the record." D. Kan. Rule 56.1(b)(2). By identifying an exhibit that was not part of the record, Norwood failed to meet her obligations under the local rules, and she claims the District Court should have simply done her lawyer's work for him. Thus, the District Court did not abuse its discretion by failing to consider this statement of fact on summary judgment.

Additionally, where "materials were not properly presented to the District Court" this Court "will not reverse [the] District Court for failing to uncover them itself." *Murphy v. City of Tulsa*, 950 F.3d 641, 645 (10th Cir. 2019) (quoting *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 672 (10th Cir. 1998)). Neither this Court, nor the District Court, is required to scour the summary judgment record to discern which evidence supported the party's arguments. *Id*. (citing *Roska ex rel. Roska v.*

*Peterson*, 328 F.3d 1230, 1246 n.13 (10th Cir. 2003) (explaining that the District Court need not comb through the summary judgment record for evidence supporting the movant's arguments)). It was not the District Court's job to search the record to determine which of Norwood's exhibits supported her arguments and it is not this Court's job to overturn any such decision. Thus, any decision to not consider "Exhibit H" is warranted, and certainly not an abuse of discretion.

Regardless of Norwood's procedural deficiencies, none of the citations to Norwood's expert, Michelle Aliff's, testimony or report create genuine issues of material that warrant reversal of the District Court's grant of summary judgment. The two citations to Aliff's deposition testimony and report explicitly considered by the District Court – which addressed whether Norwood was an individual with a disability and allegedly contemplated the difficulties she had performing her job – are not applicable to Norwood's failure to accommodate claim. (App. Vol. 16 at APX4023, n. 23; *See Supra* Sect. I.A.-B.). Whether Norwood was a qualified individual with a disability and how her alleged condition impacted her ability to perform her job duties are not at issue on appeal. Likewise, the alleged third citation to Aliff's testimony is not material. As described in detail above, UPS attempted to engage in the interactive process with Norwood in good faith with her and it was her actions that ended the process. The particularities of her condition and her ability to understand one email sentence from Mr. Day does not save her

on summary judgment. Therefore, even if the District Court did not properly consider these on summary judgment, it constitutes harmless error. *See Miller v. Regents of the Univ. of Colo.*, 188 F.3d 518, 1999 WL 506520, at *12 (10th Cir.1999)(unpublished) ("Nonetheless, we find the District Court's failure to consider the potential relevance of such evidence in this case to be harmless error. None of the information the District Court excluded would have saved Ms. Miller's claims from summary judgment.")[7]

The District Court did not abuse its discretion in excluding Norwood's expert witness testimony and report from the summary judgment record. Nevertheless, even if the District Court did err, none of the citations create a genuine issue of material fact for purposes of summary judgment.

### C.    The District Court Properly Refused to Consider Gayle Narimatsu's Speculative Testimony.

Norwood also argues that the District Court erred in excluding Gayle Narimatsu's speculative testimony. Again, Norwood asks this Court to overlook her improper evidence to overturn the District Court's grant of summary judgment. But, again, the District Court did not err.

---

[7] *Miller v. Regents of the Univ. of Colo.* is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."); *see also United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir.2005)

A federal court can consider only admissible evidence in addressing a motion for summary judgment. *See, e.g. Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995); *Argo v. Blue Cross & Blue Shield of Kansas, Inc.* 452 F.3d 1193, 1199 (10th Cir. 2006). "Testimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." *Bones v. Honeywell Intern., Inc.* 366 F.3d 869, 879 (10th Cir. 2004). This means that hypotheticals and speculative testimony are an improper basis for summary judgment. *Jarrett v. Sprint/United Mgmt. Co.*, 37 F. Supp. 2d 1283 (D. Kan. 1999), aff'd, 203 F.3d 835 (10th Cir. 2000) ("a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.") (quoting *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988)). Norwood relied on Ms. Narimatsu's deposition testimony as a basis for summary judgment in her favor. (App. Vol. 1. at APX143-APX152; App. Vol. 7 at APX1716). However, Ms. Narimatsu's deposition testimony was riddled with answers to hypothetical scenarios proffered by Norwood's counsel, including hypotheticals regarding the possibility of waiving UPS's facial hair policy and regarding whether an employee could request an accommodation if they suffered from depression and their supervisor repeatedly yelled at them. (App. Vol. 1 at APX190-APX194). Neither hypothetical scenario

had anything to do with Norwood's case or her requested accommodation. Such testimony was properly excluded by the District Court.

Despite playing a very limited role in her request for an accommodation, Norwood repeatedly relies on Ms. Narimatsu's speculative testimony to demonstrate that UPS allegedly caused the breakdown in the interactive process. Norwood alleges that Ms. Narimatsu "testified that Eric Day should have communicated to Ms. Norwood the committee's finding on 7/3/2018" and that, if Mr. Day did not do so, it "would be a violation of the good faith interactive process." (Aplt.'s Opening Brief, p. 19). However, contrary to Norwood's assertion, all of Ms. Narimatsu's testimony on this point is speculative because she was not involved in Norwood's request for accommodation after she attended the Checklist Meeting on June 19, 2018, and the Region Accommodation Committee meeting on June 28, 2018. Her answers to questions as to what occurred after these events are pure speculation. She has no personal knowledge of the interactions that occurred between Mr. Day and Norwood on July 3, 2018, or on any date thereafter, and therefore cannot testify to the same. Though UPS does not dispute that Ms. Narimatsu had general knowledge regarding the accommodation process at the company, her testimony cannot be used to create a genuine dispute of material fact regarding the alleged breakdown in the interactive process because she simply was not involved with the process after June 2018. Thus, the District Court properly

41

excluded the testimony when making its consideration on summary judgment. *See, e.g. Bones*, 366 F.3d 869 at 879; *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.1999); *Allen v. Muskogee*, 119 F.3d 837, 846 (10th Cir. 1997).

## CONCLUSION

For the foregoing reasons, Appellee United Parcel Service, Inc. respectfully requests that this Court affirm the District Court's Memorandum and Order granting its Motion to Dismiss and Judgment in favor of United Parcel Service, Inc., and for such further relief the Court deems appropriate.

Respectfully submitted,

/s/ *Shelley I. Ericsson*
Shelley I. Ericsson
Daniel P. Johnson
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
(816) 471-1301
shelley.ericsson@ogletreedeakins.com
daniel.johnson@ogletreedeakins.com

**Attorneys for Defendant-Appellee
United Parcel Service, Inc.**

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 9304 words, as counted automatically by the word-processing system used to prepare the brief.

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Times New Roman.

/s/ Shelley I. Ericsson
**Attorney for Defendant-Appellee**
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4520 Main Street, Suite 400
Kansas City, MO  64111
shelley.ericsson@ogletree.com
(816) 410-2222

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>
## <u>AND PRIVACY REDACTIONS</u>

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, McAfee VirusScan Enterprise 8.7i, updated January 18, 2022, and according to the program are free of viruses.

*/s/ Shelley I. Ericsson*
SHELLEY I. ERICSSON

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 19th day of January 2022, I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following:

Dustin L. Van Dyk        KS #23313
PALMER LAW GROUP, LLP
2348 SW Topeka Blvd.
Topeka, KS 66611
785.223.1836
785.233.3703 (*Facsimile*)
dvandyk@jpalmerlaw.com

Luther Oneal Sutter (admitted *pro hac vice*)
SUTTER & GILLHAM, P.L.L.C.
P.O. Box 2012
Benton, AR 72018
501.315.1910
501.315.1916 (*Facsimile*)
luthersutter.law@gmail.com

**ATTORNEYS FOR PLAINTIFF-APPELLANT**

/s/ Shelley I. Ericsson
**Attorney for Defendant-Appellee**
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4520 Main Street, Suite 400
Kansas City, MO  64111
shelley.ericsson@ogletree.com
(816) 410-2222

49608251.v9-OGLETREE